## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

|  |  |  |
|---|---|---|
| **SOUTH BROWARD HOSPITAL** | : | |
| **DISTRICT, D/B/A/ MEMORIAL** | : | |
| **HEALTHCARE SYSTEM,** | : | |
| on its own behalf and on behalf of other | : | Case No. 0:20-cv-61007-AHS |
| similarly situated healthcare facilities, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| **ELAP SERVICES, LLC and GROUP &** | : | |
| **PENSION ADMINISTRATORS, INC.,** | : | |
| | : | |
| Defendants. | : | |

---

## DEFENDANTS' JOINT MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT [D.E. 24], OR, ALTERNATIVELY, TO DISMISS OR STRIKE THE CLASS ALLEGATIONS

---

**FISHERBROYLES, LLP**

Robert T. Wright, Jr., Esq.
FL Bar No. 185525
Irene Oria, Esq.
FL Bar No. 484570
199 E. Flagler St. #550
Miami, FL 33131
Tel.: (305) 536-2838
Fax: (305) 536-2838
robert.wright@fisherbroyles.com
irene.oria@fisherbroyles.com

Patrick M. Emery, Esq. (*pro hac vice*)
GA Bar No. 821303; PA Bar No. 306672
Kris Alderman, Esq. (*pro hac vice*)
GA Bar No. 179645
945 East Paces Ferry Rd NE, Suite 2000
Atlanta, GA 30326
Tel.: (404) 793-0652
patrick.emery@fisherbroyles.com
kris.alderman@fisherbroyles.com

**AKERMAN LLP**

Irene Bassel Frick, Esq.
FL Bar No. 0158739
Gera R. Peoples, Esq.
FL Bar No. 450022
401 E. Jackson Street, Suite 1700
Tampa, FL 33602-5250
Phone: (813) 223-7333
Fax: (813) 223-2837
irene.basselfrick@akerman.com
gera.peoples@akerman.com

*Counsel for Defendants ELAP Services, LLC and Group & Pension Administrators, Inc.*

## <u>TABLE OF CONTENTS</u>

INTRODUCTION........................................................................................................... 1

FACTUAL BACKGROUND ......................................................................................... 3

    I.   Absent A Contract, Plaintiff May Collect The Reasonable Value
       Of Its Services...................................................................................................3

    II.  Plaintiff Has Agreements With Some Insurance Networks
       For Pre-Negotiated Rates. ...............................................................................4

    III. Plaintiff Does Not Have Pre-Negotiated Rates With The Health Plans At Issue..........4

    IV. Plaintiff Falsely Alleges That It Was "Duped" Into Providing Services To Plan
       Member Patients Based On The ID Cards They Presented Upon Admission............. 5

    V.  The ID Cards Disclosed That Plaintiff's Facilities Were Out of Network And That
       The Plans Use ELAP To Determine The Plans' Reimbursement Limits. ................... 7

    VI. GPA Told Plaintiff That Its Facilities Were Out-of-Network And That ELAP Would
       Audit Its Claims And Determine The Plans' Reimbursement Limits. ........................ 8

ARGUMENT .................................................................................................................. 9

    I.   The Amended Complaint Should Be Dismissed Under Rule 12(b)(6)....................... 9

         A. The Amended Complaint Fails To State A FDUTPA Claim............................ 9

             1.   The FDUTPA Claim Fails Because The Alleged Conduct Falls
                 Outside FDUTPA's Limited Remedial Scope.................................... 10

             2.   The FDUTPA Claim Fails Because Plaintiff Fails To Allege Any
                 Deceptive Or Unfair Conduct That Caused Any Actual Damages..... 11

         B. The Amended Complaint Fails To State An Unjust Enrichment Claim. ......... 13

    II.  Plaintiff's State Law Claims Are Preempted By ERISA............................................ 14

    III. Alternatively, The Court Should Dismiss Or Strike The Class Claims And
       Allegations. .................................................................................................... 16

         A.  Plaintiff's Facially Defective Class Claims Should Be Dismissed................ 17

            1. The Class Claims For Damages Fail...................................................... 18

            2. The Class Claims For Declaratory Or Injunctive Relief Fail. .............. 19

         B. Or, The Court Should Strike The Immaterial Class Allegations................... 20

**CONCLUSION** ................................................................................................................ 20

## <u>TABLE OF AUTHORITIES</u>

**Cases:**

*AA Suncoast Chiropractic Clinic, P.A. v. Progressive Am. Ins. Co.,*
   938 F.3d 1170 (11th Cir. 2019) ...............................................................................17, 20

*Adventist Health Sys./Sunbelt Inc. v. Med. Sav. Ins. Co.,*
   No. 6:03-cv-1121-Orl-19KRS, 2004 U.S. Dist. LEXIS 30976
   (M.D. Fla. Mar. 8, 2004) ..................................................................................................14

*Aetna Health Inc. v. Davila,*
   542 U.S. 200 (2004) .........................................................................................................15

*Alcalde v. Blue Cross & Blue Shield of Fla., Inc.,*
   62 F. Supp. 3d 1360 (S.D. Fla. 2014) ......................................................................15, 16

*Berry v. Budget Rent a Car Sys., Inc.,*
   497 F. Supp. 2d 1361 (S.D. Fla. 2007) ...........................................................................14

*Blake v. Batmasian,*
   318 F.R.D. 698 (S.D. Fla. 2017) .....................................................................................20

*Broward Motorsports of Palm Beach, LLC v. Polaris Sales, Inc.,*
   No. 17-cv-81100-BLOOM/Hopkins, 2018 U.S. Dist. LEXIS 31376
   (S.D. Fla. Feb. 27, 2018) ...........................................................................................11, 13

*Colomar v. Mercy Hosp., Inc.,*
   461 F. Supp. 3d 1265 (S.D. Fla. 2006) ...........................................................................18

*Columna, Inc. v. UnitedHealthcare Ins. Co.,*
   Case No. 9:18-cv-81737-WPD, 2019 WL 2076796 (S.D. Fla. Apr. 29, 2019) ...............16

*Conn. State Dental Ass'n v. Anthem Health Plans, Inc.,*
   591 F.3d 1337 (11th Cir. 2009) .......................................................................................15

*Cooper v. Southern Co.,*

    390 F.3d 695 (11th Cir. 2004) ........................................................20

*Day v. Taylor,*

    400 F.3d 1272 (11th Cir. 2005) ......................................................4

*FFP, LLC v. UnitedHealthcare Ins. Co.,*

    No. 0:18-cv-60696-UU, 2018 U.S. Dist. LEXIS 96062 (S.D. Fla. June 5, 2018) ...... 15-16

