# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| **SOUTH BROWARD HOSPITAL DISTRICT, D/B/A/ MEMORIAL HEALTHCARE SYSTEM,** on its own behalf and on behalf of other similarly situated healthcare facilities, <br><br> Plaintiff, <br><br> **ELAP SERVICES, LLC and GROUP & PENSION ADMINISTRATORS, INC.,** <br><br> Defendants. | Case No. 0:20-cv-61007-AHS |

## DEFENDANTS' JOINT REPLY SUPPORTING MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT [D.E. 24], OR, ALTERNATIVELY, TO DISMISS OR STRIKE THE CLASS ALLEGATIONS

**FISHERBROYLES, LLP**

Robert T. Wright, Jr., Esq.
FL Bar No. 185525
Irene Oria, Esq.
FL Bar No. 484570
199 E. Flagler St. #550
Miami, FL 33131
Tel.: (305) 536-2838
Fax: (305) 536-2838
robert.wright@fisherbroyles.com
irene.oria@fisherbroyles.com

Patrick M. Emery, Esq. (*pro hac vice*)
GA Bar No. 821303; PA Bar No. 306672
Kris Alderman, Esq. (*pro hac vice*)
GA Bar No. 179645
945 East Paces Ferry Rd NE, Suite 2000
Atlanta, GA 30326
Tel.: (404) 793-0652
patrick.emery@fisherbroyles.com
kris.alderman@fisherbroyles.com

**AKERMAN LLP**

Irene Bassel Frick, Esq.
FL Bar No. 0158739
Gera R. Peoples, Esq.
FL Bar No. 450022
401 E. Jackson Street, Suite 1700
Tampa, FL 33602-5250
Phone: (813) 223-7333
Fax: (813) 223-2837
irene.basselfrick@akerman.com
gera.peoples@akerman.com

*Counsel for Defendants ELAP Services, LLC and Group & Pension Administrators, Inc.*

# TABLE OF CONTENTS

**INTRODUCTION** .................................................................................................................. 1

**ARGUMENT** ........................................................................................................................... 3

    I.    The Amended Complaint Fails To State A FDUTPA Claim As A Matter Of Law ........... 3

        A.    Defendants Were Not Engaged In Trade Or Commerce With Plaintiff. ................. 3

        B.    Plaintiff Fails To Allege Any Deceit That Actually Caused It Harm. .................... 4

        C.    Plaintiff's Theory That It Can Bring A FDUTPA Claim As A Non-Consumer Fails Because Defendants Did Not Engage In Any Unfair Or Deceitful Conduct In Trade Or Commerce That Harmed Any Consumers ............................................ 6

    II.    The Unjust Enrichment Claim Fails As A Matter Of Law. .................................................. 7

    III.    Plaintiff's Claims Are Conflict Preempted Under ERISA. .................................................. 9

    IV.    The Amended Complaint On Its Face Shows That It Would Be Impossible To Litigate Plaintiff's Claims, Which Require Highly Individualized Inquiries, In A Class Action..... 9

**CONCLUSION** ..................................................................................................................... 10

## TABLE OF AUTHORITIES

**Cases:**

*Baker v. Baptist Hospital, Inc.*,
  115 So. 3d 1123 (Fla. App. 2013) ....................................................................................... 4

*Caribbean Cruise Line, Inc. v. Better Bus. Bureau of Palm Beach County, Inc.*,
  169 So. 3d 164 (Fla. App. 2015) ..................................................................................... 6-7

*Conn. State Dental Ass'n v. Anthem Health Plans, Inc.*,
  5491 F.3d 1337 (11th Cir. 2009) ........................................................................................ 9

*CWELT-2008 Series 1045 LLC v. PHH Corp.*,
  No. 1:20-cv-20334, 2020 U.S. Dist. LEXIS 91899 (S.D. Fla. May 27, 2020) ................... 6

*Extraordinary Title Servs., LLC v. Fla. Power & Light Co.*,
  1 So. 3d 400 (Fla. 2d DCA 2009) ...................................................................................... 7

*Hughes Supply, Inc. v. Cont'l Recovery Servs. Corp.*,
  Case No. 6:07-cv-1009-Orl-31KRS, 2007 U.S. Dist. LEXIS 52916
  (M.D. Fla. July 23, 2007) ................................................................................................... 3

