# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 20-CV-61007-AHS

SOUTH BROWARD HOSPITAL
DISTRICT, D/B/A MEMORIAL
HEALTHCARE SYSTEM,
on its own behalf and on
behalf of other similarly
situated healthcare facilities,

        Plaintiff,

vs.

ELAP SERVICES, LLC, a Pennsylvania
limited liability company, and GROUP &
PENSION ADMINISTRATORS, INC. a
Texas corporation,

        Defendants
_____/

## PLAINTIFF'S FIRST REQUEST FOR PRODUCTION TO
## DEFENDANT ELAP SERVICES, LLC

Pursuant to Federal Rules of Civil Procedure 26 and 34, Plaintiff hereby requests that Defendant ELAP Services, LLC produce the following documents, electronically-stored information, and things within 30 days to Kozyak Tropin & Throckmorton LLP, 2525 Ponce de Leon Blvd., 9th Floor, Miami, Florida 33134.

## **DEFINITIONS AND INSTRUCTIONS**

1. The terms "you" or "your" mean the party or parties to which these requests are addressed, including any divisions, departments, parents, subsidiaries, affiliates, predecessors, partners, present or former officers, directors, owners, agents, accountants, attorneys, and all other persons acting or purporting to act on your behalf.

2. The terms "document" or "documents" shall refer to any writings, drawings, graphs, charts, photographs, phono-records, and other data compilations from which information can be obtained, translated, if necessary, including but not limited to electronically or digitally stored data and metadata (such as email, databases, text messages, and SMS messages) as well as all tangible items from which information can be processed or transcribed, including all originals and non-identical copies, whether different from the original by reason of any notation made on such copy or otherwise, which are in the possession, custody or control of you, your agents or attorneys regardless of where the document is physically located.

3. The term "document" includes electronically stored data from which information can be obtained either directly or by translation through detection devices or readers, including but not limited to text messages, "chats" (through any application), voicemails retrievable in printed form, and any other electronic communication that can be retrieved and copied physically or electronically. Any such document is to be produced in a reasonably legible and usable form. The term "document" also includes drafts of documents and all copies that differ in any respect from the original, including any notation, underlining, marking or information not in the original. The term also includes information stored in, or accessible through, computer or other information retrieval systems (including any computer archives or back-up systems), together with instructions and all other materials necessary to use or interpret such data compilations.

4. The terms "communication" or "communications" shall refer to any exchange or transmission of information, whether oral, written, via electronic mail, or by other means, and includes, but is not limited to, written, oral, telephonic, via electronic mail, or other inquiry, representation, discussion, meeting, letter, correspondence, memorandum, newsletter, telegram, advertisement, speech, conversation, conference, note, e-mail, or computer-generated message and any other document which refers to any such communication.

5. The term "all communications" means each and every communication as above defined that is known to you or about which you have any information.

6. The term "all documents" means every document or group of documents as above defined that are known to you or that can be located or discovered by reasonably diligent efforts.

7. As used herein the singular shall include the plural, the plural shall include the singular, and the masculine, feminine, and neuter shall include each of the other genders. "And" as well as "or" shall be construed disjunctively as well as conjunctively, as necessary to bring within the scope of the request all responses that might otherwise be construed to be outside the scope.

8. The term "Memorial" means the Plaintiff, South Broward Hospital District, d/b/a Memorial Healthcare System, including its present and former officers, directors, principals, agents, employees, accountants, attorneys, independent contractors, parents, subsidiaries, divisions, and affiliates, and their respective present and former officers, directors, principals, agents, employees, accountants, attorneys and independent contractors.

9. The term "Plaintiff" means Memorial.

10. The term "ELAP" means the Defendant, ELAP Services, LLC, including its present and former officers, directors, principals, agents, employees, accountants, attorneys, independent contractors, parents, subsidiaries, divisions, and affiliates, and their respective present and former officers, directors, principals, agents, employees, accountants, attorneys and independent contractors.

11. The term "GPA" means the Defendant, Group & Pension Administrators, Inc., including its present and former officers, directors, principals, agents, employees, accountants, attorneys, independent contractors, parents, subsidiaries, divisions, and affiliates, and their respective present and former officers, directors, principals, agents, employees, accountants, attorneys and independent contractors.

