UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| **SOUTH BROWARD HOSPITAL DISTRICT, D/B/A/ MEMORIAL HEALTHCARE SYSTEM,** on its own behalf and on behalf of other similarly situated healthcare facilities, : : : : : : : | Case No. 0:20-cv-61007-AHS |
| Plaintiff, : : | |
| **ELAP SERVICES, LLC and GROUP & PENSION ADMINISTRATORS, INC.,** : : : | |
| Defendants. : | |

**<u>DEFENDANTS' MOTION TO COMPEL
PLAINTIFF TO PRODUCE DE-IDENTIFIED MARKET DATA</u>**

62851028;1

Defendants ELAP Services, LLC ("ELAP") and Group & Pension Administrators, Inc. ("GPA") (collectively, "Defendants") seek an order compelling Plaintiff South Broward Hospital District d/b/a Memorial Healthcare System ("Plaintiff" or "Hospital") to produce de-identified market reimbursement data (the "Motion"). Plaintiff's data reflecting the amounts that it has received and accepted for the same or similar services that are in dispute ("Market Data") is central to a determination of the Plaintiff's alleged damages. *Plaintiff refuses to produce its Market Data even though it has requested and received data from Defendants of the amounts allowed for the same or similar services on health claims submitted by facilities nationwide.* The only reimbursement information produced by Plaintiff in this case is a 2021 Transparency Report reflecting reimbursement rates from **in-network payers**, which make up only a small percentage of Plaintiff's patients. Plaintiff refuses to produce data reflecting the amounts that it was paid for the same or similar services **during the relevant time period of 2016–2020.** For these reasons, and others discussed below, the Court should compel Plaintiff to produce its de-identified Market Data for the relevant time period.

## BACKGROUND

**I.      The Crux of Plaintiff's Claim Is That It Was Underpaid For Its Services.**

The Amended Complaint alleges that Plaintiff was underpaid for the services it provided members of healthcare plans that work with Defendants. *See generally* D.E. 24 (the "Complaint" or "Compl."). Plaintiff itself alleges that the "crux" and the "central and predominant issue at the heart of this case" is ELAP's alleged "systemic method of underpaying healthcare providers like Plaintiff, for the healthcare services provided to ELAP's clients . . . ELAP refers to its underpayment scheme as a healthcare reimbursement model called 'Reference Based Pricing.'" Compl. ¶ 5. Plaintiff further alleges that it "received underpayments resulting from ELAP's arbitrary and uniform application of Reference Based Pricing." Compl. ¶ 173.

To determine whether Plaintiff was indeed underpaid, it is critical to obtain Plaintiff's Market Data reflecting the amounts that Plaintiff accepted for the same or similar services to the disputed services at issue in this case during the relevant time period. Defendants have previously served discovery seeking this information including requests for Plaintiff's contracts with all payers, statements reflecting the amounts charged or accepted for the same or similar services, and all documents comparing or analyzing rates charged or accepted for the same or similar services. This Court, concerned with the burden on Plaintiff, ordered production of Plaintiff's 2021 Transparency Report and directed the parties to work to relate those reimbursement rates to the rates paid during the relevant time period of 2016–2020. The Parties were unable to reach a stipulation to relate the data on the 2021 Transparency Report to the relevant reimbursement data for 2016–2020. Accordingly, Defendants were forced to serve their Third Request for Production seeking precisely this information in the least intrusive manner possible – simply a data file (de-identified to address confidentiality concerns) of amounts Plaintiff was paid for the same or similar services. Defendants do not seek the underlying documents or any statements or any contracts, rather only 1 data file reflecting amounts Plaintiff has accepted for the same or similar services.

**II.     The Defendants' Requests For Market Data.**

Defendants served Plaintiff with a targeted Third Request for Production seeking Plaintiff's Market Data. Plaintiff objected on numerous grounds which lack merit and must be overruled. Specifically, Defendants' Third Request for Production and Plaintiff's responses are as follows:

> 1. Please produce claims-level market reimbursement data reflecting the reimbursement Rates and amounts, including discounted Charges, received by Plaintiff for medical good or services rendered during the Relevant Time Period from any and all Payers, including in-network commercial Payers, out-of-network commercial Payers, Medicare Advantage/Managed Medicare or Managed Medicaid, Traditional Medicare or Traditional Medicaid, self-pay/uninsured, worker's compensation Payors or administrators, TRICARE, and automobile/indemnity insurance. For each service, include a separate line with the Claim number, date of service, CPT Code, HCPCS code, modifier, the Federal Tax Identification Number, servicing facility information,

servicing location information, policy number, group number, a unique identifier for each Payer, the Payer line of business (Commercial, Medicare Advantage, Managed Medicaid, Traditional Medicare, Traditional Medicaid, worker's compensation, TRICARE, automobile/indemnity, self-pay, etc.), the number of units, the charge billed, the allowed amount, the payment amount, the out-of-pocket patient responsibility, the amount collected from the patient, an indicator for whether the service was paid under a participating provider network agreement, and an indicator for whether the service was paid under a wrap/rental network agreement.

