UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| **SOUTH BROWARD HOSPITAL DISTRICT, D/B/A/ MEMORIAL HEALTHCARE SYSTEM,** on its own behalf and on behalf of other similarly situated healthcare facilities, :<br><br>Plaintiff, :<br><br>**ELAP SERVICES, LLC and GROUP & PENSION ADMINISTRATORS, INC.**, :<br><br>Defendants. : | Case No. 0:20-cv-61007-AHS |

## DEFENDANTS' SECOND MOTION TO COMPEL PLAINTIFF TO PRODUCE DE-IDENTIFIED MARKET DATA

Regrettably, Defendants, ELAP Services, LLC, and Group & Pension Administrators, Inc. ("Defendants"), are once again forced to file a motion to compel Plaintiff, South Broward Hospital District d/b/a Memorial Healthcare System ("Plaintiff" or "Memorial") to produce de-identified market reimbursement data. The Court has already granted this motion in part, but it did so under false pretenses, and Memorial refuses to comply with its obligations.

**BACKGROUND**

The Court is well-aware of this discovery dispute, as the parties have been litigating this specific issue for well over a year and the Court has already granted in part two motions seeking Memorial's reimbursement data. On June 24, 2021, the Court ordered Memorial to produce its 2021 transparency report and discuss a stipulation that would relate Memorial's 2021 reimbursement rates to its reimbursement rates in 2016 through 2020. (Exhibit 1, Transcript of June 24, 2021 Hearing and Order.) Memorial produced its 2021 transparency report and a declaration—not a stipulation—that identified Memorial's "year to year weighted average changes

1

66959253;1

in expected payment from all payors." The parties were not able to enter a stipulation as to the way in which the 2016–2020 reimbursement rates related to the 2021 reimbursement rates.

Defendants served new discovery requests seeking Memorial's actual reimbursement rates for 2016–2020, and, eventually, were required to bring a motion to compel responses. (Dkt. 101.) This Court heard that motion and overruled each and every objection to the discovery requests, but adjourned the hearing at Memorial's insistence to allow the parties to work out a resolution. (Exhibit 2, Transcript of June 29, 2022 Hearing and Order.) The parties were unable to reach a compromise, so the hearing was reconvened on June 30, 2022, and the Court entered an order based on Memorial's counsel's representation that it was impossible for Memorial to generate a report that included CPT codes, HCPCS codes, modifiers, and quantities. (Exhibit 3, Transcript of June 30, 2022 Hearing and Order.) Based on Memorial's claim that it was impossible to produce CPT/HCPCS codes and its claim that it was unduly burdensome to produce all reimbursement data for 2016–2020, which Memorial indicated included approximately five million claims, the Court ordered Memorial to produce a random sample of one million claims with the facility name, inpatient/outpatient status, unique identifier for the payer, billed charges, payment from insurance, patient payment, in/out of network, whether paid under rental/wrap network, hospital account number, allowed amount, and out of pocket responsibility. (Exhibit 3, at pp. 14:16–15:12.) The Court ordered the parties to meet and confer to develop a random sample of one million claims. (Exhibit 3, at p. 12:13–16.) The Court further ordered Memorial to "file an affidavit describing, with specificity, how [CPT codes, HCPCS codes, modifiers, and number of units] are overburdensome or unfeasible to produce." (Exhibit 3, at p. 16:3–17.)