*Griffin Industries v. Irvin,*

    496 F.3d 1189 (11th Cir. 2007) ......................................................5

*Griffin v. Singletary,*

    17 F.3d 356 (11th Cir. 1994) .........................................................17

*Guerrero v. Target Corp.,*

    889 F. Supp. 2d 1348 (S.D. Fla. 2012) ......................................... 9-10

*Hialeah Physicians Care, LLC v. Conn. Gen. Life Ins. Co.,*

    Case No. 13-21895-CIV-KING, 2013 U.S. Dist. LEXIS 102007

    (S.D. Fla. July 22, 2013) ............................................................14

*Hill Dermaceuticals, Inc. v. Anthem, Inc.,*

    228 F. Supp. 3d 1292 (M.D. Fla. 2017) ...........................................11

*Hughes Supply, Inc. v. Cont'l Recovery Servs. Corp.,*

    Case No. 6:07-cv-1009-Orl-31KRS, 2007 U.S. Dist. LEXIS 52916

    (M.D. Fla. July 23, 2007) ........................................................ 10-11

*In re Managed Care Litig.,*

    595 F. Supp. 2d 1349 (S.D. Fla. Nov. 6, 2008) ...............................15

*Ingersoll-Rand Co. v. McClendon,*

    498 U.S. 133 (1990) .................................................................15

*Kennedy v. Plan Adm'r for DuPont Sav. & Inv. Plan,*

  555 U.S. 285 (2009) ........................................................................15

*MRI Assocs. of Saint Pete v. State Farm Mut. Auto. Ins. Co.,*

  755 F. Supp. 2d 1205 (M.D. Fla. 2010) ...................................17, 19

*Pilot Life Ins. Co. v. Dedeaux,*

  481 U.S. 41 (1987) ..........................................................................15

*Shaw v. Delta Airlines, Inc.,*

  463 U.S. 85 (1983) ..........................................................................15

*Speaker v. U.S. Dep't of Health & Human Servs. Ctrs. for Disease Ctrl. & Prevention,*

  623 F.3d 1371 (11th Cir. 2010) ......................................................... 4

*Vandenbrink v. State Farm Auto. Ins. Co.,*

  CASE NO.: 8:12-cv-897-T-30TBM, 2012 U.S. Dist. LEXIS 108696

  (S.D. Fla. August 3, 2012) ...............................................................17

*Vanlandingham v. City of Abbeville,*

  No. 1:19cv500-ECM, 2020 U.S. Dist. LEXIS 68742 (M.D. Ala. Apr. 20, 2020) .............5

*Vega v. Mobile USA, Inc.,*

  564 F.3d 1256 (11th Cir. 2009) .......................................................18

*Wal-Mart Stores, Inc. v. Dukes,*

  131 S. Ct. 2541, 180 L. Ed. 2d 374 (2011) .....................................19

*Williams v. Nationwide Credit, Inc.,*

  890 F. Supp. 2d 1319 (S.D. Fla. 2012) ...........................................10


**Rules:**

Fed. R. Civ. P. 12 ...................................................................................9, 20

Fed. R. Civ. P. 23 ...................................................................16, 17, 18, 19

29 U.S.C. § 1001 ...............................................................................................................3

29 U.S.C. 1002 ................................................................................................................14

29 U.S.C. § 1144 ..............................................................................................................15


**Statutes:**

Fla. Stat. § 501.203 ...........................................................................................................9

Fla. Stat. § 501.204 ...........................................................................................................9

## INTRODUCTION

Plaintiff South Broward Hospital District d/b/a Memorial Healthcare System ("Plaintiff") brings this putative class action to recover additional payments for hospital services provided to patients who are covered by certain self-funded ERISA plans. Plaintiff asserts claims against Defendants ELAP Services, LLC ("ELAP"), a co-fiduciary and the designated decisionmaker of the plans, and Group & Pension Administrators, Inc. ("GPA"), the plans' third-party administrator (collectively, "Defendants"). Plaintiff was forced to amend its original Complaint after its fraud allegations were specifically refuted by records incorporated into the original Complaint and submitted with Defendants' prior motion to dismiss. Plaintiff's solution for its Amended Complaint was to drop its fraud claim and remove all allegations about any specific transactions. Plaintiff asserts claims under Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA") and for unjust enrichment, alleging that Defendants deceived it into treating patients by omitting information about the patients' health plans. Plaintiff's claims remain legally defective, and its conclusory allegations, as shown by the records underlying its claims, are implausible and false.

Plaintiff's claims fail on their essential elements as a matter of law no matter how it frames this lawsuit. ***The FDUTPA claim fails because FDUTPA only applies to specific types of conduct, and the Amended Complaint does not allege that Defendants advertised, solicited, provided, offered, or distributed a good or service <u>to Plaintiff</u>.*** Plaintiff cannot bring a FDUTPA claim because it was not a consumer and, in fact, it was the *seller* in the subject healthcare transactions. Moreover, Plaintiff fails to plead any deception for the reasons discussed below. Plaintiff's FDUTPA claim is incurably defective and should be dismissed with prejudice.

***The unjust enrichment claim fails because (1) written contracts govern Plaintiff's rights and remedies with respect to reimbursements for its services, and (2) Plaintiff did not confer <u>any</u> benefits on Defendants.*** Plaintiff's right to be reimbursed under a healthcare plan is controlled by

the plan document, which is a written agreement. And Plaintiff's healthcare services directly benefitted patients, not Defendants. Plaintiff cannot identify any benefits it conferred on Defendants. The unjust enrichment claim should be dismissed with prejudice for those reasons.

The deficiencies of the original Complaint, made apparent by Defendants' motion to dismiss that Complaint and the documents attached thereto, cannot be fixed by the conclusory allegations of the Amended Complaint. Plaintiff still contends that it was "duped" into believing that its facilities were in-network and would be paid at pre-negotiated rates, and that it would have required prepayment from these patients if it had known that its facilities were out-of-network and that the plans used ELAP to audit the hospital bills and set reimbursement amounts based on industry standard benchmarks identified in the plans' governing documents. Plaintiff now argues that the patients' ID cards, which stated that the network was limited to physicians, did not *conspicuously* disclose that information, and that when GPA told Plaintiff exactly what formulas ELAP would use when auditing the claims, those disclosures were somehow not adequate. Tellingly, Plaintiff does not cite a single patient transaction in which it was actually deceived.