*In re Managed Care Litig.*,
  595 F. Supp. 2d 1349 (S.D. Fla. 2009) .............................................................................. 9

*James D. Hinson Electric Contracting Co., Inc. v. BellSouth Telecommunications*,
  642 F. Supp. 2d 1318 (M.D. Fla. 2009) ............................................................................. 4

*Lordmann Enters., Inc. v. Equicor, Inc.*,
  32 F.3d 1529 (11th Cir. 1994) ............................................................................................ 9

*Mem'l Hosp. Sys. v. Northbrook Life Ins. Co.*,
  904 F.2d 236 (5th Cir. 1990) .............................................................................................. 9

*Rodriguez v. Health Options, Inc.*,
  No. 03-20429-CIV, 2003 WL 27391269 (S.D. Fla. Aug. 27, 2003) .................................. 9

*Shands Teaching Hospital & Clinics, Inc. v. Beech St. Corp.*,

    899 So. 2d 1222 (Fla. 1st DCA 2005) ................................................................................. 8

*State Farm Mutual Auto Insurance Co. v. Performance Orthopedics & Neurosurgery, LLC*,

    278 F. Supp. 3d 1307 (S.D. Fla. 2017) ................................................................................ 3

*Surgery Ctr. Of Viera, LLC v. UnitedHealthcare, Inc.*,

    Case No. 6:19-cv-2110-Orl-22DCI, 2020 U.S. Dist. LEXIS 25647

    (M.D. Fla. Feb. 11, 2020) ................................................................................................ 7-8

*Williams v. Nationwide Credit, Inc.*,

    890 F. Supp. 2d 1319 (S.D. Fla. 2012) ................................................................................ 3

*Wilson v. Everbank, N.A.*,

    77 F. Supp. 3d 1202 (S.D. Fla. 2015) .................................................................................. 8

## INTRODUCTION

Defendants' Motion to Dismiss Plaintiff's Amended Complaint, or, Alternatively, To Dismiss or Strike the Class Allegations demonstrates that the Amended Complaint fails to state a claim and should be dismissed with prejudice.[1] FDUTPA prohibits unfair and deceptive acts or practices in the conduct of trade or commerce. Plaintiff cannot state a FDUTPA claim because Defendants did not offer or sell any good or service to Plaintiff. The Amended Complaint also fails to satisfy FDUTPA's deception and causation requirements. None of the alleged conduct vis-à-vis Plaintiff was deceptive or actually caused it any harm. Plaintiff's conclusory allegations of "deceitful omissions" during the patient admission process are refuted by the facts and records that are expressly incorporated into the Amended Complaint: the ID Cards, the websites referenced on the ID Cards, and the recorded calls between Plaintiff and GPA. Plaintiff concedes it was not actually duped in the only two instances it has ever cited. Indeed, no reasonable hospital would have been "deceived" into thinking that it was going to be reimbursed at pre-negotiated rates when the ID Cards (1) plainly stated that the patient's healthcare plan was part of a "practitioner only" network, and (2) disclosed that information about the limits of the patient's plan could be found on the "planlimit" website, that information about in-network physicians could be found on the Mulitplan website, and that a summary of benefits could be obtained by calling GPA. Plaintiff admits that it called GPA for every patient visit, yet does not identify a single instance in which GPA did not tell it everything it supposedly wanted to know. Plaintiff's conclusory allegation that some other "reasonable hospital" may have been "deceived" by the ID Cards cannot be credited. Plaintiff does not allege any facts showing deceit or harm in support of its failed FDUTPA claim.

Recognizing these gaping holes in its FDUTPA claim, Plaintiff's Opposition argues that it

---

[1] Capitalized terms used herein retain the meanings ascribed to them in the Motion [D.E. 29], which is cited herein as "Mot." Plaintiff's Opposition [D.E. 31] is cited herein as "Opp."