12. The term "Defendants" means GPA and ELAP.

13. The term "Amended Complaint" means the Amended Class Action Complaint & Demand for Jury Trial (DE 24) filed by Plaintiff on July 21, 2020.

14. The term "Answer" means the Answer and Affirmative Defenses to Plaintiff's Amended Complaint (DE 38) filed by Defendants on December 17, 2020.

15. The term "MultiPlan" means Multiplan, Inc., including its present and former officers, directors, principals, agents, employees, accountants, attorneys, independent contractors, parents, subsidiaries, divisions, and affiliates, and its respective present and former officers, directors, principals, agents, employees, accountants, attorneys and independent contractors.

16. The term "PHCS" means Private Healthcare Systems, Inc., including its present and former officers, directors, principals, agents, employees, accountants, attorneys, independent contractors, parents, subsidiaries, divisions, and affiliates, and its respective present and former officers, directors, principals, agents, employees, accountants, attorneys and independent contractors.

17. The term "SpringTide Health" means SpringTide Health, LLC, including its present and former officers, directors, principals, agents, employees, accountants, attorneys, independent contractors, parents, subsidiaries, divisions, and affiliates, and its respective present and former officers, directors, principals, agents, employees, accountants, attorneys and independent contractors.

18. Reference Based Pricing" or "Reference-Based Pricing" means Reference Based Pricing, as described in paragraphs 33 to 36 of the Amended Complaint.

19. The term "Clients" means the self-funded health plans that have engaged or retained ELAP and/or GPA.

20. The term "Members" means individuals insured by or entitled to receive benefits from the Clients.

21. The term "Claim" or "Claims" means any facility claim that you repriced, processed or reprocessed, and/or administered using Reference Based Pricing.

22. The term "UB-04" means the billing form that a provider uses for the billing of medical claims, which includes the following data points or form locators:

- Form locator 1: Billing provider name, street address, city, state, zip, telephone, fax, and country code
- Form locator 2: Billing provider's pay-to name, address, city, state, zip, and ID if it is different from field 1
- Form locator 3: Patient control number and the medical record number for the facility
- Form locator 4: Type of bill (TOB). This is a four-digit code beginning with zero, according to the National Uniform Billing Committee guidelines.
- Form locator 5: Federal tax number for the facility
- Form locator 6: Statement from and through dates for the service covered on the claim, in MMDDYY (month, date, year) format.
- Form locator 7: *Not in use*
- Form locator 8: Patient name in Last, First, MI format
- Form locator 9: Patient street address, city, state, zip, and country code
- Form locator 10: Patient birthdate in MMDDCCYY (month, day, century, year) format
- Form locator 11: Patient sex (M, F, or U)
- Form locator 12: Admission date in MMDDCCYY format
- Form locator 13: Admission hour using two-digit code from 00 for midnight to 23 for 11 p.m.
- Form locator 14: Type of visit: 1 for emergency, 2 for urgent, 3 for elective, 4 for newborn, 5 for trauma, 9 for information not available.
- Form locator 15: Point of origin (source of admission)
- Form locator 16: Discharge hour in the same format as line 13.
- Form locator 17: Discharge status using the two-digit codes from the NUBC manual.
- Form locator 18-28: Condition codes using the two-digit codes from the NUBC manual for up to 11 occurrences
- Form locator 29: Accident state (if applicable) using two-digit state code
- Form locator 30: *Not in use*
- Form locator 31-34: Occurrence codes and dates using the NUBC manual for codes
- Form locator 35-36: Occurrence span codes and dates in MMDDYY format
- Form locator 37: *Not in use*
- Form locator 38: Responsible party name and address