**Response:** Memorial objects to this request for several reasons.

First, Memorial objects to the term "market reimbursement data" as vague. Without further clarification, Memorial is unable to meaningfully respond to that portion of the request.

Second, this request is overbroad and not proportional to the needs of the case. This case is about claims that ELAP's plans have *underpaid* due to ELAP's reference-based pricing scheme. Here, ELAP is seeking reimbursement information on each and every claim ever processed at Memorial's facilities from January 1, 2016 through the present, regardless of whether the claim is related to an ELAP plan member, including a breakdown by service code for over five million healthcare claims that are not at issue in this action. Such information is irrelevant to the to the claims at issue, beyond the scope of this matter, and violates the Court's June 24, 2021, order denying Defendants' motions to compel. (D.E. 73).

Third, U.S. Magistrate Judge Alicia O. Valle already denied Defendants' prior requests for production and interrogatories (*e.g.,* Interrogatory Nos. 5 – 7 and Request for Production Nos. 59 – 61) seeking similar reimbursement data. In fact, the Court recognized that Defendants' requests were overbroad and fashioned a compromise by ruling that Memorial would only need to provide the 2021 Transparency Report, along with the possibility of a stipulation regarding the applicability of the 2021 reimbursement rates for prior years (*i.e.,* 2016 – 2020). *See* June 24, 2021, Hr'g Tr. at 180:13-20. Memorial complied with the Court's order and provided Defendants with the 2021 Transparency Report, which contains over 104,000 lines of reimbursements data and millions of data points. Memorial also provided Defendants with a declaration as to how the rates have changed in 2016 – 2020, along with the data used and relied on to calculate those changes. Memorial even provided Defendants with a detailed narrative as to how the calculations were made. Defendants now seek more reimbursement data than they originally requested in their initial request for production that the Court ruled were overbroad. *Id.* at 146:12-14 ("I'm glad that I didn't have to sit there and rewrite your requests or your interrogatories, which were quite overbroad").

Fourth, this request, as drafted, would require Memorial to divulge proprietary trade secrets related to confidential reimbursement rates, discounts, and contract information entered into between Memorial and in-network and out-of-network payors. Memorial's pricing methodologies are protected from disclosure by section 395.3035(2)(c), Florida Statutes, as the Florida Legislature has determined that

- 3 -

public hospitals, like Memorial, are exempt from producing it in response to a public records request under chapter 119, Florida Statutes, and article I, section 24(a) of the Florida Constitution. Moreover, Memorial is bound by confidentiality agreements that prevent it from disclosing the requested information. Thus, even with the Stipulated Confidentiality Agreement and Protective Order (D.E. 43), Memorial cannot produce reimbursement information with contracted payers without giving them notice and an opportunity to object.

Fifth, reimbursement data and/or rates for Medicare Advantage/Managed Medicare or Managed Medicaid, Traditional Medicare or Traditional Medicaid, TRICARE, worker's compensation, or any other government funded plans are overbroad and irrelevant under *Baker County Medical Services, Inc. v. Aetna Health Management, LLC,* 31 So. 3d 842 (Fla. 1st DCA 2010). *See id.* at 844-45 ("In determining the fair market value of the services, it is appropriate to consider the amounts billed and amounts accepted by provider with one exception. The reimbursement rates for Medicare and Medicaid are set by government agencies and cannot be said to be 'arm's length.'").

Sixth, Memorial objects to this request as harassing and retaliatory. Defendants are already in possession of Memorial's reimbursement data for the relevant time period, as described above. Defendants' request is intended to harass and retaliate against Memorial because Memorial has propounded discovery on ELAP's third-party administrators ("TPAs").[1] Indeed, Memorial served multiple subpoenas on ELAP's TPAs, some of which are owned by or affiliated with ELAP. Rather than provide the information that ELAP allegedly could not, the TPAs have refused to cooperate with Memorial whatsoever and have moved to quash Memorial's subpoenas in federal district courts across the county. Five TPAs are presently litigating motions to quash subpoenas served by Memorial. Three of those motions to quash have been transferred to this Court.[2] Each of those transfers has been subject to appeals that Memorial has moved to dismiss for lack of jurisdiction. One of those appeals has already been dismissed for lack of jurisdiction by the Eighth Circuit.