Subsequently, Memorial notified Defendants that it was "electing to produce claims-level market reimbursement data for all claims from 2016–2020 (excluding Medicare, Medicaid,

2

Workers Comp, and Tricare) instead of providing a random sample." (Exhibit 4, July 7 email from Danya Pincavage.) On July 12, Memorial filed the Declaration of Cheryl Boucher (Boucher Declaration); however, the Boucher Declaration did not describe how CPT codes, HCPCS codes, modifiers, and number of units were overburdensome or unfeasible to produce. (Document 126-1.) Contrary to the representations made at the June 29 and 30 hearings, the Boucher Declaration stated that Memorial **could** run a report that included "CPT codes, HCPCS, modifiers, and number of units" "for all claims except Medicare, Medicaid, Tricare, and Workers Compensation for the years 2016 through 2020." (Document 126-1, at ¶¶ 5–6.) The next day, Defendants' counsel inquired whether Memorial would agree to produce the report described in the Boucher Declaration given the revelation that doing so was neither overburdensome nor unfeasible. (Exhibit 5, July 13 Email from Kris Alderman to Memorial's counsel.) After additional follow-up, Memorial indicated that it would produce the report described in the Boucher Declaration for all claims except Medicare, Medicaid, Tricare, and Workers Compensation for the years 2016 through 2020. (Exhibit 6, July 22 Email from Danya Pincavage to Kris Alderman, at pp. 2–3.)

Despite the Boucher Declaration establishing that production of the requested data is neither overburdensome nor unfeasible and counsel's agreement to do so, Memorial still refuses to produce data for all claims from 2016 through 2020. Memorial produced reimbursement data for approximately three million claims. Based on conversations during meetings with Memorial's counsel, Memorial withheld reimbursement data for all claims in which it disputes the amount of reimbursement received. In other words, Memorial withheld evidence it does not like and produced only the evidence it does like. This is inconsistent with the Court's prior order. Defendants sought to resolve this dispute with Memorial prior to filing this motion, but Memorial continues to refuse to comply with its discovery obligations.

**DISCOVERY REQUESTS AT ISSUE**

The discovery requests at issue are Requests 1–3 of Defendants' Third Requests for Production:

> 1. Please produce claims-level market reimbursement data reflecting the reimbursement Rates and amounts, including discounted Charges, received by Plaintiff for medical good or services rendered during the Relevant Time Period from any and all Payers, including in-network commercial Payers, out-of-network commercial Payers, Medicare Advantage/Managed Medicare or Managed Medicaid, Traditional Medicare or Traditional Medicaid, self-pay/uninsured, worker's compensation Payors or administrators, TRICARE, and automobile/indemnity insurance. For each service, include a separate line with the Claim number, date of service, CPT Code, HCPCS code, modifier, the Federal Tax Identification Number, servicing facility information, servicing location information, policy number, group number, a unique identifier for each Payer, the Payer line of business (Commercial, Medicare Advantage, Managed Medicaid, Traditional Medicare, Traditional Medicaid, worker's compensation, TRICARE, automobile/indemnity, self-pay, etc.), the number of units, the charge billed, the allowed amount, the payment amount, the out-of-pocket patient responsibility, the amount collected from the patient, an indicator for whether the service was paid under a participating provider network agreement, and an indicator for whether the service was paid under a wrap/rental network agreement.
>
> **Response:** Memorial objects to this request for several reasons.
>
> First, Memorial objects to the term "market reimbursement data" as vague. Without further clarification, Memorial is unable to meaningfully respond to that portion of the request.
>
> Second, this request is overbroad and not proportional to the needs of the case. This case is about claims that ELAP's plans have underpaid due to ELAP's reference-based pricing scheme. Here, ELAP is seeking reimbursement information on each and every claim ever processed at Memorial's facilities from January 1, 2016 through the present, regardless of whether the claim is related to an ELAP plan member, including a breakdown by service code for over five million healthcare claims that are not at issue in this action. Such information is irrelevant to the to the claims at issue, beyond the scope of this matter, and violates the Court's June 24, 2021, order denying Defendants' motions to compel. (D.E. 73).
>
> Third, U.S. Magistrate Judge Alicia O. Valle already denied Defendants' prior requests for production and interrogatories (e.g., Interrogatory Nos. 5 – 7 and Request for Production Nos. 59 – 61) seeking similar reimbursement data. In fact, the Court recognized that Defendants' requests were overbroad and fashioned a compromise by ruling that Memorial would only need to provide the 2021 Transparency Report, along with the possibility of a stipulation regarding the applicability of the 2021 reimbursement rates for prior years (i.e., 2016 – 2020). See June 24, 2021, Hr'g Tr. at 180:13-20. Memorial complied with the Court's order and provided Defendants with the 2021 Transparency Report, which contains