In reality, the patient ID cards informed Plaintiff that its hospitals were out-of-network and notified Plaintiff that it could find more information about the plan benefits, including all of the information that Plaintiff alleges was omitted, by visiting the website listed on the ID cards or by calling GPA. The Amended Complaint admits that the website provides all of the allegedly omitted information and that, for the only two specific patient transactions Plaintiff has ever cited, GPA told Plaintiff both that its hospital was out-of-network and that claims would be audited by ELAP, and also explained how the reimbursement limit would be decided. Plaintiff knew or should have known that it would not be reimbursed at in-network rates by the healthcare plans. If Plaintiff wanted to know more about a healthcare plan's reimbursement limits before providing services, it

could have obtained that information effortlessly. Plaintiff cannot prove "deceit" when a simple phone call to GPA or a visit to the website referenced on the patient ID cards would have revealed the information it falsely alleges was omitted. Because the allegations and records referenced in the Amended Complaint show that there was no deceit, Plaintiff once more fails to state a claim.

Additionally, both of Plaintiff's state-law claims are preempted by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* ("ERISA") since they relate to self-funded employer health plans governed by ERISA.

Though the Amended Complaint should not survive this Motion to Dismiss, in the alternative, the Court should dismiss the class claims or strike the class allegations. It is obvious that a class will never be certified because Plaintiff's claims are atypical, individualized inquiries predominate, class-wide non-monetary relief is impossible, and it would be unmanageable and undesirable to litigate in one forum the reasonable price of every conceivable healthcare service for different markets throughout the nation. At the very least, the class claims should be eliminated.

The legal defects in Plaintiff's claims cannot be remedied. Despite having plenty of time to investigate the facts and prepare its original Complaint, and then several more weeks to consider whether to withdraw its groundless lawsuit after Defendants moved to dismiss and attached essential records (the ID cards and audio recordings and transcripts of the calls at issue) that negated all of Plaintiff's claims, Plaintiff elected to continue to waste the Parties' and the Court's time and resources with a bogus Amended Complaint. These circumstances mandate an award of reasonable attorneys' fees and costs to Defendants under FDUTPA. The Amended Complaint should be dismissed with prejudice, with an award of attorney's fees and costs to Defendants.

## **FACTUAL BACKGROUND**

I.  **Absent A Contract, Plaintiff May Only Collect The Reasonable Value Of Its Services.**

Plaintiff is a large public healthcare system in Broward County, Florida that includes

several regional hospitals and healthcare facilities. *See* Am. Complaint [D.E. 24] ¶ 22.[1]

Plaintiff alleges that, upon admission for treatment, patients are required to sign a "Patient Agreement" that it asserts requires payment of "billed charges." *Id.*, ¶¶ 47, 77. Despite its conclusory allegations, Plaintiff concedes that when it does not have pre-negotiated rates it is only entitled to be paid a reasonable amount for its services. *See id.*, ¶ 40 n.3; *id.*, ¶¶ 140-142.

## II.    Plaintiff Has Agreements With Some Insurance Networks For Pre-Negotiated Rates.

To secure particular reimbursement rates, Plaintiff enters into participation agreements with preferred provider organizations ("PPOs") that are comprised of insurance companies, third-party administrators, and rental networks (as well as some self-funded health plans). *See* Am. Compl. ¶¶ 44-45, 95. Under its "PPO Participation Agreements," Plaintiff agrees to provide services to members of health plans that have contracted with the PPO via a "Traditional PPO Agreement" at pre-negotiated reimbursement rates. *See id.* Plaintiff's facilities are "in-network" for those plans, and Plaintiff accepts payment at pre-negotiated rates. *See id.*, ¶ 78.

## III.    Plaintiff Does Not Have Pre-Negotiated Rates With The Health Plans At Issue.

Certain patients who receive services from Plaintiff's facilities are members of health plans that are self-funded by their employer. *Id.*, ¶ 30. Plaintiff recognizes that such plans are governed by a written document, known as the "Plan Document," that establishes the terms for administering the plan, including reimbursement limits. *See id.*, ¶ 57. The Plan Document for W.R. Meadows, the employer referenced in the Amended Complaint at paragraph 96, is attached as **Exhibit 8** to the Second Declaration of J.W. Dewbre ("Declaration" or "Dec.") submitted herewith. Dec. ¶ 11.[2]

---

[1] For the Court's convenience, a redline comparing the Amended Complaint [D.E. 24] to the original Complaint [D.E. 1] is attached hereto as **Exhibit A**.

[2] On a motion to dismiss, courts may consider records that are incorporated by reference into the complaint, in that they are central to the complaint and their authenticity is unchallenged. *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005). *See*, *e.g.*, *Speaker v. U.S. Dep't of Health & Human*

The health plans at issue ("Plans") do not have contracts with Plaintiff for pre-negotiated reimbursement rates. The Amended Complaint concedes that, because Plaintiff did not have contracted pre-negotiated rates for the services it provided to the Plan members, Plaintiff was only entitled to collect a reasonable amount for its services. *See id.*, ¶ 40 n.3; *id.*, ¶¶ 140-142.[3]

Under the Plan Documents, the allowable claim limit ("ACL") is the amount that the Plans will reimburse an out-of-network provider for covered services, less any amounts owed by the member. *See* Dec. Ex. 8 at 75-77 ("Claim Review and Audit Program"). *See also* Am. Compl., ¶ 34. The Plans use industry standard benchmarks and simple calculations to establish the ACL. *See* Am. Compl. ¶ 38. The Plans hired ELAP to serve as the designated decision maker to determine the ACL. *Id.*, ¶¶ 33-34, 108-109. ELAP is not an insurer or a guarantor for the Plans. Instead, ELAP merely determines the Plans' ACL under the Plan Document. *Id.*, ¶¶ 108-109. The Plans' ACL for hospital services is the greater of 112% of the hospital's cost to provide the service or "the Medicare allowed amount for the services in the geographic region plus an additional 20%." *See id.*, ¶ 38. The Plans hired GPA as a third-party administrator to handle provider claims. Am. Compl. ¶¶ 30, 74. GPA is not an insurer or guarantor for the Plans either. Rather, GPA processes claims and issues payments funded by the Plans. *Id.*, ¶¶ 30, 118.

## IV. Plaintiff Falsely Alleges That It Was "Duped" Into Providing Services To Plan Member Patients Based On The ID Cards They Presented Upon Admission.

The cornerstone of the Amended Complaint is Plaintiff's allegations that it has been

---

*Servs. Ctrs. for Disease Ctrl. & Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010) (court properly considered video central to claims in deciding motion to dismiss); *Vanlandingham v. City of Abbeville*, No. 1:19cv500-ECM, 2020 U.S. Dist. LEXIS 68742, at *2-3 (M.D. Ala. Apr. 20, 2020) (considering recording of meeting and transcript thereof referenced in complaint in deciding motion to dismiss). When the allegations and records incorporated into the complaint conflict, the records control. *See Griffin Industries v. Irvin*, 496 F.3d 1189, 1206 (11th Cir. 2007).