can pursue a FDUTPA claim as long as someone else was deceived and was damaged. While some courts have held that non-consumers may have standing to bring a FDUTPA claim, non-consumers still must allege each element of a FDUTPA claim as to consumers. Plaintiff does not allege facts showing that Defendants engaged in any unfair or deceptive acts in trade or commerce that deceived and harmed consumers. The actual consumers of Defendants' services, as Plaintiff admits, are healthcare Plans. Defendants' contractually obligated administration and auditing of Plaintiff's reimbursement claims was reactive and obligatory, and thus did not involve trade or commerce. Moreover, the Amended Complaint merely alleges that Defendants do exactly what they say they will do under their contracts with the Plans: they process, calculate, and remit reimbursements based on the Plan limits. Plaintiff may not like the terms of the Plans, the Plans' hiring of Defendants, or the Plans' contracts with Multiplan/PHCS, but Plaintiff cannot base a FDUTPA claim on alleged conduct that is consistent with the terms of the Plans. Plaintiff also may believe that outcomes for the Plans are not as good as advertised, but that is not deceit or an actual damage, nor does it give rise to a cause of action for Plaintiff. Plaintiff's real gripe is how the Plans' contractual reimbursement limits impact its own bottom line. Plaintiff's disagreement with how the Plans determine the reasonable value of its services is not sufficient to state a FDUTPA claim. The FDUTPA claim fails under any theory, and should be dismissed with prejudice.

The unjust enrichment claim fails because (1) contrary to its conclusory allegations, Plaintiff did not confer a direct benefit on Defendants, and (2) Plaintiff cannot eschew contractual limits on its reimbursement rights under the Plans to seek relief from Defendants, who are Plan fiduciaries, through a quasi-contact claim. This claim, too, should be dismissed with prejudice.

Even then, Plaintiff's claims are conflict preempted by ERISA and should be dismissed.

Were this case to proceed, the facially defective class claims must be eliminated to avoid

wasting time and resources. No class will ever be certified because individualized inquiries abound. The entire action, and at a minimum the class claims, should be dismissed with prejudice.

## ARGUMENT

### I. The Amended Complaint Fails To State A FDUTPA Claim As A Matter Of Law.

#### A. Defendants Were Not Engaged In Trade Or Commerce With Plaintiff.

The FDUTPA claim fails because Plaintiff does not and cannot allege that Defendants advertised, solicited, provided, offered, or distributed a good or service to Plaintiff. *See* Mot. at 9-11. In conclusory fashion, Plaintiff argues that Defendants "provide a service to the facility in the form of coordinating payment for the treatment." Opp. at 7. But that was not a service performed for the Plaintiff. As Plaintiff admits, it has no contract with Defendants and did not pay them anything. *Id.* at 13. The claim processing and auditing services Defendants provided to the Plans were solely for the benefit of the Plans with whom they have contracts and the Plans' members. Because Defendants were not engaged in trade and commerce as to Plaintiff, the FDUTPA claim should be dismissed. *See Williams v. Nationwide Credit, Inc.*, 890 F. Supp. 2d 1319, 1322 (S.D. Fla. 2012) (dismissing FDUTPA claim because "[n]o goods or services were offered to her" when the collection company made calls to the plaintiff); *Hughes Supply, Inc. v. Cont'l Recovery Servs. Corp.*, Case No. 6:07-cv-1009-Orl-31KRS, 2007 U.S. Dist. LEXIS 52916, at *7 (M.D. Fla. July 23, 2007) (dismissing supplier's FDUTPA claim against its buyer because it was not a consumer).

Plaintiff cites three inapposite cases in support of its tortured argument that Defendants provided it a service. *See* Opp. at 7. First, *State Farm Mutual Auto Insurance Co. v. Performance Orthopedics & Neurosurgery, LLC*, 278 F. Supp. 3d 1307 (S.D. Fla. 2017), is cited for the noncontroversial, but irrelevant proposition that rendering health care services involves trade or commerce. Plaintiff's own treatment of patients does not support its argument that Defendants engage in trade or commerce with Plaintiff when Defendants provided services to their health plan

- 3 -

clients. Even less helpful to Plaintiff is *Baker v. Baptist Hospital, Inc.*, 115 So. 3d 1123, 1125-26 (Fla. App. 2013), which actually held that pursuing legal remedies by filing a hospital lien does not constitute trade or commerce. Finally, *James D. Hinson Electric Contracting Co., Inc. v. BellSouth Telecommunications*, 642 F. Supp. 2d 1318 (M.D. Fla. 2009), held that sending a bill for services rendered may constitute trade or commerce, but that is the exact opposite situation. Plaintiff fails to cite a single case to support its FDUTPA claim, which should be dismissed.