- Form locator 39-41: Value codes and amounts for special circumstances from the NUBC manual
- Form locator 42: Revenue codes from the NUBC manual
- Form locator 43: Revenue code description, investigational device exemption (IDE) number, or Medicaid drug rebate NDC (national drug code)
- Form locator 44: HCPCS (Healthcare Common Procedure Coding System), accommodation rates, HIPPS (health insurance prospective payment system) rate codes
- Form locator 45: Service dates
- Form locator 46: Service units
- Form locator 47: Total charges
- Form locator 48: Non-covered charges
- Form locator 49: Page of and Creation date
- Form locator 50: Payer Identification (a) Primary, (b) Secondary, and (c) Tertiary
- Form locator 51: Health plan ID (a) Primary, (b) Secondary, and (c) Tertiary
- Form locator 52: Release of information (a) Primary, (b) Secondary, and (c) Tertiary
- Form locator 53: Assignment of benefits (a) Primary, (b) Secondary, and (c) Tertiary
- Form locator 54: Prior payments (a) Primary, (b) Secondary, and (c) Tertiary
- Form locator 55: Estimated amount due (a) Primary, (b) Secondary, and (c) Tertiary
- Form locator 56: Billing provider national provider identifier (NPI)
- Form locator 57: Other provider ID (a) Primary, (b) Secondary, and (c) Tertiary
- Form locator 58: Insured's name (a) Primary, (b) Secondary, and (c) Tertiary
- Form locator 59: Patient's relationship (a) Primary, (b) Secondary, and (c) Tertiary
- Form locator 60: Insured's unique ID (a) Primary, (b) Secondary, and (c) Tertiary
- Form locator 61: Insurance group name (a) Primary, (b) Secondary, and (c) Tertiary
- Form locator 62: Insurance group number (a) Primary, (b) Secondary, and (c) Tertiary
- Form locator 63: Treatment authorization code (a) Primary, (b) Secondary, and (c) Tertiary
- Form locator 64: Document control number also referred to as Internal control number (a) Primary, (b) Secondary, and (c) Tertiary
- Form locator 65: Insured's employer name (a) Primary, (b) Secondary, and (c) Tertiary
- Form locator 66: Diagnosis codes (ICD)
- Form locator 67: Principle diagnosis code, other diagnosis, and present on admission (POA) indicators
- Form locator 68: *Not in use*
- Form locator 69: Admitting diagnosis codes
- Form locator 70: Patient reason for visit codes
- Form locator 71: Prospective payment system (PPS) code
- Form locator 72: External cause of injury code and POA indicator
- Form locator 73: *Not in use*
- Form locator 74: Other procedure code and date
- Form locator 75: *Not in use*

   o Form locator 76: Attending provider NPI, ID, qualifiers, and last and first name
   o Form locator 77: Operating physician NPI, ID, qualifiers, and last and first name
   o Form locator 78: Other provider NPI, ID, qualifiers, and last and first name
   o Form locator 79: Other provider NPI, ID, qualifiers, and last and first name
   o Form locator 80: Remarks
   o Form locator 81: Taxonomy code and qualifier

23. The term "EDI 835" means the electronic remittance advice sent to providers to receive explanation of benefits, explanation of payments, and claims denial information.

24. The term "EDI 837" means the electronic data exchange file used by healthcare providers to transmit healthcare claims to payors, HMOs, PPOs, administrators, or other similar entities.

25. EDI 835 and EDI 837, include, without limitation, the following data points:

a. Payer name/administrator;
b. Payer I.D. number;
c. Plan type (*e.g.,* HMO, EPO, PPO, ACA Exchange, Self-Funded Employer Plan; Medicare, Medicaid, FEHBA);
d. Plan name and number;
e. Group name and number;
f. Policy name and number;
g. Insured I.D. number;
h. Claim number;
i. Patient's account number;
j. Patient name;
k. Patient date of birth;
l. Insured name;
m. Patient Relationship to Insured;
n. Employer's name;
o. Patient Condition Related to (*e.g.,* Employment, Auto Accident, Other Accident);
p. Place of Service;
q. Service Facility Location Information;
r. Rendering Provider I.D.;
s. Name of Billing Provider;
t. Billing Provider Information;
u. Date(s) of service;
v. Total Billed Amount;
w. Amount Paid;
x. Patient Responsibility;
z. Third-party payment amount
aa. Balance Due;
aa. Payment, underpayment, or denial date;
bb. Authorization number (if applicable);
cc. Diagnosis or Nature of Illness or Injury;
dd. Any DRG, CPT, HCPCS, diagnosis, revenue codes, or modifiers for the claim;

    ee.    Denial code and reason or explanation for same;
    ff.    Any other code including but not limited to codes for payment, adjustment, status, report or transmission type, and reason or explanation for same;
    gg.    Any recoupment reason/codes applied to the claim;
    hh.    The date of any recoupment, if applicable; and
    jj.    Appeal date(s).