2. To the extent not included in response to Request No. 1, please produce claims level market reimbursement data reflecting the reimbursement Rates and amounts, including discounted Charges, received by Plaintiff for medical services rendered during the Relevant Time Period for the CPT codes or HCPCS codes listed on **Exhibit A** from any and all Payers, including in-network commercial Payers, out-of-network commercial Payers, Medicare Advantage/Managed Medicare or Managed Medicaid, Traditional Medicare or Traditional Medicaid, self-pay/uninsured worker's compensation Payers or administrators, TRICARE, and automobile/indemnity insurance. For each service, include a separate line with the Claim number, date of service, CPT Code, modifier, the Federal Tax Identification Number, servicing facility information, servicing location information, policy number, group number, a unique identifier for each Payer, the Payer line of business (Commercial, Medicare Advantage, Managed Medicaid, Traditional Medicare, Traditional Medicaid, worker's compensation, TRICARE, automobile/indemnity,

- 4 -

self-pay, etc.), the number of units, the charge billed, the allowed amount, the payment amount, the out-of-pocket patient responsibility, the amount collected from the patient, an indicator for whether the service was paid under a participating provider network agreement, and an indicator for whether the service was paid under a wrap/rental network agreement.

**Response:** *See* Response to RFP No. 1 above.

3. Please produce all Documents and information needed to understand any data produced in response to Request Nos. 1 and 2 or any other Requests for Production including, but not limited to, data dictionaries and legends for any coded fields and detailed descriptions of parameters and filters used to generate data.

**Response:** *See* Response to RFP No. 1 above.

*See* Defendants' Third Request for Production and Plaintiff's Response to Defendants' Third Request for Production of Documents attached as ***Exhibit 1 and 2*** respectively.

## ARGUMENT

**I.    Plaintiff's Market Data Is Critical To Ascertaining the Reasonable Value Of The Disputed Services.**

Plaintiff's Market Data is relevant to both Plaintiff's claims and Defendants' defenses. To establish damages on its Fraudulent and Deceptive Trade Practices Act ("FDUTPA") claim, Plaintiff must show that it was paid less than the reasonable value of the goods and services provided to ELAP plan members as a result unlawful conduct of Defendants. Florida law is clear about the types of information relevant to determining reasonable value of hospital goods and services:

> A thorough review of the case law from Florida and elsewhere leads to the conclusion that no single factor can be used to determine the reasonableness of Mercy's hospital charges. Rather, several non-exclusive factors are relevant to the inquiry. As discussed in more detail below, those factors include but are not necessarily limited to: (1) an analysis of the relevant market for hospital services (including the rates charged by other similarly situated hospitals for similar services); (2) the usual and customary rate Mercy charges and receives for its hospital services; and (3) Mercy's internal cost structure.

*Colomar v. Mercy Hosp., Inc.*, 461 F. Supp. 2d 1265, 1269 (S.D. Fla. 2006). Denying a motion to compel the types of evidence *Colomar* recognized as relevant to the inquiry of reasonableness of charges "departs from the essential requirements of the law." *Giacalone v. Helen Ellis Mem. Hosp. Found.*, 8 So. 3d 1232, 1236 (Fla. 2d DCA 2009).

The requests at issue are evidence of the second *Colomar* factor, *i.e.*, the usual and customary rate Plaintiff charges and receives for its hospital goods and services. Based on a report produced by Plaintiff, bates labeled MHS086262, it is clear that the Market Data is available in an electronic format that permits complex reports and calculations to be made. Nevertheless, Plaintiff refused to produce its Market Data; instead, Plaintiff asserted six objections which lack merit and do not justify Plaintiff's refusal to produce discoverable, relevant evidence of reasonable value.