over 104,000 lines of reimbursements data and millions of data points. Memorial also provided Defendants with a declaration as to how the rates have changed in 2016 – 2020, along with the data used and relied on to calculate those changes. Memorial even provided Defendants with a detailed narrative as to how the calculations were made. Defendants now seek more reimbursement data than they originally requested in their initial request for production that the Court ruled were overbroad. Id. at 146:12-14 ("I'm glad that I didn't have to sit there and rewrite your requests or your interrogatories, which were quite overbroad").

Fourth, this request, as drafted, would require Memorial to divulge proprietary trade secrets related to confidential reimbursement rates, discounts, and contract information entered into between Memorial and in-network and out-of-network payors. Memorial's pricing methodologies are protected from disclosure by section 395.3035(2)(c), Florida Statutes, as the Florida Legislature has determined that public hospitals, like Memorial, are exempt from producing it in response to a public records request under chapter 119, Florida Statutes, and article I, section 24(a) of the Florida Constitution. Moreover, Memorial is bound by confidentiality agreements that prevent it from disclosing the requested information. Thus, even with the Stipulated Confidentiality Agreement and Protective Order (D.E. 43), Memorial cannot produce reimbursement information with contracted payers without giving them notice and an opportunity to object.

Fifth, reimbursement data and/or rates for Medicare Advantage/Managed Medicare or Managed Medicaid, Traditional Medicare or Traditional Medicaid, TRICARE, worker's compensation, or any other government funded plans are overbroad and irrelevant under *Baker County Medical Services, Inc. v. Aetna Health Management, LLC*, 31 So. 3d 842 (Fla. 1st DCA 2010). *See id.* at 844-45 ("In determining the fair market value of the services, it is appropriate to consider the amounts billed and amounts accepted by provider with one exception. The reimbursement rates for Medicare and Medicaid are set by government agencies and cannot be said to be 'arm's length.'").

Sixth, Memorial objects to this request as harassing and retaliatory. Defendants are already in possession of Memorial's reimbursement data for the relevant time period, as described above. Defendants' request is intended to harass and retaliate against Memorial because Memorial has propounded discovery on ELAP's third-party administrators ("TPAs"). Indeed, Memorial served multiple subpoenas on ELAP's TPAs, some of which are owned by or affiliated with ELAP. Rather than provide the information that ELAP allegedly could not, the TPAs have refused to cooperate with Memorial whatsoever and have moved to quash Memorial's subpoenas in federal district courts across the county. Five TPAs are presently litigating motions to quash subpoenas served by Memorial. Three of those motions to quash have been transferred to this Court. Each of those transfers has been subject to appeals that Memorial has moved to dismiss for lack of jurisdiction. One of those appeals has already been dismissed for lack of jurisdiction by the Eighth Circuit.

2. To the extent not included in response to Request No. 1, please produce claims level market reimbursement data reflecting the reimbursement Rates and amounts, including discounted Charges, received by Plaintiff for medical services rendered during the

5

Relevant Time Period for the CPT codes or HCPCS codes listed on Exhibit A from any and all Payers, including in-network commercial Payers, out-of-network commercial Payers, Medicare Advantage/Managed Medicare or Managed Medicaid, Traditional Medicare or Traditional Medicaid, self-pay/uninsured worker's compensation Payers or administrators, TRICARE, and automobile/indemnity insurance. For each service, include a separate line with the Claim number, date of service, CPT Code, modifier, the Federal Tax Identification Number, servicing facility information, servicing location information, policy number, group number, a unique identifier for each Payer, the Payer line of business (Commercial, Medicare Advantage, Managed Medicaid, Traditional Medicare, Traditional Medicaid, worker's compensation, TRICARE, automobile/indemnity, self-pay, etc.), the number of units, the charge billed, the allowed amount, the payment amount, the out-of-pocket patient responsibility, the amount collected from the patient, an indicator for whether the service was paid under a participating provider network agreement, and an indicator for whether the service was paid under a wrap/rental network agreement.