[3] Patients may enter into "single case agreements" with providers for reimbursements at preset rates, but Plaintiff does not allege any "single case agreements" here. *See* Am. Compl. at 14 n.14.

underpaid for services it provided to Plan member patients and that it would not have provided services to Plan member patients without prepayments if it had known that the Plan used ELAP to determine Plan reimbursement limits. *Id.*, ¶ 175.[4]

Plaintiff alleges that it decides whether to provide non-emergent services to a patient without advance payment during the patient admission process based on the patient's ID card. *Id.*, ¶¶ 74-76. Plaintiff alleges that a patient ID card generally informs it of the patient's plan, the plan's third-party administrator, and whether the patient has access to a PPO network. *Id.*, ¶ 75. Plaintiff asserts that its facilities purportedly rely on information derived from the ID card to determine whether its services are "in-network" and will be "paid at a pre-negotiated contractual rate." *Id.* Plaintiff also "contacts the plan's third-party administrator to obtain prior authorization and to ensure the healthcare services are covered." *Id.*, ¶ 76.

Plaintiff asserts that ID cards created by ELAP for Plan members are deceptive, arguing that the ID cards do not conspicuously disclose that the Plans use ELAP. *Id.*, ¶¶ 13, 81. Plaintiff also alleges that references on the ID cards to MultiPlan or PHCS lead it to believe that its facilities are "in-network" when they are not. *Id.*, ¶¶ 87, 97. Plaintiff falsely asserts that it would not provide services to anyone with an out-of-network health plan that uses ELAP without prepayment, and that the ID cards misled it into treating Plan members without prepayment. *Id.*, ¶¶ 83, 87.

Plaintiff further alleges that, for non-emergent services, when a patient presents one of these ID cards Plaintiff contacts GPA to determine if prior authorization is required. *Id.*, ¶ 112. *Significantly, Plaintiff does not allege that it ever called GPA to ask about the Plan benefits or reimbursement limits.* Instead, Plaintiff avers that "GPA fails to *adequately* disclose to Plaintiff …

---

[4] This critical allegation has already been refuted because Plaintiff indisputably treated the specific patients identified in the original Complaint after being told that ELAP would audit those claims and precisely how Plan reimbursements would be calculated. *See* Factual Background § VI *infra*.

that the services will be paid using Reference Based Pricing and that the rates in the provider's contract with MultiPlan will not be applied to facility services." *Id.*, ¶ 113 (emphasis added). Plaintiff admits that in the transactions it identified in the original Complaint, as discussed below, GPA told Plaintiff that ELAP was involved and how reimbursement limits would be set. *Id.*, ¶ 114.

**V.     The ID Cards Disclosed That Plaintiff's Facilities Were Out-of-Network And That The Plans Use ELAP To Determine The Plans' Reimbursement Limits.**

The ID card reproduced in paragraph 96 of the Amended Complaint contains references to PHCS and Multiplan, which are companies that administer several types of networks, and indicates that the member's coverage is "Practitioner Only." *See* Am. Compl. ¶ 96. "Practitioner Only" means that the Plan's network only applies to physician, and not hospital facilities. The ID card indicates that a person can "Find Physicians at www.multiplan.com." *See id.* Both MultiPlan and PHCS offer physician-only networks, as evidenced by the ID card itself. Plaintiff admits that some Plans contract with MultiPlan only for physician services. *Id.*, ¶¶ 88, 95-96. *See also* Ex. A at 43 (deleting false allegation that "MultiPlan does not have a separate 'physician only' network"). As shown in the printouts from Multiplan's website referenced on the ID card attached hereto as **Exhibit B**, MultiPlan offers, *inter alia*, a "PHCS Practitioner and Ancillary Network" and a "MultiPlan Practitioner and Ancillary Network." *See* Ex. B at 1, 15, 20-22, 25-27, 30-32, 35-37. The ID card does not reference any "PPO" network applicable to hospitals.

The ID cards notify "Providers" like Plaintiff that they can find a "Summary of Benefits" by visiting the GPA website or calling GPA. Am. Compl. ¶ 96. The ID cards also notify "Providers" like Plaintiff that "For Additional Information" they can visit the "planlimit" website listed on the card, for example "http://www.planlimit.com/wr-meadows/." *See id.; id.*, ¶ 13. When that website address is entered into a browser, the provider is automatically redirected to a page that provides additional information about the Plan, in this case

"https://s3.amazonaws.com/planlimit/PlanB/index.html," a copy of which is attached hereto as **Exhibit C**. The website contains extensive, detailed information about reimbursement that could not possibly fit on an ID card. It informs the provider that "[t]his Plan does not have a PPO agreement that includes charges from hospitals and other facilities." *Id.* at 1. The website also "explains the Plan's provisions for determination of covered charges for facilities and the rights granted to providers of service for appealing adverse benefit determinations." *Id.* The website discloses that Defendant "ELAP Services, LLC" is the Plan's "Designated Decision Maker" that reviews and audits provider bills for "excessive or unreasonable fees and charges for services which are not medically appropriate," and that claims "may be reduced for any charges that are determined to be in excess of Allowable Claim Limits." *Id.* The website defines the Plan's ACL and specifies that the ACL for claims submitted for reimbursement by a healthcare facility will be based on the greater of 112% of the facility's reported costs or 120% of what Medicare would pay. *See id.* at 2. Plaintiff admits that all of this information is available on the planlimit.com website. Am. Compl. ¶ 85. [*So much for Plaintiff's allegations that this information was "omitted."*]

## VI.    GPA Told Plaintiff That Its Facilities Were Out-of-Network And That ELAP Would Audit Its Claims And Determine The Plans' Reimbursement Limits.

Plaintiff previously made specific allegations about two "[r]epresentative" Plan member patients: M.J. and C.S. Compl. ¶¶ 176–198. The Amended Complaint deleted the discussion of those transactions, but alludes to the recorded calls for their transactions. *See* Am. Compl. ¶ 114. The call recordings and unredacted transcripts thereof were submitted under seal. *See* D.E. 18-19.

C.S. sought healthcare services from Plaintiff in March 2019. Compl. ¶ 177. C.S. presented an ID card identifying GPA as the administrator and including the Multiplan logo. *Id.*, ¶ 178. The ID card for C.S., a copy of which is attached to the Declaration **Exhibit 4**, contains the logo for PHCS's "Practitioner Only" network. Plaintiff called GPA to obtain authorization. Compl. ¶ 179.

That phone call was recorded, and a certified transcript of the call is attached to the Declaration as **Exhibit 6**. During the call, GPA told Plaintiff the network was for physicians only and there was no network for hospitals. *See* Dec. Ex. 6 at Tr. 5:13-19, 8:7-18, 14:3-7. GPA also told Plaintiff exactly how ELAP would determine the ACL: "our facility claims are audited by ELAP. That is to determine the plan's allowable. This audit is based on Medicare rates plus 20% or the provider's self-reported cost plus 12%, whichever is the higher of the two calculations." *Id.* at Tr. 12:4-12.