### B. Plaintiff Fails To Allege Any Deceit That Actually Caused It Harm.

Using the records cited in the Amended Complaint, the Motion demonstrated that all of the information Plaintiff alleges was omitted at the time of admission actually was disclosed or was readily available to Plaintiff such that there was no deceit. *See* Mot. 11-13. Contrary to Plaintiff's false allegation that it would never knowingly treat a patient who had a Plan with this kind of reimbursement limits, Plaintiff did exactly that on the only two occasions it has ever identified. *See id.* Ignoring reality, Plaintiff argues that a "reasonable healthcare provider could not reasonably avoid being duped by Defendants' scheme." Opp. at 2, 10. However, the records cited in the Amended Complaint disprove the fiction Plaintiff is trying to perpetrate. *See* Mot. at 11-13.

Plaintiff argues that because its contracts with MultiPlan do not allow MultiPlan to carve out facilities from its networks, the inclusion of a MultiPlan logo on an ID card would lead a "reasonable" provider to believe that its facilities were in-network. Opp. at 10. But Multiplan and PHCS are network administrators, and not networks. *See* Mot. at 12. And it is undisputed that MultiPlan has networks that carve out facilities. *Id.* Mere references to Multiplan or PHCS thus would not lead a reasonable provider to leap to the conclusion that its facility is in network. A reasonable provider would look at the ID Card to see what network was involved. The ID Card does not state that facilities are in-network; instead, it clearly states that the Multiplan or PHCS network is for physicians or practitioners only. *See* Mot. at 12-13. Plaintiff's assertion that a

hypothetical provider might believe its facilities were in-network is patently unreasonable.

Plaintiff next argues that a provider would see the PHCS or MultiPlan logo, yet somehow miss the phrase "Practitioner Only" or "Practitioner & Ancillary Only" that is part of (or right under) the logo. *See* Opp. at 10. That the word "PHCS" is in ALL CAPS makes no difference because it is an acronym, not an emphasis. And that "PHCS" is in gray font makes no difference because the phrase "Practitioner Only" is in gray font too. The network's title is plain as day.

As if that were not enough, the ID Card discloses the patient's benefits and network information in several more ways. *See* Mot. at 12-13. It explains immediately below the PHCS logo that "Physicians" (not hospitals or facilities) can be found on the Multiplan website. Under the notices to "Providers," the ID Card provides a link to the planlimit.com website that, as the name indicates, provides "Additional Information" about the limits of the Plan and its network. It also lists a phone number providers can call—which Plaintiff admits it did—to ask GPA about the "Summary of Benefits." Everything Plaintiff allegedly wanted to know was right under its nose.

Despite arguing that such logos are confusing or insufficient, Plaintiff complains that Defendants did not put ELAP's logo on the ID Card. Opp. at 7. More importantly, however, the ID Card lists the name and contact information of GPA, and Plaintiff acknowledges its awareness that GPA is one of the "leaders and co-founders of metric based pricing." *Id.* at 4. When Plaintiff called GPA, it was informed exactly how the claim would be audited by ELAP and paid. *See* Mot. at 13. Far from omitting anything, the ID Card furnished all of the material information Plaintiff alleges was not disclosed. This is not a matter of drawing "inferences," as Plaintiff argues. Opp. at 11-12. Common sense dictates that no reasonable provider would have been deceived.[2]

---

[2] Plaintiff does not dispute these facts or provide any contrary records; it just argues about admissibility. *See* Opp. at 11-12 and n.2 and 3. Yet, the Court may consider all of the records submitted with the Motion because each is referenced in and integral to the Amended Complaint.

### C. Plaintiff's Theory That It Can Bring A FDUTPA Claim As A Non-Consumer Fails Because Defendants Did Not Engage In Any Unfair Or Deceitful Conduct In Trade Or Commerce That Harmed Any Consumers.