26.    The term "Affiliate" or "Affiliates" means any corporation, partnership, limited liability company, or any other legal entity directly or indirectly owned or controlled by, or which owns or controls, or which is under common ownership or control, with Plaintiff or Defendants.

27.    The term "refer or relate" as used in this request, means reflecting, evidencing, regarding, pertaining to, consisting of, indicating, concerning or in any way logically or factually connected with the matter discussed.

28.    The term "all" includes the term "any" and the term "any" includes "all." The terms "all" and "any" shall be construed as any and all.

29.    The terms "or" and "and" shall be construed conjunctively or disjunctively as necessary to make the request for documents or information inclusive rather than exclusive, i.e., to bring within the scope of the request all responses that otherwise might be construed to be outside the scope of the request.

30.    The term "present," when used in connection with a time-frame for production of materials requested hereunder, refers to the date upon which production is made.

31.    The term "allowed amount" means the maximum amount a plan will pay for a covered health care service.

32.    The term "self-funded plan" is a healthcare plan where an employer assumes the financial risk of providing healthcare benefits to its employees.

33.    The term "self-pay rate" means the rate a provider bills to a patient who is not covered by a self-funded health plan.

34.    The term "self-funded plan identification card" or "self-funded plan identification card means a card self-funded plan members receive that helps doctors and other healthcare providers know what coverage a self-funded plan member has.

35.    "Elective service" or "elective services" is a procedure that is chosen by the patient or physician that is advantageous to the patient but is not emergent.

36.    If, in responding to any document request, you choose to withhold any information on the ground of privilege or the like, please produce all information falling within the scope of the request which is not privileged, and for each item of information contained in a document to which a claim of privilege is made, identify such document with sufficient particularity for purposes of a motion to compel, such identification to include at least the following:

    (a)    the nature of the privilege (including work product) that is being asserted;

    (b)    the names and positions of the author of the information and all other persons participating in the preparation of the information;

    (c)    the name and position of each individual or other person to whom the information, or a copy thereof, was sent or otherwise disclosed;

    (d)    the date of the information;

    (e)    a description of any accompanying material transmitted with or attached to such information;

    (f)    the number of pages in such document or information; and

    (g)    whether any business or non-legal matter is contained or discussed in such information.

37. When producing the documents, please keep all documents segregated by the file in which the documents are contained and indicate the name of the file in which the documents are contained and the name of the documents being produced.

38. In the event such file(s) or document(s) has (have) been removed for the purposes of this Action or for some other purpose, please state the name and address of the person who removed the file, the title of the file and each subfile, if any, maintained within the file, and the present location of the file.

39. In responding to the following document request, furnish all available information, including information in the possession, custody, or control of ELAP or any of ELAP's attorneys, directors, officers, agents, employees, representatives, divisions, affiliates, partnerships, parents or subsidiaries, and other persons under ELAP's control.

40. Unless otherwise specified, the time from for these requests is from May 1, 2015 to the present.

### ELECTRONICALLY STORED INFORMATION INSTRUCTIONS

Documents are to be produced in the following method:

### I. COLLECTED DATA

**1.** Collected ESI shall be de-duplicated according to MD5 hash value at the family level. Attachments should not be eliminated as duplicates for purposes of production, unless the parent e-mail and all attachments are also duplicates. Parties agree that an email that includes content in the BCC or other blind copy field shall not be treated as a duplicate of an email that does not include content in those fields, even if all remaining content in the email is identical. Removal of near-duplicate documents and e-mail thread suppression is not acceptable. De-duplication will be done across the entire collection (global de-duplication) and duplicate

custodians will be listed in a separate field, separated by a semi-colon, for each additional custodian from which a duplicate was removed. An additional field will also be provided containing the FILEPATH information for each such duplicate document.  Should the DUPLICATE OF CUSTODIAN or DUPLICATE OF FILEPATH metadata fields produced become outdated due to rolling productions, an overlay file providing all the custodians and file paths for the affected documents will be produced prior to substantial completion of the document production

## II.   ESI PRODUCTION FORMAT

**2.     TIFFs.**  Documents will be produced in the form of single-page, Group IV Tiffs at 300 dpi.  Each TIFF image should be named as its corresponding Bates number.  Bates numbers, confidentiality designations, and redactions should be burned into the TIFF image files.  TIFF image files should be provided in a "self-identified Images" folder.  TIFFs will show any and all text and images which would be visible to the reader using the native software that created the document.