**II.     Plaintiff Has Not Produced Reimbursement Data and Defendants' Requests for Plaintiff's Market Data Is Not Prohibited By this Court's Prior Orders/Decisions.**

The centerpiece of Plaintiff's objections is its argument that this Court's prior orders do not permit this discovery. Plaintiff argues that this discovery violates the Court's June 24, 2021 Order. This assertion is patently wrong. Nothing in this Court's June 24, 2021 Order prohibits future requests. In fact, the June 24, 2021 Order attempted to fashion a compromise that would result in the production of sufficient, relevant reimbursement data without undue burden to Plaintiff. That compromise contemplated the production of 2021 reimbursement data and a way to relate those reimbursement rates to the rates paid in 2016–2020. The June 24, 2021 Order was based on Plaintiff's representations; however, these representations proved to be inaccurate. First, Plaintiff represented to the Court that Medicare and Medicaid rates were included on the 2021 Transparency Report. *See* Transcript of June 24, 2021 Motions Hearing ("June 24, 2021 Trans."), at 125:21–126:3, 132:16–133:10 attached here as **Exhibit 3.** In fact, Medicare and Medicaid reimbursement rates are not included in the Transparency Report. Second, Plaintiff represented

that the 2021 Transparency Report contained reimbursement rates Plaintiff received from in-network *and* out-of-network payers. *See* June 24, 2021 Trans., at 106:3–6. In fact, the 2021 Transparency Report does not contain reimbursement rates from out-of-network payers. As a result, several key pieces of data were represented to be included in the Transparency Report are not actually included and no discovery has been produced by Plaintiff on these data points.

Not only are key aspects of the reimbursement data missing from the Transparency Report, but the Parties have not been able to arrive at a stipulation as to how the reimbursement rates on the 2021 Transparency Report relate to the claims at issue in the case, which span from January 1, 2016, through December 31, 2020. The 2021 Transparency Report pertains to reimbursements in 2021—not reimbursement received during the class period. Plaintiff provided a declaration from Jeffrey Bross ("Bross Declaration") which states that the "year-to-year weighted average changes in expected payment from all payors as compared to the rates in the 2021 Transparency Reports" were between 21.9% lower in 2016 and 1.83% lower in 2020. However, these statements are useless to Defendants to understand Plaintiff's reimbursement rates for the relevant time period. Plaintiff initially refused to provide any of the underlying documents or information on which the Bross Declaration is based until this Court compelled Plaintiff to explain how the weighted average changes were calculated and produce the documents relied upon to make the Bross Declaration. *See* December 17, 2021 Order [D.E. 95]. Plaintiff since produced one document and provided an explanation. The document produced is a report that was clearly created from the exact same information sought by Defendants in this Motion, and the explanation for how the average weighted changes were calculated reveal that the average weighted changes cannot be applied to the 2021 Transparency Report reimbursement rates. The average weighted changes were calculated using all reimbursement rates from all payors, whereas the 2021 Transparency Report

only contains reimbursement rates from in-network, private payers. Thus, the average weighted changes, which reflect the reimbursement rates from all payers, including government payers and out-of-network payers, cannot be applied to the 2021 reimbursement rates for private, in-network payers to yield an accurate result of what the reimbursement rates were in 2016–2020. As a result, the only reimbursement data produced in this case is 2021 reimbursement rates for in-network payers, which make up only a small percentage of Plaintiff's patients, and there is no way to use that data to determine what amounts were paid and accepted by Plaintiff for the same or similar services during the 2016–2020 relevant time period. Thus, Plaintiff has not produced any meaningful reimbursement data in this case. Nevertheless, it is apparent that Plaintiff maintains the data Defendants seek electronically in a readily accessible format.

### III. Defendants' Third Request For Production Is Specific And Targeted.

Plaintiff also objects on the basis that the Third Request for Production is vague, overbroad and not proportional to the needs of the case. These objections should also be overruled. Defendants explained exactly what they are seeking and Plaintiff clearly knows exactly the information that Defendants seek. The amounts Plaintiff received for the same or similar claims is clearly discoverable under *Colomar*. Plaintiff contends that *Baker County Med. Servs. v. Aetna Health Mgmt., LLC*, 31 So. 3d 842 (Fla. 1st DCA 2010) applies rather than *Colomar*.[1] Even under *Baker County*, the court determined that it was appropriate to consider the amounts billed and accepted by a provider. *Baker County* merely excluded governmental rates that were not the product of negotiation; thus, the production of claims-level market reimbursement data for all in-

---

[1] *Baker County* is inapposite. It is a statutory interpretation case interpreting a statute that does not apply to the goods and services at issue in this case and that only applies to Health Maintenance Organizations ("HMOs"). ELAP plans are all self-funded plans, and none of them are HMOs within the meaning of statute at issue.

network commercial Payers, out-of-network commercial Payers, self-pay/uninsured patients, workers compensation Payors or administrators, and automobile/indemnity insurance *is required*. Yet Plaintiff has refused to produce the exact information and detail that *Baker County* requires. Furthermore, *Baker County* is not a discovery decision; it does not limit discovery of the claims-level market reimbursement data for Medicare Advantage/Managed Medicare or Managed Medicaid, Traditional Medicare or Traditional Medicaid or TRICARE. To the extent that Plaintiff contends that such information may not be considered in an ultimate determination of the appropriate amount of reimbursements, its arguments are preserved.