**Response:** *See* Response to RFP No. 1 above.

3. Please produce all Documents and information needed to understand any data produced in response to Request Nos. 1 and 2 or any other Requests for Production including, but not limited to, data dictionaries and legends for any coded fields and detailed descriptions of parameters and filters used to generate data.

**Response:** *See* Response to RFP No. 1 above.

**ARGUMENT**

This is a very simple issue. The Court overruled all Memorial's objections to the requested discovery. The Court did not order full compliance because of Memorial's counsel's representations at the hearing that compliance was impossible and overly burdensome. Those representations were false. Since all objections have been overruled and full compliance is not only possible, but also not burdensome, the Court should order Memorial to respond fully to Defendants' Third Request for Production, Requests 1–3.

The Boucher Declaration proves compliance is possible and not burdensome. Boucher admitted "Memorial can run a report listing the data maintained on an 837 file for all claims except Medicare, Medicaid, Tricare, and Workers Compensation for the years 2016 through 2020." (Document 126-1, at ¶ 5.) The 837 files include CPT codes, HCPCS codes, modifiers, and

quantities, (Document 126-1, at ¶ 6). The Boucher Declaration directly contradicts Memorial's counsel's representations at the hearing and in court-filed documents. *See, e.g.*, Document 121, at ¶ 4 ("Plaintiff's counsel confirmed that Plaintiff cannot produce a report with CPT codes, HCPCS codes, modifiers, and number of units."). The fact that Memorial can run a report not only means that compliance is possible, but also that compliance is not burdensome—it is as simple as generating a report.

Memorial can no longer be allowed to object to full compliance on grounds of burden. The Court recognized the need for actual evidence of burden and lack of feasibility, so it ordered an affidavit to be filed:

> Other than the representations of counsel, I have not seen any evidence to support the infeasibility or the fact that the -- producing these items would be overburdensome to the hospital. Therefore, I'm going to order that the plaintiff must file an affidavit describing, with specificity, how these items are overburdensome or unfeasible to produce.
>
> The affidavit must describe, with specificity, the extent, the time, the labor, the system capabilities, et cetera, that make production either overburdensome or unfeasible.

(Exhibit 3, at p. 16:3–11.) The affidavit filed pursuant to that Order was the Boucher Declaration, which conclusively establishes compliance is not burdensome. Not only does the Boucher Declaration state that the information is contained within a report that Memorial can generate, but it makes absolutely no effort to describe any lack of feasibility or burden with compliance. Memorial elected not to construct a sample, but rather to produce all reimbursement data for claims (except Medicare, Medicaid, Tricare, and Workers Compensation claims) from 2016 through 2020, which further demonstrates the lack of burden associated with producing the reimbursement data.

Despite repeatedly representing to the Court that Memorial had approximately five million claims from 2016 to 2020, (Exhibit 3, at p. 9:7–11), Memorial selectively produced reimbursement

66959253;1

data for only three million claims. Memorial's counsel indicated that reimbursement data was withheld for any claim that Memorial disputes. In other words, Memorial has cherry-picked the reimbursement data it wants to disclose and withheld the reimbursement data it does not want to disclose. Nothing in the Court's Order permits Memorial to exclude reimbursement data for claims it disputes, nor should the Court allow Memorial to exclude such data. Regardless of a dispute, the reimbursement data is relevant and discoverable. Disputed or not, the data is still evidence of what was paid in the market. Any purported dispute with respect to reimbursement amounts in this data set could be as many as seven years old and at least as much as a year old. If Memorial has not been paid more by now, it is unlikely to change. Memorial did not object to the discovery on this basis, and, even if it had, all objections were overruled.