The other patient, M.J., sought healthcare services from Plaintiff in April 2019 and presented an ID card. Compl. ¶¶ 188-189. The ID card presented by M.J., a copy of which is attached to the Declaration as **Exhibit 5**, contains the logo for PHCS's "Practitioner & Ancillary Only" network. Plaintiff called GPA concerning M.J.'s benefits. Compl. ¶ 190. That phone call was recorded and a certified transcript of the call is attached to the Declaration as **Exhibit 7**. During the call, GPA told Plaintiff there was no network for facility claims. *See* Dec. Ex. 7 at Tr. 9:12-19. GPA twice told Plaintiff that hospital "claims are audited by ELAP to determine the plan's allowable and this audit is based on the Medicare rates plus 20% or self-reported provider cost plus 12%, whichever is higher." *See id.* at Tr. 8:8-9:19. [*Where is the allegedly deceitful conduct?!*]

## ARGUMENT

I.    **The Amended Complaint Should Be Dismissed With Prejudice Under Rule 12(b)(6).**

A.    **The Amended Complaint Fails To State A FDUTPA Claim.**

FDUTPA prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1). The statute's application is limited to "the advertising, soliciting, providing, offering, or distributing, whether by sale, rental, or otherwise, of any good or service, or any property…." Fla. Stat. § 501.203(8) (defining "trade or commerce"). To establish a FDUTPA claim, the plaintiff must prove "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *Guerrero v. Target Corp.*, 889 F. Supp. 2d 1348, 1355 (S.D. Fla. 2012).

Here, the FDUTPA claim fails because Plaintiff does not allege any deceptive or unfair conduct that (1) falls within the scope of FDUTPA, and (2) actually caused Plaintiff any harm.

      **1.**      **The FDUTPA Claim Fails Because The Alleged Conduct Falls Outside FDUTPA's Limited Remedial Scope.**

A FDUTPA claim must allege that the defendant unfairly or deceptively advertised, solicited, provided, offered, or distributed a good or service *to the plaintiff*. *See Williams v. Nationwide Credit, Inc.*, 890 F. Supp. 2d 1319, 1322 (S.D. Fla. 2012). In *Williams*, the plaintiff alleged that Nationwide violated FDUTPA by making dozens of automated calls to her cell phone for the purpose of collecting a debt her ex-husband owed to American Express Centurion Bank. *Id.* at 1322. Nationwide moved to dismiss the FDUTPA claim based on its argument that FDUTPA did not apply because it was not engaged in any "trade or commerce" vis-à-vis the plaintiff. *Id.* at 1321. The plaintiff argued that Nationwide was involved in trade or commerce because it was "'providing' a 'service' to American Express … by making debt collection phone calls" on its behalf, and that she was "aggrieved by Nationwide's relationship to American Express, because that relationship led to collection phone calls." *Id.* The district court rejected plaintiff's theory and dismissed her FDUTPA claim because, regardless of how unfair or deceptive the phone calls were, "[n]o goods or services were offered to her," and thus "Nationwide was not engaged [in] 'trade or commerce' as to Plaintiff in making those calls." *Id.* at 1322.

The FDUTPA claim here suffers from the same defect: Defendants were not involved in "trade or commerce" with Plaintiff. The Amended Complaint does not allege that Defendants advertised, solicited, provided, offered, or distributed any good or service to Plaintiff. *See* Am. Compl. ¶¶ 170. Instead, Plaintiff merely alleges that it provided services to Plan members and expected that it would be reimbursed at pre-negotiated rates. *See id.*, ¶¶ 173, 175. Because Plaintiff was the seller and not the buyer here, its FDUTPA claim should be dismissed with prejudice. *See*

*Hughes Supply, Inc. v. Cont'l Recovery Servs. Corp.*, Case No. 6:07-cv-1009-Orl-31KRS, 2007 U.S. Dist. LEXIS 52916, at *7 (M.D. Fla. July 23, 2007) (dismissing seller's FDUTPA claim).

> **2.     The FDUTPA Claim Fails Because Plaintiff Fails To Allege Any Deceptive Or Unfair Conduct That Caused Any Actual Damages.**

To determine whether any deception or unfair conduct occurred, Florida courts "consider whether the alleged omission is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment." *Broward Motorsports of Palm Beach, LLC v. Polaris Sales, Inc.*, No. 17-cv-81100-BLOOM/Hopkins, 2018 U.S. Dist. LEXIS 31376, at *25 (S.D. Fla. Feb. 27, 2018) (citation and internal quotation marks omitted). *See also Hill Dermaceuticals, Inc. v. Anthem, Inc.*, 228 F. Supp. 3d 1292, 1302 (M.D. Fla. 2017) (an "unfair practice" is one that "causes substantial injury … which the consumer could not have reasonably avoided…").

The Amended Complaint's central allegation is that Plaintiff was "deceived" into providing services to Plan members without prepayment because Defendants did not disclose during the admission process that the Plans used ELAP to determine Plan reimbursement limits. *See* Am. Compl. ¶¶ 79-80. Specifically, Plaintiff alleges that the patients' ID cards fooled it into believing that it would be reimbursed for its non-emergent services at pre-negotiated rates because they referenced companies that have participation agreements with Plaintiff, but did not *conspicuously* disclose that the Plan's network only applied to physician services and that reimbursements would be based on the Plan's reimbursement formulas as determined by ELAP. *See id.*, ¶¶ 10, 80-97. However, the actual documents and recorded phone calls referenced in the Amended Complaint show that Plaintiff in fact received the information it alleges was omitted and that Plaintiff's purported "belief" that it would be reimbursed at in-network rates is patently unreasonable. These records also disprove Plaintiff's false allegation that it would not have provided treatment if it had known about ELAP's involvement and the Plan's ACL. *See* Dec. Exs. 4-7.

The PHCS logo on the ID card reproduced in the Amended Complaint specifies that the patient's Plan is part of a "Practitioner Only" network. *See* Am. Compl. ¶ 96. The ID cards for the "representative" patients the original Complaint cited contain the same language, clearly indicating the network does not include hospitals. *See* Dec. Exs. 4, 5. "Practitioner Only" means that the Plan's network only applies to physician and ancillary services, and not hospital facilities. The ID cards instruct the reader to "Find Physicians at www.multiplan.com." *See id.* The MultiPlan website shows that MultiPlan offers a "PHCS Practitioner and Ancillary Network" and a "MultiPlan Practitioner and Ancillary Network." *See* Ex. B at 1, 15, 20-22, 25-27, 30-32, 35-37.