Assuming *arguendo* that a non-consumer may even sue under FDUTPA, a non-consumer still must satisfy all of the requirements of a FDUTPA claim. *See CWELT-2008 Series 1045 LLC v. PHH Corp.*, No. 1:20-cv-20334, 2020 U.S. Dist. LEXIS 91899, at *14-21 (S.D. Fla. May 27, 2020) (dismissing non-consumer's FDUTPA claim because allegations about collection activities did not satisfy the causation and trade or commerce requirements). For starters, a non-consumer must allege unfair or deceptive acts in *trade or commerce with consumers*, which Plaintiff did not do. *See id.* Plaintiff argues without citing any facts that Defendants' administration and auditing of Plaintiff's claims for reimbursement from the Plans could harm consumers. *See* Opp. at 8-9. However, Defendant's "obligatory and reactive" conduct in response to Plaintiff's reimbursement claims, consistent with their contracts with the Plans, does not qualify as trade or commerce. *Cf. CWELT-2008 Series 1045 LLC*, 2020 U.S. Dist. LEXIS 91899, at *20-21 (collection company's provision of letter pursuant to its legal obligations did not qualify as trade or commerce). The FDUTPA claim should be dismissed because it fails to satisfy the trade or commerce requirement.

Additionally, when the plaintiff asserting a FDUTPA claim is a non-consumer, it must plead either (1) an unfair practice, which is defined as "'one that offends established public policy and one that is immoral, unethical, oppressive, unscrupulous or substantially injurious to

---

*See* Mot. at 4 n.2. The Multiplan and planlimit.com websites are referenced on the ID Card in paragraph 96 of Amended Complaint. Plaintiff even drew red circles around the website addresses to draw the Court's attention to these websites and their contents, and argues at length in the Amended Complaint about the impact of those websites. *See* Am. Compl. ¶¶ 13, 84-86, 96, 110 n.16. Plaintiff does not dispute the authenticity of the planlimit.com website, and incorrectly surmises that the printouts of the Multiplan websites are not authentic. *See* Opp. at 11 n.2. Paragraphs 114 and 115 of the Amended Complaint refer to the call recordings that were submitted with the prior motion to dismiss and were incorporated into this Motion. The authenticity of those call recordings and the transcripts thereof is undisputed. The Court, therefore, may consider all of these records in deciding this Motion.

*consumers*,'" or (2) a deceptive act, which is defined as "'a representation, omission, or practice that is likely to mislead the *consumer* acting reasonably in the circumstances, to the *consumer's detriment*.'" *Caribbean Cruise Line, Inc. v. Better Bus. Bureau of Palm Beach County, Inc.*, 169 So. 3d 164, 169 (Fla. App. 2015) (emphasis original) (citations omitted). A non-consumer plaintiff also must "prove that *there was an injury or detriment to consumers* in order to satisfy all of the elements of a FDUTPA claim." *Id.* at 169 (emphasis original). Plaintiff's FDUTPA claim fails because the alleged conduct is not unfair or deceptive (as discussed above) and, separately, did not deceive or injure consumers. The material allegations of the Amended Complaint and Plaintiff's arguments in its Opposition concern the purported deception of Plaintiff and other healthcare providers—none of which are consumers of Defendants' services. As Plaintiff admits, Defendants' "clients" and the actual consumers of its services are the Plans. *See* Opp. at 1 Aside from conclusory statements without any supporting factual allegations that the alleged conduct is "likely to cause consumer harm," Opp. at 8, Plaintiff makes no effort to satisfy this essential element of its FDUTPA claim. Because Plaintiff fails to allege any facts to support its claim that consumers were deceived or harmed, its FDUTPA claim should be dismissed with prejudice.

**II.    The Unjust Enrichment Claim Fails As A Matter Of Law.**

An essential element of an unjust enrichment claim is proof the plaintiff conferred a direct benefit on the defendant. *Extraordinary Title Servs., LLC v. Fla. Power & Light Co.*, 1 So. 3d 400, 404 (Fla. 2d DCA 2009). Plaintiff does not allege any <u>facts</u> showing that it directly conferred a benefit on Defendants, who are two steps removed from the provider-patient relationship and did not receive any services or payments from Plaintiff. The unjust enrichment claim thus fails.