**3.     System Files.**  Common system and program files as defined by the NIST library (which is commonly used by e-discovery vendors to exclude system and program files from document review and production) need not be processed, reviewed or produced.

**4.     Metadata Fields and Processing.** ESI production shall include a delimited, database load file that contains the metadata fields listed in Table 1 below.  The metadata produced should have the correct encoding to enable preservation of the documents' original language.

## TABLE 1

| FIELD | Sample Data | Description |
|---|---|---|
| BEGPROD | DOC_000001 | Beginning document number |
| ENDPROD | DOC_000002 | Ending document number |
| BEGATTACH | DOC_000001 | Beginning document number of family unit |
| ENDATTACH | DOC_000003 | Ending document number of family unit |
| ATTACHMENT COUNT | | Number of attachments included in the email |
| ATTACHMENT TITLE | | File name of attachment |
| PAGECOUNT | 2 | Number of pages in the item |
| CONFIDENTIALITY | Confidential or Highly Confidential | Indicating whether the document is confidential or highly confidential |

9

| FIELD | Sample Data | Description |
| --- | --- | --- |
| CUSTODIANS | Smith_John or Smith, John | Individual(s) or entity(ies) from whom the documents originated or who had a duplicate copy of a document, subject to the limitations imposed in Section III.G. |
| READ | 7:13:29 PM | Time an e-mail message or calendar item was read (if applicable) |
| HEADER | Received:from BN6PR13MB0865.namprd13.prod.outlook.com | Internet header data (if applicable) |
| EMAIL TO | Jane Smith | Main recipient(s) of an e-mail message or calendar item |
| EMAIL FROM | John Smith | Author of an e-mail or calendar item message or author of a loose electronic document |
| EMAIL CC | Frank Thompson | Carbon Copy recipient(s) of an email message or calendar item |
| EMAIL BCC | John Cain | Blind Carbon Copy recipient(s) of an e-mail message or calendar item |
| EMAIL SUBJECT | Chain Letters | Subject field value or title field value extracted from metadata of Native File |
| FILE AUTHOR | Smith_John or Smith, John | Individual(s) who created the document, if reasonably available |
| DATE CREATED | 07/03/2009 | Date the Native File was created |
| TIMECREATED | 7:13:29 PM | Time the Native File was created |
| DATEMODIFIED | 07/03/2009 | Date the Native File was last modified |
| TIMEMODIFIED | 7:13:29 PM | Time the Native File was last modified |
| DATE SENT | 07/03/2009 | Date an e-mail message or calendar item was sent |
| TIME SENT | 7:13:29 PM | Time an e-mail message or calendar item was sent |

| FIELD | Sample Data | Description |
| --- | --- | --- |
| DATE RECEIVED | 07/03/2009 | Date an e-mail message or calendar item was received |
| TIME RECEIVED | 7:13:29 PM | Time an e-mail message or calendar item was received |
| TIMEZONE | EST | Time zone of documents – Eastern Standard Time |
| SIZE | 765,952 | File size in Bytes |
| IMPORTANCE RANKING | "High Priority" | Level of importance or sensitivity of messages or calendar items |
| ATTACHMENTS | 2 | Number of attachments |
| NATIVELINK | \\192.168.1.6\Unicron\TiffTester\XYZ\B018\Extracted\FSF01_1\aea\1d0cbe9510845fbfbe235 19 a8902d.mail | Path where Native File is stored |
| FILE EXTENSION | .mail | File extension |
| MD5 HASH | 145629GI9875HG98SKJA9AKJD 98AK4 | Unique identifier |
| ORIGINALNAME | 1d0cbe9510845fbfbe23519a8902d.mail | Original file name |
| FOLDER PATH | C:\Documents and Settings\user1\My Documents\General | Original file path |
| FOLDER NAME | Contracts | For hard copy documents – location where documents were kept |
| REDACTED | Yes/No | Indicating whether the document is redacted |
| TEXT | "testing text extraction utility" OR \Volume0001\DOC_000001.T | Extracted/OCR text (OR) path to multipage text file |
| APPLICATION | Outlook, Word, PowerPoint | Indicates software application that generated the ESI item |
| RECORDTYPE | "Paper," "Hard Copy" or "HC," if a hard copy document, and "ESI" if ESI | To indicate whether hard copy or ESI item |