Next, it is important to note that Plaintiff has requested and Defendants have produced exactly the same type of data requested from Plaintiff: the amounts that Defendants "allowed" for the same or similar services billed by facilities nationwide. The scope of discovery concerning reasonable value is not limited to claims incurred by ELAP plan members. In reality, the Market Data Defendants seek is one report. Not millions of documents. Discovery must be a two-way street and should not be one-sided. Similar to Defendants producing claims data for claims that are not at-issue, Plaintiff must similarly produce its Market Data.

Plaintiff also objects on the basis that the Market Data is confidential and proprietary; however, the Court has entered a protective order to protect the confidentiality of documents produced in this case. Plaintiff asserts that it would have to notify third parties and give them a chance to object. This is exactly what Defendants did when Plaintiff requested agreements with third parties. The contractual obligation to provide a third party notice and an opportunity to object is not a valid reason to withhold relevant discoverable documents. Further, this Court has already rejected Plaintiff's argument that discovery of reimbursement information is barred by section 395.3035(2)(c), Florida Statutes, which merely provides that reimbursement data does not have to

be provided in response to public records requests. The requests at issue are not public records requests.

IV.     **Defendants' Requests for Plaintiff's Market Data Is Not "Retaliatory."**

Finally, although not an appropriate objection, Plaintiff contends that Defendants' request for its Market Data is supposedly "retaliatory." Contrary to Plaintiff's baseless assertion, Defendants' request for Plaintiff's Market Data has nothing to do with Plaintiff's non-party discovery; it very simply needs this data to evaluate what is the reasonable value for the services at issue. Plaintiff's non-party subpoenas have nothing to do with reasonable value, and the non-parties' objections to Plaintiff's subpoenas have nothing to do with Defendants' right to obtain discovery relevant to reasonable value. Plaintiff's "retaliatory" objection is baseless, meritless, and completely irrelevant to the Requests.

## REQUEST FOR HEARING

Defendants respectfully request oral argument on this Motion to Compel, due to the importance of the issues raised by this Motion and the complexity and significance of this putative nationwide class action. Defendants respectfully submit that oral argument will assist the Court in its analysis and resolution of the legal and factual issues raised by the Parties' claims and defenses, class certification issues, and Defendants' objections to Plaintiff's discovery requests. Defendants estimate that the Parties will need approximately thirty minutes of oral argument on this Motion.

## LOCAL RULE 7.1(A)(3) GOOD FAITH CERTIFICATION

The undersigned hereby certifies that counsel for Defendants have conferred with Plaintiff's counsel in a good faith effort to resolve the issues raised in this Motion as set forth in the attached letter dated March 22, 2022 attached here as ***Exhibit 4.*** Plaintiff opposes the relief sought by this Motion.

Respectfully submitted this 31st day of March, 2022.

| **FISHERBROYLES, LLP** | **AKERMAN LLP** |
|---|---|
| /s/ *Irene Oria* | */s/Irene Bassel Frick* |
| Robert T. Wright, Jr., Esq. | Irene Bassel Frick, Esq. |
| FL Bar No. 185525 | FL Bar No.: 0158739 |
| Irene Oria, Esq. | 401 E. Jackson Street, Suite 1700 |
| FL Bar No. 484570 | Tampa, FL 33602-5250 |
| FisherBroyles, LLP | Phone: (813) 223-7333 |
| 199 E. Flagler St. #550 | Fax: (813) 223-2837 |
| Miami, FL 33131 | irene.basselfrick@akerman.com |
| Tel.: (786) 536-2838 | |
| Fax: (305) 536-2838 | |
| robert.wright@fisherbroyles.com | |
| irene.oria@fisherbroyles.com | |

Patrick M. Emery, Esq. (*pro hac vice*)
GA Bar No. 821303
PA Bar No. 306672
Kris Alderman, Esq. (*pro hac vice*)
GA Bar No. 179645
FisherBroyles, LLP
945 East Paces Ferry Rd NE, Suite 2000
Atlanta, GA 30326
(404) 793-0652
patrick.emery@fisherbroyles.com
kris.alderman@fisherbroyles.com

*Counsel for Defendants*

- 12 -

## CERTIFICATE OF SERVICE

      I hereby certify that on March 31, 2022, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

                                            *s/Irene Bassel Frick*
                                            Irene Bassel Frick, Esq.