Memorial is desperate to avoid disclosing its complete reimbursement data. After being forced to support its burden objections with actual evidence of burden, which it could not do, Memorial was faced with having to disclose its reimbursement data. Rather than comply with the Court's order and do what it said it would do after filing the Boucher Declaration, Memorial cherry-picked the reimbursement it wanted to disclose and concealed the reimbursement rates it does not want to share. Memorial is not permitted to withhold evidence that undermines its case. Memorial may argue that some reimbursement rates should be given more weight than others, but it is not permitted to selectively produce only the reimbursement data that it likes. Defendants are entitled to discovery of Memorial's reimbursement data, including reimbursement rates that are purportedly disputed.

8

**CONCLUSION**

This issue has been unresolved far too long. Memorial has evaded motions to compel by making inaccurate representations that have now been conclusively disproven by a declaration of its own employee. The Court has previously recognized Defendants are entitled to Memorial's reimbursement data, but the question was how much information Defendants were entitled to given Memorial's representations that compliance was burdensome or even impossible. Those representations were false. When the Court required an affidavit to support Memorial's burden and feasibility objections, Memorial could not provide one. In fact, the Boucher Declaration conclusively established counsel's representations were false and the data sought by Defendants was available in reports that can be generated. Rather than simply produce the reimbursement data as promised, Memorial cherry-picked the data it wanted to disclose and withheld the data it did not want to disclose. Memorial's withholding of selected reimbursement data is unjustifiable. Accordingly, Defendants seek an order compelling full compliance with Requests for Production 1 through 3 and an award of reasonable costs and attorneys' fees incurred to bring this motion.

**LOCAL RULE 7.1(A)(3) GOOD FAITH CERTIFICATION**

The undersigned hereby certifies that counsel for Defendants have conferred with Plaintiff's counsel in a good faith effort to resolve the issues raised in this Motion, and that Plaintiff's counsel has indicated that Plaintiff opposes the relief sought by this Motion. On October 14, 2022, the Parties agreed to mutual seven-day extension to file this motion to compel, which extended Defendants' deadline to file this Motion through October 21, 2022. *See* L.R. 26.1(g)(1).

66959253;1

Respectfully submitted this 21st day of October, 2022.

| | |
|---|---|
| **FISHERBROYLES, LLP** | **AKERMAN LLP** |
| Irene Oria, Esq. | /s/ *Irene Bassel Frick* |
| FL Bar No. 484570 | Irene Bassel Frick, Esq. |
| FisherBroyles, LLP | FL Bar No.: 0158739 |
| 199 E. Flagler St. #550 | 401 E. Jackson Street, Suite 1700 |
| Miami, FL 33131 | Tampa, FL 33602-5250 |
| Tel.: (786) 536-2838 | Phone: (813) 223-7333 |
| Fax: (305) 536-2838 | Fax: (813) 223-2837 |
| irene.oria@fisherbroyles.com | irene.basselfrick@akerman.com |

**LAVENDER HOFFMAN ALDERMAN LLC**

Patrick M. Emery, Esq. (*pro hac vice*)
GA Bar No. 821303
PA Bar No. 306672
Kris Alderman, Esq. (*pro hac vice*)
GA Bar No. 179645
945 East Paces Ferry Rd NE, Suite 2000
Atlanta, GA 30326
(404) 793-0652
patrick.emery@fisherbroyles.com
kris.alderman@fisherbroyles.com

*Counsel for Defendants ELAP Services, LLC and Group & Pension Administrators, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on October 21, 2022, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

> */s/Irene Bassel Frick*
> Irene Bassel Frick, Esq.

66959253;1