In conclusory fashion, Plaintiff asserts that a reference to MultiPlan or PHCS made it believe that the network covered hospitals. But, as Plaintiff admits, PCHS and MultiPlan also offer networks that only cover physician services. *See id.*; Am. Compl. ¶¶ 88, 95-96. Thus a mere reference to PHCS or MultiPlan – which are companies that administer networks, and not the networks themselves – would not lead a hospital to assume (unreasonably) that its services were in-network. Instead, the hospital would look for the particular network involved. Here, the PCHS logo and description of the network as "Practitioner Only" is conspicuously located at the very top of the ID Card in the box that describes the patient's "Medical Plan." The ID card does not make any affirmative representations that facility services are in-network. Therefore, Plaintiff cannot have reasonably assumed that its facilities were in-network and would be paid pre-negotiated rates.

The ID card also disclosed ELAP's involvement and the Plan reimbursement limits. Under the notice to "Providers," the ID card instructed Plaintiff to visit planlimit.com for more information. Am. Compl. ¶ 96. As the name "planlimit.com" indicates, the website outlines the Plan's reimbursement limits: the Plan's PPO network applies to only physician and ancillary services, and not facilities; the Plan uses ELAP as its designated decisionmaker; and the Plan will

- 12 -

reimburse facility services via formulas using industry standard benchmarks. *See* Ex. C at 1-2. Plaintiff, therefore, was on notice of all of the information it now avers was omitted.

In addition, Plaintiff admits that it called GPA in connection with every non-emergent patient visit, and Plaintiff could have simply asked GPA for the information it unconvincingly argues was not "conspicuously" disclosed on the ID card. Am. Compl. ¶ 112. For each of the "representative" patient transactions cited in the original Complaint, the recorded phone calls conclusively show GPA told Plaintiff the network applied to physicians only, there was no network for hospitals, and Plaintiff's claims would be paid at the greater of the hospital's actual cost plus 12% or the amount Medicare would have paid plus 20%. *See* Dec. Ex. 6 at Tr. 12:4-12; Ex. 7 at Tr. 8:8-9:19. Plaintiff knew exactly how it would be reimbursed when it treated those patients.

The Amended Complaint fails to allege any "unfair" or "deceptive" conduct that caused Plaintiff harm because all of the allegedly omitted information was disclosed to or was readily available to Plaintiff, and a reasonable hospital system would not have been "misled." *Broward Motorsports*, 2018 U.S. Dist. LEXIS 31376, at *25-26 (dismissing FDUTPA claim because Plaintiff's "belief" that it had an everlasting dealership agreement was "unreasonable" based on the contract terms and existing law). The FDUTPA claim should be dismissed with prejudice.

### B.     The Amended Complaint Fails To State An Unjust Enrichment Claim.

Plaintiff's unjust enrichment claim fails for two reasons: (1) Plaintiff's rights and remedies are governed by express contracts, and (2) Plaintiff did not confer any direct benefit on Defendants.

First, Plaintiff seeks to recover its "lost benefit of the bargain" for providing services to members. *See*, *e.g.*, Am. Compl. ¶¶ 141-144. Plaintiff's right to reimbursement for the services it provided to Plan members is defined by the Plan Documents. *See*, *e.g.*, Dec. Ex. 8. Because express contracts govern Plaintiff's rights and remedies, the unjust enrichment claim should be dismissed. *See Berry v. Budget Rent a Car Sys., Inc.*, 497 F. Supp. 2d 1361, 1369 (S.D. Fla. 2007) (dismissing

unjust enrichment claim where a contract "address[ed] the matter complained of").

Second, a plaintiff cannot pursue an unjust enrichment claim where it has not conferred a "direct benefit" upon the defendant. *Extraordinary Title Servs., LLC v. Fla. Power & Light Co.*, 1 So. 3d 400, 404 (Fla. 2d D.C.A. 2009). It is well-settled that where a medical provider treats a patient, the "benefit" flows to the patient, not to the health plan or its agents. *See*, *e.g.*, *Adventist Health Sys./Sunbelt Inc. v. Med. Sav. Ins. Co.,* No. 6:03-cv-1121-Orl-19KRS, 2004 U.S. Dist. LEXIS 30976, at *18-19 (M.D. Fla. Mar. 8, 2004) (dismissing provider's unjust enrichment claim against insurer because "the benefits of healthcare treatment flow to patients," not insurers); *Hialeah Physicians Care, LLC v. Conn. Gen. Life Ins. Co.,* Case No. 13-21895-CIV-KING, 2013 U.S. Dist. LEXIS 102007, at *11 (S.D. Fla. July 22, 2013) (same). Because Plaintiff did not confer any direct benefit on Defendants, its unjust enrichment should be dismissed with prejudice.

## II.     Plaintiff's State-Law Claims Are Preempted By ERISA.

Any healthcare plan that is established or maintained by an employer qualifies as an "employee welfare benefit plan" under ERISA. *See* 29 U.S.C. § 1002(1). The only Plans Plaintiff has cited are indisputably ERISA plans. *See* Dec. Exs. 1, 2, 8. *See also* Am. Compl., ¶ 61 n.11 (apparently conceding that the Plans at issue are governed by ERISA). The Amended Complaint is replete with allegations that Defendants underpaid health care claims. Am. Compl. ¶¶ 5, 6, 43, 68, 118, 119, 157. Because "the central, predominant issue at the heart of this case" "is ELAP's systematic method of underpaying health care providers, like Plaintiff, for the health care services provided to ELAP's clients," *id.*, ¶ 5, Plaintiff's claims seek nothing more than additional benefits from ERISA health plans.

Congress enacted ERISA for employers to "establish a uniform administrative scheme," with "standard procedures to guide processing of claims and disbursement of benefits." *Kennedy*

*v. Plan Adm'r for DuPont Sav. & Inv. Plan,* 555 U.S. 285, 300 (2009) (internal quotations omitted). "To this end, ERISA includes expansive pre-emption provisions, ERISA § 514, 29 U.S.C. § 1144, which are intended to ensure that employee benefit plan regulation would be 'exclusively a federal concern.'" *Aetna Health Inc. v. Davila,* 542 U.S. 200, 208 (2004) (internal quotations omitted).

There are two types of ERISA preemption: (1) complete preemption; and (2) conflict preemption. *Conn. State Dental Ass'n v. Anthem Health Plans, Inc.*, 591 F.3d 1337, 1343 (11th Cir. 2009). At issue here is the broader form of preemption, known as conflict preemption, which provides that ERISA "'shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan.'" *In re Managed Care Litig.*, 595 F. Supp. 2d 1349, 1355 (S.D. Fla. Nov. 6, 2008) (quoting 29 U.S.C. § 1144(a)).