The inapposite cases cited in the Opposition (at 12-13) do not support Plaintiff's argument. In the outlier decision in *Surgery Ctr. Of Viera, LLC v. UnitedHealthcare, Inc.*, the provider alleged that it was not reimbursed at pre-negotiated rates—which is not the situation here—and in

allowing the unjust enrichment claims against the insurer to proceed, the court ignored "several district court opinions" holding that "a healthcare provider who provides services to an insured does not benefit the insurer." Case No. 6:19-cv-2110-Orl-22DCI, 2020 U.S. Dist. LEXIS 25647, at *20 (M.D. Fla. Feb. 11, 2020). *See* Mot. at 14 (citing contrary authority). In *Shands Teaching Hospital & Clinics, Inc. v. Beech St. Corp.*, the provider stated an unjust enrichment claim against a benefits administrator because it subcontracted into a PPO access agreement with the provider in order to secure and retain its Plan client with in-network contracted rates, but then failed to reimburse the provider's services at those discounted rates. 899 So. 2d 1222, 1224-28 (Fla. 1st DCA 2005). Here, by contrast, Defendants did not contract for in-network PPO access to Plaintiff's facilities and thus did not derive the alleged benefit of any discounted rates. And in *Wilson v. Everbank, N.A.*, the insurer allegedly accrued a benefit in form of unpaid insurance premiums in a force-placed insurance scheme—which is not the case here. 77 F. Supp. 3d 1202, 1237 (S.D. Fla. 2015). Plaintiff does not cite any cases that allowed a similar unjust enrichment claim to proceed.

Plaintiff's unjust enrichment claim also fails because written contracts control its rights and remedies. Plaintiff's right to obtain reimbursement for its services from a Plan depends on the Plan Document. Plaintiff cannot utilize quasi-contractual remedies to seek additional payment from the Plan or its fiduciaries, including its claims administrator (GPA) and designated decisionmaker (ELAP), that is greater than what the Plan ACL permits. Because Plaintiff does not allege that any Plan ever failed to pay the full amounts authorized by the Plan ACL, it cannot seek additional amounts from the Defendants merely based on their roles with the Plans.

### III.     Plaintiff's Claims Are Conflict Preempted Under ERISA.

ERISA preempts state law causes of action that "relate to" ERISA plans, like the ones at issue here, and it provides more limited remedies than state law causes of action. *See In re*

*Managed Care Litig.*, 595 F. Supp. 2d 1349, 1354-55 (S.D. Fla. 2016). Plaintiff's reliance on cases involving alleged misrepresentations that certain medical services would either be covered or paid at a particular rate is unavailing. *See* Opp. at 14-16 (citing *Mem'l Hosp. Sys. v. Northbrook Life Ins. Co.*, 904 F.2d 236, 238 (5th Cir. 1990) (claim predicated on ERISA plan's false statements that a patient was covered and eligible for benefits was not preempted); *Lordmann Enters., Inc. v. Equicor, Inc.,* 32 F.3d 1529, 1530-33 (11th Cir. 1994) (claim alleging false representation that the ERISA plan would pay 80% to 100% of charges was not preempted)). As other courts in this District have recognized, such cases are readily distinguishable because Plaintiff does not allege that Defendants made any misstatements about any ERISA Plan's coverage or reimbursement limits. *See In re Managed Care Litig.*, 595 F. Supp. 2d 1349, 1352 (S.D. Fla. 2009); *Rodriguez v. Health Options, Inc.*, No. 03-20429-CIV, 2003 WL 27391269, at *4 (S.D. Fla. Aug. 27, 2003). In fact, the Amended Complaint deleted all of Plaintiff's prior allegations about misrepresentations in connection with the two patient visits identified in the original Complaint because those allegations were refuted by the call recordings and transcripts. *See* D.E. 15 at 7; Mot. Ex. A at 78-80. This case really is about Plaintiff's dissatisfaction with the particular benefit design, which Plaintiff refers to as reference-based pricing, adopted by the Plans at issue. Such claims directly relate to ERISA plans such that they are preempted and should be dismissed with prejudice.[3]

**IV.     The Amended Complaint On Its Face Shows That It Would Be Impossible To Litigate Plaintiff's Claims, Which Require Highly Individualized Inquiries, In A Class Action.**

Contrary to Plaintiff's argument (Opp. at 17-20), this is one of those unique cases in which