**5.     Parent-Child Relationships**.  Parent-child relationships (i.e., the association between an attachment and its parent document) must be preserved if reasonably possible (and to the extent the parent-child relationship is reasonably apparent).  For example, electronic documents attached to an email are to be produced contemporaneously and sequentially, immediately after the parent document.  If any part of an Email or its attachments is responsive, the entire Email and attachments will be produced, except for any attachments that must be withheld or redacted on the basis of privilege, immunity, or applicable privacy laws.

**6.     Text Messages, Chats, and Instant Messenger Conversations.** Text message, chats, and instant messenger conversations are to be produced in a reasonably usable form.

**7.     Searchable Text:** ESI shall be produced with document-level searchable Extracted Text in the form of .txt files associated by links contained within the load file.  For ESI that is redacted for attorney-client privilege or attorney work product, a new text file created using OCR shall be produced in lieu of extracted text, and a separate image load file shall contain a link to the TIFF image file(s) containing the redactions, rather than the native file.  Text files should be provided in a self-identified "Text" folder.

**8.     Database Load Files and Cross-Reference Files**.  Accompanying each production should be a metadata file (DAT file) using standard Concordance delimiters or caret-pipe (^|^) delimiters.  Each production should also include an image load file in Opticon format (OPT).  The metadata file and image load file (*i.e.*, DAT and OPT files) should be provided in a self-identified "Data" folder.

**9.     Native Files.** PowerPoint presentations and similar presentation files, Excel files, CSV files, and other similar spreadsheet files shall be produced in native format ("Native Files") instead of in TIFF.  Such Native Files (if any) will be provided in a self-identified "Natives" directory.  Each Native File will be produced with a corresponding single-page TIFF placeholder image, which will contain the bates number and language indicating that the document is being produced as a Native File.  Native Files should be named with the beginning Bates number that is assigned to that specific record in the production.  A Native "Link" entry for each spreadsheet will be included in the .DAT load file indicating the relative file path to each native file on the production media.  Native Files will be produced with extracted text and applicable metadata fields.  If Native spreadsheet files require redactions, the parties will meet and confer regarding how to implement redactions while ensuring that proper formatting and usability are maintained.  For presentation files that contain redacted text, You may either redact in the native form or produce TIFF image files with burned in redactions in lieu of a Native File and TIFF placeholder image.  Presentation files produced as TIFFs shall be processed with hidden slides and all speaker notes unhidden, and shall be processed to show both the slide and the speaker's notes on the TIFF image.

**10.    Hard Copies.** Hard copy documents are to be produced in Single page tiff with accompanying document-level full text and corresponding load files. Load files shall include document source.

**11.**     **Unitizing of Documents**. Absent special circumstances, when scanning paper documents, You must take reasonable steps to prevent distinct documents from being merged into a single record, and to ensure that single documents are not be split into multiple records (i.e., paper documents should be logically unitized).  In addition, scanned paper documents must be produced as they existed in the normal course of business with information that identifies the folder (or container) structure, to the extent such structure exists and to the extent reasonably possible.

**12.**     **Color.**  Documents containing color need not be produced in color in the first instance.  However, if Plaintiffs would like production of certain documents in color, they may request production of such documents in color by providing (1) a list of the Bates numbers of documents they request to be produced in color format; and (2) a brief explanation of the need for production in color format.  You shall not unreasonably deny such requests.  Color documents should be produced as single-page, 300 DPI JPG images with JPG compression and a high quality setting as to not degrade the original image.   You are under no obligation to enhance an image beyond how it was kept in the usual course of business.

**13.**     **Structured Data.**  To the extent a response to discovery requires production of electronic information stored in a database, including the production of text messages or similar communications, the parties will meet and confer regarding methods of production.  Parties will consider whether all relevant information may be provided by querying the database for discoverable information and generating a report in a reasonably usable and exportable electronic file.