Conflict preemption is broadly applied to advance Congress' intent to ensure uniform regulation of employee welfare benefit plans. *See Shaw v. Delta Airlines, Inc.,* 463 U.S. 85 (1983). A state-law claim "relates to" an ERISA plan "if it has a connection with or reference to such a plan." *Id.* at 96-97. Stated differently, if the "existence of [an ERISA] plan is a critical factor in establishing liability" under a state-law claim, that cause of action is preempted. *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 136, 139-40 (1990). *See also Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 43, 57 (1987) ("state common law tort and contract actions asserting improper process of a claim for benefits" are preempted by ERISA). State-law claims similar to those Plaintiff asserts here, *i.e.*, those that merely seek additional benefits from ERISA plans, are routinely dismissed based on ERISA conflict preemption. *See*, *e.g.*, *Alcalde v. Blue Cross & Blue Shield of Fla., Inc.*, 62 F. Supp. 3d 1360, 1365 (S.D. Fla. 2014) (ERISA preempted provider's claims against health plan for breach of contract, *quantum meruit*/unjust enrichment, and under FDUTPA because determining any amounts owed by health plan required reference to ERISA plan); *FFP, LLC v.*

*UnitedHealthcare Ins. Co.*, No. 0:18-cv-60696-UU, 2018 U.S. Dist. LEXIS 96062, at *6-7 (S.D. Fla. June 5, 2018) (ERISA preempted provider's contract and quasi-contract claims for underpayments because amount insurer owed would be determined under an ERISA plan); *Columna, Inc. v. UnitedHealthcare Ins. Co.*, Case No. 9:18-cv-81737-WPD, 2019 WL 2076796, at *3 (S.D. Fla. Apr. 29, 2019) (dismissing quasi-contract claims as preempted by ERISA).

Here, the state-law claims Plaintiff asserts concerning self-funded ERISA Plans unquestionably "relate to" those ERISA Plans. Through this action, Plaintiff is attempting to invalidate and circumvent the terms in the Plans that determine how providers like Plaintiff will be reimbursed for medical services. *See*, *e.g.*, Am. Compl., ¶ 53 (alleging that the Plans set arbitrary amounts for provider reimbursement); *id.*, ¶¶ 117-126 (alleging that the Plans' claim and appeals process is a "sham"). Plaintiff's FDUTPA claim is predicated on the allegations that Plaintiff was underpaid based on the application of the ACL under the Plan Documents. *See* Am. Compl. ¶¶ 173, 181. These allegations of arbitrary payments and an inadequate appeal process implicate ERISA, and essentially complain that the wrong amounts were paid under the Plans. Similar FDUTPA claims in this District have been preempted. *See Alcalde*, 62 F. Supp. 3d at 1365.

Plaintiff's unjust enrichment claim alleges that a benefit was derived by underpayment of its claims, but such benefits, if any, inured to the self-funded ERISA Plans and the participants. *See id.*, ¶¶ 186-188. Plaintiff also alleges that the Plans are "legally and contractually obligated to provide and pay for" the services that it provided. *Id.*, ¶ 186. To the extent any such obligations exist, it is only because of the ERISA self-funded Plans.

Plaintiff's state-law claims are preempted by ERISA and should be dismissed.

III. **Alternatively, The Court Should Dismiss Or Strike The Class Claims And Allegations.**

Rule 23 instructs courts to determine whether to certify a class action "[a]t an early

practicable time after a person sues." *See* Fed. R. Civ. P. 23(c)(1)(A). Rule 23 also authorizes

courts to "require that the pleadings be amended to eliminate allegations about absent persons and

that the action proceed accordingly" or to "deal with similar procedural matters." *See* Fed. R. Civ.

P. 23(d)(1)(D)-(E). Accordingly, "[w]hen the propriety of a class action procedure is plain from

the initial pleadings, a district court may rule on this issue prior to the filing of a motion for class

certification." *MRI Assocs. of Saint Pete v. State Farm Mut. Auto. Ins. Co.*, 755 F. Supp. 2d 1205,

1207 (M.D. Fla. 2010). District courts in the Eleventh Circuit have determined whether to

eliminate class claims both under a motion to dismiss standard and under a motion to strike

standard. *See id.* (granting motion to dismiss class allegations); *Vandenbrink v. State Farm Auto.*

*Ins. Co.*, Case No. 8:12-cv-897-T-30TBM, 2012 U.S. Dist. LEXIS 108696, at *8-9 (M.D. Fla.

August 3, 2012) (granting motion to strike class allegations). The Eleventh Circuit has not yet

determined which standard applies, but it has affirmed decisions striking class allegations that

would not support a class action. *See Griffin v. Singletary*, 17 F.3d 356, 361 (11th Cir. 1994).

Here, Plaintiff's class claims and allegations should be eliminated under either standard.

**A.      Plaintiff's Facially Defective Class Claims Should Be Dismissed.**

For a class to be certified, it "must satisfy the four requirements of Rule 23(a): numerosity,

commonality, typicality, and adequacy of representation." *AA Suncoast Chiropractic Clinic, P.A.*

*v. Progressive Am. Ins. Co.*, 938 F.3d 1170, 1174 (11th Cir. 2019). The additional requirements of

Rule 23 depend on whether the plaintiff purports to represent a "damages class" or an "injunction

class." *Id.* at 1174. A damages class requires the plaintiff to show that "questions of law or fact

common to class members predominate over any questions affecting only individual members,

and that a class action is superior to other available methods for fairly and efficiently adjudicating

the controversy." Fed. R. Civ. P. 23(b)(3). An injunction class requires the plaintiff to show that

"the party opposing the class has acted or refused to act on grounds that apply generally to the

class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). The proposed classes cannot meet those requirements.

### 1.    The Class Claims For Damages Fail.

Plaintiff proposes to represent classes of "healthcare facility providers," in Florida and across the United States, "with underpaid … claims for healthcare services provided to ELAP plan members." Am. Compl. ¶¶ 145, 147-150. But Plaintiff's damages claims cannot be adjudicated in a class action because it is clear that Plaintiff cannot prove typicality, predominance, or superiority.

First, Plaintiff's claims are atypical because each provider's claims will require an analysis of countless disparate contracts, including each facility's unique patient agreements and single-case agreements. Plaintiff's claims are not typical because it fails to allege a "common contract among all class members." *See Vega v. Mobile USA, Inc.*, 564 F.3d 1256, 1276 (11th Cir. 2009).