---

[3] Plaintiff also argues ERISA does not preempt its claims since Plaintiff does not have standing to bring ERISA claims. *See* Opp. at 16-17. Plaintiff's dubious assertion that it lacks standing is both wrong and irrelevant. Plaintiff confuses the broad doctrine of conflict preemption (which is at issue here) with the narrower, jurisdictional doctrine of complete preemption (which is not at issue). *See Conn. State Dental Ass'n v. Anthem Health Plans, Inc.,* 5491 F.3d 1337, 1350 (11th Cir. 2009). Standing is only relevant to complete preemption, not conflict preemption. *Id.*

eliminating the class claims at the start would be appropriate – if this action is not dismissed in its entirety – because it is obvious that no class will ever be certified. Plaintiff's claims alone will necessitate highly individualized factual inquiries into every good and service it has ever provided to a Plan member patient across its medical system in the past several years to adjudicate, *inter alia*: whether there was deceitful conduct, the reasonable value of each good and service, and whether Plaintiff was "underpaid" for each good and service. *See* Mot. at 16-20. The fact that Plaintiff's allegations of deceit have already been disproved for the only transactions Plaintiff has ever cited illustrates that every patient admission will need to be litigated individually. And had Plaintiff actually pleaded facts showing that consumers were deceived and harmed—which it did not do as required by FDUTPA—such a claim would compound the individualized inquires because the parties would have to litigate Defendants' interactions with each of their Plan clients. Imagine litigating the minutiae of all of those transactions for hundreds or thousands of medical facilities—it boggles the mind. The necessity for individualized inquiries permeates every element of class certification such that class-wide relief of any kind is impracticable. *See* Mot. at 16-20.

Plaintiff's failure to address how it proposes to litigate collectively such pervasive individualized inquiries shows that class-treatment of its claims is impossible. *See* Opp. at 17-20. Accordingly, if this case proceeds, the class claims should be eliminated so that the parties do not waste tremendous time and resources on a motion for class certification that will never be granted.

## **CONCLUSION**

The Amended Complaint should be dismissed in its entirety (or, at a minimum, the class claims should be eliminated). Plaintiff's inability to state a claim in its Amended Complaint, which was filed in response to a prior motion to dismiss that raised similar issues, shows that further amendment would be futile. The Amended Complaint thus should be dismissed with prejudice.

Respectfully submitted this 25th day of September, 2020.

**FISHERBROYLES, LLP**

/s/ *Irene Oria*
Robert T. Wright, Jr., Esq.
FL Bar No. 185525
Irene Oria, Esq.
FL Bar No. 484570
FisherBroyles, LLP
199 E. Flagler St. #550
Miami, FL 33131
Tel.: (786) 536-2838
Fax: (305) 536-2838
robert.wright@fisherbroyles.com
irene.oria@fisherbroyles.com

Patrick M. Emery, Esq. (*pro hac vice*)
GA Bar No. 821303
PA Bar No. 306672
Kris Alderman, Esq. (*pro hac vice*)
GA Bar No. 179645
FisherBroyles, LLP
945 East Paces Ferry Rd NE, Suite 2000
Atlanta, GA 30326
(404) 793-0652
patrick.emery@fisherbroyles.com
kris.alderman@fisherbroyles.com

**AKERMAN LLP**

Irene Bassel Frick, Esq.
FL Bar No. 0158739
Gera R. Peoples, Esq.
FL Bar No. 450022
401 E. Jackson Street, Suite 1700
Tampa, FL 33602-5250
Phone: (813) 223-7333
Fax: (813) 223-2837
irene.basselfrick@akerman.com
gera.peoples@akerman.com

*Counsel for Defendants ELAP Services, LLC and Group & Pension Administrators, Inc.*

## CERTIFICATE OF SERVICE

      I hereby certify that on September 25, 2020, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the counsel of record identified on the Service List below.

/s/ *Irene Oria*
Irene Oria, Esq.

**SERVICE LIST**

**KOZYAK TROPIN & THROCKMORTON LLP**

Gail McQuilkin, Esq.
Tal J. Lifshitz, Esq.
Benjamin Jacobs Widlanski, Esq.
Eric S. Kay, Esq.
2525 Ponce de Leon Blvd., 9th Floor
Coral Gables, FL 33134
Telephone: (305) 372-1800
Facsimile: (305) 372-3508
gam@kttlaw.com
tjl@kttlaw.com
bwidlanski@kttlaw.com
ekay@kttlaw.com

*Counsel for Plaintiff*

**WOLFE | PINCAVAGE**

Douglas A. Wolfe, Esq.
Danya J. Pincavage, Esq.
Omar Ali-Shamaa, Esq.
2937 SW 27th Ave., Suite 302
Miami, FL 33133
Telephone: (786) 409-0800
doug@wolfepincavage.com
danya@wolfepincavage.com
omar@wolfepincavage.com