## **DOCUMENTS REQUESTED**

### I. ORGANIZATIONAL INFORMATION

1. Documents sufficient to identify all of ELAP's subsidiaries, affiliates, owners, shareholders, and officers.

2. Any licenses, certificates, and/or credentials that ELAP holds.

3. Documents sufficient to identify the relationship between ELAP and GPA.

4. Any regulatory submissions filed with the U.S. Department of Labor and/or any state insurance agency.

### II. CLAIMS DATA

5. Documents sufficient to identify all data points on the UB-04, the EDI 835, and the EDI 837 for each of the Claims.

6. Documents sufficient to identify any Claim that the Clients paid additional monies on after a healthcare provider appealed the Claim, including, but not limited to, all Claims that ELAP authorized the payment of additional monies on after a healthcare provider appealed the Claim.

### III. AGREEMENTS

7. Any and all agreements between ELAP and the following: (a) GPA, (b) MultiPlan, (c) PHCS, (d) SpringTide Health, (e) Clients, and (f) any law firm retained to defend any of the Clients or Members.

8. Documents sufficient to identify each healthcare provider who has an agreement with ELAP.

### IV. COMMUNICATIONS

9. All documents and communications between you and anyone, including, but not limited to, the Clients, the Members, GPA, SpringTide, MultiPlan, and/or PHCS related to the Claims.

10. All documents and communications between you and anyone, including, but not limited to, the Clients, the Members, GPA, SpringTide, MultiPlan, and/or PHCS related to the MultiPlan or PHCS network.

11. All documents and communications between you and anyone, including, but not limited to, the Members, GPA, SpringTide, MultiPlan, and/or PHCS related to the Clients.

12. All internal communications referring or relating to (a) "Reference Based Pricing," (b) the Clients' self-funded plan identification cards, (c) the "allowed amount," and (d) obtaining elective services from healthcare providers.

## V. POLICIES AND PROCEDURES

13. All policies, procedures, and guidelines relating to the following areas: (a) ELAP's appeals processes, (b) the processing, payment, pricing, and/or repricing of the Claims, (c) processing, payment, pricing, and/or repricing of claims for physicians who participate in MultiPlan's or PHCS's network, (d) patient specific agreements, letters of agreement, single-case agreements, or such other agreements similar in form between ELAP and/or SpringTide and any healthcare provider for elective services, (e) the Clients and any healthcare provider for elective services, (f) the settlement of a payment dispute for claims submitted by any healthcare provider type, (g) ELAP's authorization of medical services, (h) any calls, recordings, and/or verbal communications between ELAP and any healthcare provider, and/or (i) the Clients' self-funded health plan identification cards.

## VI. ADVERTISING AND MARKETING

14. Representative copies of advertising or marketing material you used or currently use to market or advertise your services to employers, self-funded health plans, Members, or prospective Members, including, but not limited to, brochures, catalogs, videos, power point presentations, and/or white papers.

15. Representative copies of advertising or marketing material related to (a) "Reference-Based Pricing," (b) ELAP's ability to save employers and self-funded health plans money by using "Reference-Based Pricing," and/or (c) balance billing.

16. Any and all marketing studies and profitability studies referring to "Referenced-Based Pricing."

17. Any and all agreements with marketing or advertising agencies.

## VII. SELF-FUNDED PLAN IDENTIFICATION CARDS

18. Representative copies of the Clients' self-funded plan identification cards that refer to (a) ELAP, (b) GPA, and (c) "Reference-Based Pricing".

19. Representative copies of the Clients' self-funded plan identification cards that have a MultiPlan and/or PHCS logo.

20. Documents sufficient to identify all versions of the Clients' self-funded plan identification cards, including, but not limited to, when each version was released or updated.

21. Documents sufficient to identify all websites listed on the Clients' self-funded plan identification cards, including, but not limited to, when each website was added to the self-funded plan identification card.

15

### VIII. CALL LOGS AND SCRIPTS

22. Any and all documents and/or scripts ELAP used or currently uses during its calls and/or verbal communications with (a) any healthcare provider, (b) the Clients, and (c) the Members.

23. Documents sufficient to identify when ELAP began recording its calls and/or verbal communications with healthcare providers, Members, and/or its Clients.