Second, individualized issues plainly will predominate over common questions. For Plaintiff to succeed on its claims as to each patient transaction, it will need to prove, *inter alia*: (1) a financial obligation from the patient to the facility; (2) a "deceptive" ID card; (3) "deceptive" communications between the facility and GPA; (4) whether Plaintiff was already aware that the patient's Plan used ELAP as its designated decisionmaker; (5) the services it provided; (6) the prices it charged; (7) the amounts the Plan and patient paid; and (8) the reasonable value of its services. As to the latter issue, "several factors" will be relevant to determining the reasonable value of Plaintiff's services, including its "internal cost structure, the usual and customary rate [Plaintiff] charges and receives for these services, and what other hospitals in the relevant market charge for similar services." *Colomar v. Mercy Hosp., Inc.*, 461 F. Supp. 2d 1265, 1274 (S.D. Fla. 2006). The claims and defenses for every single patient transaction will necessitate fact-intensive inquiries into issues of deception, knowledge, and the existence and amount of any damages. A trial for the claims of one hospital system – let alone the claims of "thousands" of hospitals across

the country or even the "hundreds" of hospitals in Florida, Am. Compl. ¶ 154 – would be a herculean task. Plaintiff cannot prove that common questions predominate here.

Third, it is readily apparent that litigating these claims in a class action is not superior under the Rule 23(b)(3) factors. There is no manageable process for resolving the individualized claims and defenses associated with each patient transaction. Putative class members would have a strong interest in controlling the litigation of their individual claims given the potential alleged damages. And consolidating their claims in one forum is undesirable because it would require a jury to decide the reasonable value of virtually every healthcare service for disparate markets across the country.

Because no class could ever be certified, Plaintiff's class claims should be dismissed.

### 2.    The Class Claims For Declaratory Or Injunctive Relief Fail.

The "key" to a Rule 23(b)(2) class is the "indivisible nature of the injunctive or declaratory remedy warranted," such that "Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2557, 180 L. Ed. 2d 374 (2011) (internal quotation marks omitted).

In addition to Plaintiff's lack of typicality, the putative class claims would require too many individualized determinations such that class-wide injunctive or declaratory relief is impracticable. Plaintiff seeks a declaration that the alleged conduct "violates FDUTPA" and an injunction against "further such violations." Am. Compl. ¶ 180. A jury cannot decide whether Defendants violated the consumer protection laws in every patient transaction without doing a case-by-case analysis of all of the issues identified above for each patient transaction. *See* Argument § III.A.1, *supra*. Because no declaratory or injunctive relief could be universally granted, the Amended Complaint fails to state class claims for declaratory or injunctive relief. *See MRI Assocs.*, 755 F. Supp. 2d at 1208 (dismissing class claims for injunctive and declaratory relief alleging insurer "underpaid" providers because individual determinations of "reasonable" reimbursements predominated).

The proposed injunction class also fails because it is "not suitably crafted for prospective relief" and the class primarily is seeking "retrospective relief." *AA Suncoast*, 938 F.3d at 1178. Damages "must be incidental to the equitable and declaratory relief because the basic premise of such a class action … begins to break down when the class seeks to recover monetary relief to be allocated based on individual injuries." *Cooper v. Southern Co.*, 390 F.3d 695, 720 (11th Cir. 2004). The Amended Complaint primarily seeks money damages for alleged past harm; hence why the proposed classes are defined to include "healthcare facility providers" with "underpaid … claims for healthcare services." Am. Compl. ¶¶ 147-150. Because the alleged money damages are not incidental to the injunctive and declaratory relief requested and will necessitate individualized inquiries for each provider, the class claims for declaratory or injunctive relief should be dismissed.

### B. Or, The Court Should Strike The Immaterial Class Allegations.

This Court may exercise its discretion to strike "immaterial" allegations from the Amended Complaint that bear no possible relation to the controversy or may cause prejudice to Defendants. *See* Fed. R. Civ. P. 12(f); *Blake v. Batmasian*, 318 F.R.D. 698, 700-01 (S.D. Fla. 2017). Because no class could ever be certified, *see* Argument § III.A *supra*, the class allegations bear no possible relation to this controversy and are "immaterial." Letting the class claims proceed would cause Defendants to waste substantial time and resources in discovery and in opposing a motion for class certification that would be dead on arrival. The Court should strike the immaterial class allegations.

### <u>CONCLUSION</u>

Accordingly, Defendants respectfully request that the Court dismiss Plaintiff's Amended Complaint with prejudice, and award them their reasonable attorney's fees and costs as the prevailing parties under FDUTPA and/or under the Court's inherent power to sanction. Alternatively, if any claims survive – though they should not – Defendants respectfully request that the Court dismiss the class claims (or strike the class allegations) in the Amended Complaint.

Respectfully submitted this 14th day of August, 2020.

**FISHERBROYLES, LLP**

/s/ *Irene Oria*
Robert T. Wright, Jr., Esq.
FL Bar No. 185525
Irene Oria, Esq.
FL Bar No. 484570
FisherBroyles, LLP
199 E. Flagler St. #550
Miami, FL 33131
Tel.: (786) 536-2838
Fax: (305) 536-2838
robert.wright@fisherbroyles.com
irene.oria@fisherbroyles.com

Patrick M. Emery, Esq. (*pro hac vice*)
GA Bar No. 821303
PA Bar No. 306672
Kris Alderman, Esq. (*pro hac vice*)
GA Bar No. 179645
FisherBroyles, LLP
945 East Paces Ferry Rd NE, Suite 2000
Atlanta, GA 30326
(404) 793-0652
patrick.emery@fisherbroyles.com
kris.alderman@fisherbroyles.com

**AKERMAN LLP**

Irene Bassel Frick, Esq.
FL Bar No. 0158739
Gera R. Peoples, Esq.
FL Bar No. 450022
401 E. Jackson Street, Suite 1700
Tampa, FL 33602-5250
Phone: (813) 223-7333
Fax: (813) 223-2837
irene.basselfrick@akerman.com
gera.peoples@akerman.com

*Counsel for Defendants ELAP Services, LLC and Group & Pension Administrators, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 14, 2020, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the counsel of record identified on the Service List below.

/s/ *Irene Oria*
Irene Oria, Esq.

## <u>SERVICE LIST</u>

**KOZYAK TROPIN &**
**THROCKMORTON LLP**

Gail McQuilkin, Esq.
Tal J. Lifshitz, Esq.
Benjamin Jacobs Widlanski, Esq.
Eric S. Kay, Esq.
2525 Ponce de Leon Blvd., 9th Floor
Coral Gables, FL 33134
Telephone: (305) 372-1800
Facsimile: (305) 372-3508
gam@kttlaw.com
tjl@kttlaw.com
bwidlanski@kttlaw.com
ekay@kttlaw.com

*Counsel for Plaintiff*

**WOLFE | PINCAVAGE**

Douglas A. Wolfe, Esq.
Danya J. Pincavage, Esq.
Omar Ali-Shamaa, Esq.
2937 SW 27th Ave., Suite 302
Miami, FL 33133
Telephone: (786) 409-0800
doug@wolfepincavage.com
danya@wolfepincavage.com
omar@wolfepincavage.com