24. All call logs or recording or any verbal communications regarding the Claims between you, and (a) any healthcare provider, (b) the Members, and (c) the Clients.

### IX. OTHER COMPLAINTS

25. Documents sufficient to identify any complaints filed against ELAP wherein ELAP's actions, practices, and/or methods were alleged to be unfair, unconscionable, and/or deceptive.

26. Any and all complaints filed against ELAP with any state or federal agency, department, political subdivision, court of law, and/or municipality.

27. Documents sufficient to identify any informal or formal complaints against ELAP's use of Referenced-Based Pricing.

### X. MISCELLANEOUS

28. The specific methodology, including supporting data or other documentation, used to set or determine the payment of the Claims, including calculation of patient responsibility amounts, and/or the "allowed amount."

29. All documents regarding ELAP's claim edit technology.

30. All documents and communications regarding final settlements between ELAP or Clients, on the one hand, and any healthcare provider, on the other hand, regarding underpaid emergent or non-emergent claims.

31. All documents relating to ELAP's assumption of liability for any Claim for any Client.

32. All documents regarding ELAP's insurance policies, which cover, arise from, and/or relate to ELAP's assumption of liability for any Claim for any Client.

33. Complete copies of ELAP's insurance policies (both primary and excess) for the past four (4) years, including ELAP's current insurance policies.

34. All documents relating to the percentage or number of adverse benefit determinations that ELAP overturned in each year, beginning on January 1, 2015, including the curricula vitae, credentials, and qualifications for any individual employed or contracted with ELAP that is responsible for making adverse benefit determination decisions. For purposes of this

request, "adverse benefit determinations" include underpayment claims by any healthcare provider.

35. All documents, policies, or communications relating to ELAP's assisting Clients, Members, and/or patients in locating healthcare providers for emergent of non-emergent services.

36. All documents between ELAP and Clients or Members regarding Clients or Members seeking or obtaining a self-pay rates from any provider for non-emergent services.

37. All documents regarding any external or internal audits of ELAP that were conducted on or after January 1, 2015.

38. Documents sufficient to identify how ELAP is paid by the Clients, including, but not limited to, ELAP's revenue since January 1, 2015.

39. To the extent not included above, all documents, including communications, referred to in your Initial Rule 26 Disclosures.

40. All documents that you referred to or relied upon in answering Plaintiff's First Set of Interrogatories to ELAP.

41. All documents and communications between you and any third party relating to this Action.

42. All documents and communications that support, show, or evidence any defense you assert or intend to assert in this action, including the Affirmative Defenses set forth in your Answer.

43. All documents and communications you intend to introduce into evidence, or upon which you intend to rely, at any hearing or trial in this Action.

| | |
|---|---|
| Dated: January 11, 2021 | Respectfully submitted, |
| /s/*Benjamin J. Widlanski* | /s/ *Douglas A. Wolfe* |
| **Gail McQuilkin, Esq.** | **Douglas A. Wolfe, Esq.** |
| gam@kttlaw.com | doug@wolfepincavage.com |
| Fla. Bar No. 969338 | Fla. Bar No. 28671 |
| **Benjamin J. Widlanski., Esq.** | **Danya J. Pincavage, Esq.** |
| bwidlanski@kttlaw.com | danya@wolfepincavage.com |
| Florida Bar No. 1010644 | Fla. Bar No. 14616 |
| **Tal J. Lifshitz, Esq.** | **Omar Ali-Shamaa, Esq.** |
| tjl@kttlaw.com | omar@wolfepincavage.com |
| Fla. Bar No. 99519 | Fla. Bar No. 121461 |
| **Eric S. Kay, Esq.** | |
| ekay@kttlaw.com | **WOLFE | PINCAVAGE** |
| Fla. Bar No. 1011803 | 2937 SW 27th Ave. |
| | Suite 302 |
| **KOZYAK TROPIN &** | Miami, FL 33133 |
| **THROCKMORTON LLP** | Telephone: (786) 409-0800 |
| 2525 Ponce de Leon Blvd., 9th Floor | |
| Coral Gables, FL 33134 | |
| Telephone: (305) 372-1800 | |

## **CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the foregoing was served via email on January 11, 2021, on all counsel of record

/s/ *Benjamin J. Widlanski*
Benjamin J. Widlanski
