**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 0:20-CV-61007-SINGHAL/VALLE**

SOUTH BROWARD HOSPITAL DISTRICT d/b/a
MEMORIAL HEALTHCARE SYSTEM, on behalf of
itself and all others similarly situated,

     Plaintiff,

v.

ELAP SERVICES, LLC, a Pennsylvania limited
liability company, and GROUP & PENSION
ADMINISTRATORS, INC., a Texas corporation,

     Defendants.

_____/

**PLAINTIFF SOUTH BROWARD HOSPITAL DISTRICT'S MOTION FOR**
**CLASS CERTIFICATION AND INCORPORATED MEMORANDUM OF LAW**

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................................ iv

INTRODUCTION ............................................................................................................... 1

    The Florida Emergent Class ........................................................................................... 3

    The Florida Nonemergent Class ..................................................................................... 3

    The Nationwide Issue Class ........................................................................................... 4

BACKGROUND .................................................................................................................. 4

    █████████████████████████████████ .................. 4

    ELAP Automatically Reprices All Claims at Issue ....................................................... 5

    Every Step of ELAP's Claims Administration Is Similarly Uniform and Automated ... 6

    ELAP Uniformly Protects Patients from "Balance Billing" ........................................... 7

    ELAP Deceives Hospitals for Both Emergency and Non-Emergency Services ........... 7

    ████████████████████████████ ............... 9

ARGUMENT ........................................................................................................................ 9

  I.   MEMORIAL SATISFIES THE FOUR PREREQUISITES OF RULE 23(A). ............... 10

    A. The Putative Classes Satisfy the Eleventh Circuit's Numerosity Requirement. ............. 10

    B. Plaintiff and the Proposed Classes Satisfy the Commonality Requirement................... 10

    C. Memorial's Claims Are Typical of Those of the Class. .................................................. 14

    D. Memorial and Its Counsel Will Fairly and Adequately Represent the Class Interests. .. 14

      1.  Memorial Does Not Have Interests Antagonistic to the Rest of the Class. ............... 15

      2.  Memorial's Counsel Are Exceedingly Qualified and Capable. ................................. 15

  II.   MEMORIAL SATISFIES THE REQUIREMENTS OF RULE 23(b)............................ 16

    A. Common Questions of Law and Fact Predominate Because Legal and Factual Questions
       Will Be Resolved with Proof Common to Memorial and the Classes. ........................... 17

    FDUTPA ............................................................................................................................ 18

    Unjust Enrichment ............................................................................................................. 19

B. A Class Action Would Be Superior to the Adjudication of Individual Claims. ............. 21

   1. Individual class members' interest in separate actions and the extent and nature of litigation already commenced ...................................................................................... 21

   2. Difficulties likely to be encountered in the management of a class action................ 22

C. The Court Should Certify a Rule 23(b)(2) Class for Injunctive Relief. ......................... 23

III. THE COURT SHOULD CERTIFY A NATIONWIDE ISSUE CLASS ON MEMORIAL'S UNJUST ENRICHMENT CLAIM. ...................................................... 24

CONCLUSION ................................................................................................................................. 25

## **TABLE OF AUTHORITIES**

### **Cases**

*Amchem Products, Inc. v. Windsor,*
  521 U.S. 591 (1997) ................................................................................................. 10, 17

*Aranaz v. Catalyst Pharm. Partners Inc.,*
  302 F.R.D. 657 (S.D. Fla. 2014) .......................................................................... 17

*Baycare Health Sys., Inc. v. Med. Sav. Ins. Co.,*
  2008 WL 792061 (M.D. Fla. Mar. 25, 2008) ...................................................... 18

*Begley v. Acad. Life Ins. Co.,*
  200 F.R.D. 489 (N.D. Ga. 2001) .......................................................................... 24

*Belin v. Health Ins. Innovations, Inc.,*
  337 F.R.D. 544 (S.D. Fla. 2021) ..................................................................... 11, 14

*Bowe v. Pub. Storage,*
  318 F.R.D. 160 (S.D. Fla. 2015) .......................................................................... 19

*Brown v. Electrolux Home Prods., Inc.,*
  817 F.3d 1225 (11th Cir. 2016) ........................................................................... 20

*Carriuolo v. General Motors Co.,*
  23 F.3d 977 (2016) ......................................................................................... 18, 21

*CGC Holding Co., LLC v. Broad & Cassel,*
  773 F.3d 1076 (10th Cir. 2014) ........................................................................... 21

*Cheney v. Cyberguard Corp.,*
  213 F.R.D. 484 (S.D. Fla. 2003) ................................................................. 10, 14, 16

*Fam. Heritage Life Ins. Co. of Am. v. Combined Ins. Co. of Am.,*
  319 So. 3d 680 (Fla. 3d DCA 2021) ..................................................................... 18

*Green v. Wolf Corp.,*
  406 F.2d 291 (2d Cir. 1968) ................................................................................ 23

*Herrera v. JFK Med. Ctr. Ltd. P'ship,*
  648 F. App'x 930 (11th Cir. 2016) ....................................................................... 17

*Holzman v. Malcolm S. Gerald & Assocs., Inc.,*
  334 F.R.D. 326 (S.D. Fla. 2020) .......................................................................... 14

*IHC Health Servs. Inc. v. ELAP Servs., LLC,*
  2018 WL 4688358 (D. Utah Sept. 28, 2018) ...................................................... 21

*In re 1 Glob. Cap. LLC*,
   2020 WL 1486791 (Bankr. S.D. Fla. Mar. 23, 2020) ................................................... 14

*In re Checking Acct. Overdraft Litig.*,
   286 F.R.D. 645 (S.D. Fla. 2012) ............................................................................... 19

*In re Checking Acct. Overdraft Litig.*,
   275 F.R.D 666 (S.D. Fla. 2011) ............................................................... 11, 17, 18

*In re Deepwater Horizon*,
   739 F.3d 790 (5th Cir. 2014) .................................................................................... 25

*In re Managed Care Litigation*,
   209 F.R.D. 678 (2002). ............................................................................................. 22

*In re Nassau Cnty. Strip Search Cases*,
   461 F.3d 219 (2d Cir. 2006) ............................................................................... 24, 25

*In re Subpoena of S. Broward Hosp. Dist.*, No.,
   2022 WL 17583433 (S.D. Fla. Feb. 18, 2022) ........................................................ 16

*In re Terazosin Hydrochloride Litig.*,
   220 F.R.D. 672 (S.D. Fla. 2004) .............................................................................. 17

*James D. Hinson Elec. Contracting Co. v. BellSouth Telecomms., Inc.*,
   275 F.R.D. 638 (M.D. Fla. 2011) ...................................................................... 14, 20

*Klay v. Humana, Inc.*,
   382 F.3d 1241 (2004) ............................................................................................... 22

*Klewinowski v. MFP, Inc.*,
   2013 WL 5177865 (M.D. Fla. Sept. 12, 2013) ....................................................... 11

*Marrache v. Bacardi U.S.A., Inc.*,
   17 F.4th 1084 (11th Cir. 2021) ................................................................................ 18

*Martin v. Behr Dayton Thermal Prod. LLC*,
   896 F.3d 405 (6th Cir. 2018) ............................................................................. 23, 25

*Navelski v. Int'l Paper Co.*,
   244 F. Supp. 3d 1275 (N.D. Fla. 2017) ................................................................... 25

*Palm Beach Golf Ctr.-Boca, Inc. v. Sarris*,
   311 F.R.D. 688 (S.D. Fla. 2015) .............................................................................. 11

*Rutstein v. Avis Rent-A-Car Sys., Inc.*,
   211 F.3d 1228 (11th Cir. 2000) ............................................................................... 17

*Sacred Heart Health Sys., Inc. v. Humana Mil. Healthcare Servs., Inc.*,
    601 F.3d 1159 (11th Cir. 2010) .............................................................. 22

*Soutter v. Equifax Info. Servs., LLC*,
    307 F.R.D. 183 (E.D. Va. 2015) ............................................................. 22

*State Farm Mut. Auto. Ins. Co. v. Performance Orthapaedics & Neurosurgery, LLC*,
    315 F. Supp. 3d 1291 (S.D. Fla. 2018) .................................................. 19

*State, Off. of Att'y Gen., Dep't of Legal Affs. v. Wyndham Int'l, Inc.*,
    869 So. 2d 592 (Fla. 1st DCA 2004) ...................................................... 19

*Tefel v. Reno*,
    972 F. Supp. 608 (S.D. Fla. 1997) ......................................................... 15

*Tyson Foods, Inc. v. Bouaphakeo*,
    577 U.S. 442 (2016) ................................................................................ 17

*Veal v. Crown Auto Dealerships, Inc.*,
    236 F.R.D. 572 (M.D. Fla. 2006) ........................................................... 19

*Walco Investments, Inc. v. Thenen*,
    68 F.R.D. 315 (1996) ...................................................................... 14, 21

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ........................................................................ 11, 13

*Webber v. Bactes Imaging Sols., Inc.*,
    295 So. 3d 841 (Fla. 2d DCA 2020) ...................................................... 18

*Weidman v. Ford Motor Co.*,
    2022 WL 1071289 (E.D. Mich. Apr. 8, 2022) .................................. 24, 25

*Williams v. Wells Fargo Bank, N.A.*,
    280 F.R.D. 665 (S.D. Fla. 2012) ..................................................... 19, 21

**Statutes**

42 U.S.C.A. § 1395dd ................................................................................ 6, 13

§ 501.211(1), Fla. Stat. ..................................................................................... 23

**Rules**

Fed. R. Civ. P. 23(a) ........................................................................... 9, 10, 16

Fed. R. Civ. P. 23(a)(1) .................................................................................. 10

Fed. R. Civ. P. 23(a)(2) ..................................................................... 10, 11, 14

Fed. R. Civ. P. 23(a)(3) ................................................................................................. 14

Fed. R. Civ. P. 23(a)(4) ............................................................................................ 14, 15

Fed. R. Civ. P. 23(b) ................................................................................................. 9, 16

Fed. R. Civ. P. 23(b)(2) ...................................................................... 9, 10, 16, 23, 25

Fed. R. Civ. P. 23(b)(3) ................................................................ 9, 10, 16, 17, 24, 25

Fed. R. Civ. P. 23(c)(4) ..................................................................... 20, 24, 25

## **Other Authorities**

1 Alba Conte & Herbert B. Newberg, NEWBERG ON CLASS ACTIONS § 3.24 at 3-133 ................ 16

2 NEWBERG § 4:70 ........................................................................................................ 21

2 NEWBERG § 4:72 ........................................................................................................ 22

## INTRODUCTION

This case centers around one issue: ELAP's uniform and unfair application of a healthcare repricing formula that slashes payments to hospitals well below the reasonable value of the services provided. ELAP applies its formula, which it calls "Reference-Based Pricing" ("RBP"), uniformly across all hospital claims at issue regardless of the nature of the service provided or the circumstances of a patient's treatment. Uniformly and without exception, ELAP reprices all hospitals' charges at the greater of 120% of Medicare's allowed amount or 112% of ELAP's estimated cost for the services and ELAP's application of RBP results in underpayment to all hospitals. Plaintiff South Broward Hospital District ("Memorial") seeks to recover its own losses and pursue relief for other hospitals injured by ELAP's scheme.

ELAP repriced every claim at issue applying its RBP formula automatically and in the same way. Every appeal was subject to identical standard operating procedures resulting in first-level denial. ELAP processed second-level appeals in an identical manner and with the same result. Third-party claims administrators that contract with ELAP received training to handle hospital questions and concerns according to a script; ELAP plan members are identically coached not to pay bills from hospitals invoicing the unpaid portion of their original bills. When hospitals continue to pursue payment, ELAP provides members with legal counsel who apply common tactics to ensure that the hospital is never paid. Everything about ELAP's repricing process is consistent and unfair and has uniformly impacted every claim at issue in this case.

The arbitrariness of ELAP's pricing is beyond dispute. ███████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

---

[1] *See* Waters Dep. 29:16-30:10 (Ex. B). An exhibit index is attached as **Exhibit A**.

████████████████████████████████████████████████████████████████

████████ Ultimately, ELAP tailored both formulae to produce equivalent underpayments and ensure that hospitals were not fairly compensated.

No reasonable hospital would voluntarily accept ELAP's repricing. ████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

And of course, it never is. For emergency room ("ER") claims, including those at issue here, hospitals are required to treat all patients regardless of insurance, no questions asked. In non-emergent cases, ELAP members present hospitals with identification cards that omit any mention of ELAP or RBP. This omission is intentional. ████████████████████████████████

████████████████████████████████████████████████

Finally, classwide damages are readily calculated. In support of damages, Memorial offers the opinion of renowned healthcare expert Mark Abernathy, a forensic accountant with more than forty years of professional experience in the healthcare field. Mr. Abernathy has not only devised a uniform methodology to assess damages across the class, but also calculated the damages owed to each class member. No further inquiry—individual or otherwise—will be required at trial.

Memorial seeks certification of three classes with Claims[4] against ELAP and its cooperating third-party administrator ("TPA"), GPA. The first includes Florida hospitals that had ER Claims repriced by ELAP, the Florida Emergent Class. These hospitals were required by law to treat ELAP members regardless of insurance coverage. ELAP repriced these Claims post-treatment, and

---

[2] *See id.* at 32:15-25.

[3] Ex. C.

[4] "Claims" refers to the claims at issue as identified in Appendix E to the Expert Report of Mark Abernathy.

Memorial alleges that in all instances, these Claims were underpaid. While this first class includes Claims administered by Defendant GPA, ELAP's largest TPA partner by claim volume, it also includes Claims administered by every other TPA that worked with ELAP. The class is defined as follows:

### The Florida Emergent Class:

> All hospitals in Florida with emergent Claims for healthcare services provided to ELAP plan members within the applicable statute of limitations.

The second class involves non-ER Claims repriced by ELAP and includes all Florida hospitals that provided treatment to ELAP members outside the ER during the class period—the Florida Nonemergent Class. All members of this class provided services to ELAP members who went through the hospital pre-service registration process and received care from the hospital. Here, unlike the ER Claims, ELAP's deceptive admission tactics are at issue because hospitals engaged with ELAP members and, if ELAP's use of RBP had been adequately disclosed, hospitals would have denied those members care. Like the first class, this second class includes Claims administered by GPA and every other TPA that worked with ELAP. This class is defined as follows:

### The Florida Nonemergent Class:

> All hospitals in Florida with non-emergent Claims for healthcare services provided to ELAP plan members within the applicable statute of limitations.

Finally, Memorial seeks certification under Rule 23(c)(4) of a nationwide issue class on its unjust enrichment claim, certifying the issue of whether ELAP and GPA have unjustly retained benefits realized due to the RBP scheme. Certification of an issue class would resolve the central question of Memorial's and the class's unjust enrichment claims—whether Defendants' profits arising from the subject business practices were, in fact, unjustly secured—while creating

efficiencies for the judiciary and the parties alike. The nationwide issue class is defined as follows:

**The Nationwide Issue Class:**

> On the issue of whether ELAP and GPA unjustly retained benefits realized due to their application of RBP, all hospitals nationwide that have Claims for providing healthcare services to ELAP plan members within the applicable statute of limitations.

This case is ideally suited for class certification. The Court should grant Memorial's motion.

## BACKGROUND

ELAP promotes itself as a company that helps employers with self-funded health insurance plans save up to 30% of the healthcare costs that would be imposed by a traditional PPO.[5] What ELAP does not explain, however—on its website or elsewhere—is that it achieves these savings by slashing hospitals' medical bills far below the reasonable value of the services provided without a standing agreement with, prior notice to, or the consent of the hospitals involved. ██████████ ████████████████████████████████████████████████████████████ *See* Kelly Dep. 38:4-18 (Ex. D); Waters Dep. 172: 3-8. ████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████ *See* Expert Report of J. Mark Abernathy ("Abernathy Report") (Ex. ZZ), at Opinion #3 & ¶¶ A-C.

████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████ *See* Greenberg Dep. 62:16-19, 83:11-15 (Ex. E). ELAP did not come to this formula through due diligence or any manner of research or careful review. ████████████████████████ ████████████████████████████████████████████████████████████████

---

[5] Home page, elapservices.com (last visited on 1/13/2023).



*See* Waters Dep. 29:16-30:10.

*See id.* at 32:15-25.

ELAP designed these arbitrary formulae to undercompensate hospitals. Medicare rates are set below the costs of care, resulting in hospital underpayment.[6] In 2017, for example, Medicare paid only 87 cents for every dollar spent by hospitals caring for Medicare patients.[7]

*See* Abernathy Report, at § V(A) & n.11.

*See id.* at Opinion 1 & 1(A).

*See id.* at § IV pp. 6-7.

**ELAP Automatically Reprices All Claims at Issue**

*See* Exs. F-O.[8] When a plan member visits the

---

[6]  UNDERPAYMENT BY MEDICARE AND MEDICAID, Am. Hosp. Ass'n (Jan. 2019), https://www.aha.org/system/files/2019-01/underpayment-by-medicare-medicaid-fact-sheet-jan-2019.pdf. Underpayment occurs when the payment received is less than the reasonable value of the healthcare services provided.

[7] *See id.*

[8] Exhibits F-O are spreadsheets that ELAP produced to Memorial in native format. These exhibits are too large (collectively over 3 GB) to e-file via CM/ECF. Accordingly, Memorial has attached

ER for medical treatment, the law requires the hospital to treat the patient without first inquiring about insurance coverage or ability to pay. *See* 42 U.S.C.A. § 1395dd. Accordingly, under these circumstances, hospitals have no opportunity pre-service to discover ELAP's involvement or repricing policy.



*See* Ex. P; Ex. Q at ELAP0117574

*See* Greenberg Dep. 58-60, 62:16-19, 83:11-15.

*See id.* at 106:22-108:5; Straughan Dep. 55 (Ex. R); O'Leary Dep. 76:15-21, 174-175, 177:22-178:2 (Ex. S); Exs. Q, T.

### Every Step of ELAP's Claims Administration Is Similarly Uniform and Automated

*See* Exs. Q, U-X; O'Leary Dep. 174-175; 177:15-24; 178-183; 296:21-24; 297:1-6.

*See* O'Leary Dep. 174-175; 177:15-24; 178-183; 296:21-24; 297:1-6.

*See id* at 199:1-11, 203:7-13; Exs. Y, Z.

*See* Ex. Y.

---

excerpts from each spreadsheet to this Motion as Exhibits F-O, and will file the spreadsheets conventionally if required by the Court.

████████████████████████████████████████████████

███████████████████████████████████████████ *See*

Ex. AA; O'Leary Dep. 203:14-205:6; 214:10-220:30; 206:4-7 ██████████████████████

████████████████████████████████████████████████

███████████████████████ See *id.* at 221:21-222:2; Ex. BB.

**ELAP Uniformly Protects Patients from "Balance Billing"**

ELAP policy also prevents hospitals from recovering the balance of the amounts owed them from plan members. █████████████████████████████████████

█████████████████████████████ *See* Exs. U, CC, DD. █████████

████████████████████████████████████████████████

██████████████████ *See* Exs. EE, FF. ████████████████████

████████████████████████████████████████████████

████████████████ *See* Waters Dep. 180:17-183:11. ██████████████

█████████████████████████████ *See* Greenberg Dep. 89:24-90:8.

**ELAP Deceives Hospitals for Both Emergency and Non-Emergency Services**

ELAP applies the same policies and procedures to ER and non-ER Claims. The only distinction is that where plan members present insurance identification cards to hospitals for non-ER Claims prior to treatment, ELAP takes additional steps to conceal its involvement in the patient's insurance plan. ████████████████████████████

██████████████████████████████████████ *See* Ex. Q at ELAP0117585; Exs. GG, HH, II. █████████████████████

█████████████████████████████████ *See* Exs. GG at ELAP0088191; HH at ELAP0255402, II. █████████████████████ *See* Ex. Q at ELAP0117585.

████████████████████████████████████████████████



██████████████████████████████████████████████████ Exs. GG, HH.

██████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████ *See* O'Leary Dep. 131:9-19; Exs. JJ-MM.

To combat this inevitable hospital pushback, ELAP takes further steps to ensure that no reference to ELAP ever appears on a member ID card ████████████████████████████████

████████████████████████████████████████████████████████

██████████ Ex. C. This was not an anomaly. ████████████████████████████████████

█████████████████████████████████████████████ *See* Ex. LL ███████

████████████████████████████████ Ex. NN at ELAP0156585 █████████████

█████████████████████████████████ Ex. OO ███████████████████████████

████████████████████████████████████████████████████████

████████ Ex. PP at ELAP0145237 (same); Ex. QQ ███████████████████

███████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████ *See* Ex. RR at

GPA0132520-24 ██████████████████████████████████████████

██████████████████████; Ex. X. ████████████████████████████████████

████████████████████████████████████████████████

██████████████ *See* Leh Dep. (Ex. SS) 22:7-23:21; Ex. TT at ELAP00075549-50; Ex. UU at

ELAP017038. ████████████████████████████████████ *See* Leh Dep.



19:10-21 ███████████████████████████████████████ *ee* Ex. VV ██████████

████████████████████████████████████████████████████████████

██████ Ex. WW.

███████████████████████████████████████████████████

████████████████████████████████████████████████████████

*See* Kelly Dep. 38:10-18. ███████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

█████████████████████████ *See* Abernathy Report, at Opinion #3 ¶ A. ████████████

██████████████████████████████████████████████ *See id.* ¶ B.

████████████████████████████████████████████████████████

███████████████████████ *See id.* Tables 10 & 11; Burnett Depo. (Ex. XX) 35:6-15. ████████████

██████████████████████████████████████████ *See* Ex. CCC ██████████████████

███████████████████████ *See* Ex. DDD. Ultimately, Defendants' profits increase exponentially as

more members are enrolled, while hospitals like Memorial are paid less.

## ARGUMENT

The court may certify a class when (1) the class is so numerous that joinder of all members

is impracticable; (2) there are questions of law or fact common to the class; (3) the representative

parties' claims or defenses are typical of those of the class; and (4) the representative parties will

fairly and adequately protect the class's interests. Fed. R. Civ. P. 23(a).

A representative party must also demonstrate that the class satisfies at least one element of

Rule 23(b). Here, Memorial seeks certification pursuant to Rule 23(b)(3) and (b)(2). *See* Am.

---

[9] ███████████████████████████████████████████████████████████ *See* Abernathy Report at n. 47.

Compl. ¶¶ 146, 181. Rule 23(b)(3) requires a plaintiff to prove that "[c]ommon questions predominate over any questions affecting only individual members; and class resolution [is] superior to other available methods for the fair and efficient adjudication of the controversy." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997). Rule 23(b)(2) certification is appropriate if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

## I.    MEMORIAL SATISFIES THE FOUR PREREQUISITES OF RULE 23(A).

Memorial satisfies Rule 23(a)'s four prerequisites—numerosity, commonality, typicality, and adequacy of representation—as set forth below.

### A.  The Putative Classes Satisfy the Eleventh Circuit's Numerosity Requirement.

Rule 23(a)(1) requires plaintiffs to show that the proposed class is so numerous that joinder of all members would be impracticable. *See* Fed. R. Civ. P. 23(a)(1).  A class size of "more than forty [is] adequate." *Cheney v. Cyberguard Corp.*, 213 F.R.D. 484, 489-90 (S.D. Fla. 2003).

Memorial defines two Florida classes and a third, nationwide issue class above. *See* pp. 3-4, *supra.*



*See* Abernathy Report at 21.

*See* Exs. F-O.

*See id.* Plaintiff satisfies the requirements of Rule 23(a)(1).

### B.  Plaintiff and the Proposed Classes Satisfy the Commonality Requirement.

Rule 23(a)(2) requires class action plaintiffs to identify questions of law or fact common to the class. *See* Fed. R. Civ. P. 23(a)(2). "The threshold for commonality is not high[,]" *Cheney*, 213

F.R.D at 490, and the plaintiff's burden is "light." *Palm Beach Golf Ctr.-Boca, Inc. v. Sarris*, 311 F.R.D. 688, 695 (S.D. Fla. 2015). All class members need not have identical legal claims, *see Belin v. Health Ins. Innovations, Inc.*, 337 F.R.D. 544, 556 (S.D. Fla. 2021) (Singhal, J.), nor must all questions of law or fact be common. *See Klewinowski v. MFP, Inc.*, 2013 WL 5177865, at *2 (M.D. Fla. Sept. 12, 2013). "For purposes of Rule 23(a)(2) even a single common question will do," though the question must generate answers that resolve a central issue of each claim in "one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350, 359 (2011) (cleaned up).

"Commonality is generally satisfied when a plaintiff alleges that defendants have engaged in a standardized course of conduct that affects all class members." *Belin*, 337 F.R.D. at 557 (cleaned up). "[W]here a common scheme of conduct has been alleged, the commonality requirement should be satisfied." *In re Checking Overdraft Litig.*, 275 F.R.D. 666, 673-74 (S.D. Fla. 2011).

This litigation gives rise to clear and straightforward common questions because all class members' claims arise from a common scheme ████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████ *See* pp. 5-6, *supra*. ████████ ████████████████████████████████ *See* Ex. P; Ex. Q at ELAP0117574. ████████████████████████████████████████████ █████████████████████████████████████████ *See* Greenberg Dep. 58-60, 62:16-19, 83:11-15.████████████████████ ███████████████ *See* Abernathy Report at Opinion 1. ████████████████████████████████████████ ████████████████████████████ *See* O'Leary Dep. 174:2-7. ████████

████████████████████████████████████████████████████████
██████████████████████████ *See id.* at 76:15-21, 174-175, 177:22-178:2; Greenberg
Dep. 89:19-90:11; Ex. W.

Hospitals are not afforded the opportunity to persuade ELAP that they have been underpaid,
even though they are afforded first- and second-level appeals ████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
*See* O'Leary Dep. 223:4-224:8; Ex. Y. ██████████████████████████████
████████████████████████ *See* Ex. Y; O'Leary Dep. 202:1-206:7. ████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████ *See* O'Leary Dep.
204:12-205:6, 206:4-7. ████████████████████████████████████
██████████ *See id.* at 221:21-222:2; Ex. BB.

ELAP blocks any attempt by a hospital to recover from the plan member the difference
between the amount charged and the amount paid █████████████████████████████
████████████████████████████████████████████████████████
████████████ *see* Waters Dep. 142:6-16; O'Leary Dep. 269:5-12—████████████
████████████████████████ *See* Exs. U, CC, DD; Ex. CC; Ex. DD. ████████
████████████████████████████████████████████████████████
████████████ *See* Exs. EE, FF ███████████████████████████████
████████████████████████████████████████████████████████
████████████ *See* Waters Dep. 180:17-183:11. █████████████████████

█████████████████████████████████ *See* Greenberg Dep. 89:24-90:8.

When plan members appear at hospitals for emergency treatment, the hospitals do not process their insurance information prior to treatment. *See* 42 U.S.C.A. § 1395dd. As a result, in an emergency setting, hospitals lack any opportunity to check coverage, pricing, or any other plan information. *See id.* ██████████████████████████████████████████

███████████████████████████████████████████████ *See* Ex. II; Am. Compl. ¶ 96 █████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

█████████████████████████ *See* Exs. GG-II, YY. ██████████████████████

███████████████████████████████████████████████

████████████████████████████████████████ *ee* Ex. C; Exs. JJ, KK; O'Leary Dep. 131:9-19.

███████████████████████████████████████████████

█████████████████████ *See* Leh Dep. 22:7-23:21; Ex. X. ███████████

███████████████████████████████████████████████

███████████████████████ *See* Ex. RR at GPA0132520-24. █████████

█████████████████████████ *See* Leh Dep. 19:10-21.

Common questions arise from Memorial's claims challenging Defendants' uniform scheme, including whether Defendants' practices around RBP are objectively unfair or deceptive; whether the same practices were likely to deceive a reasonable hospital; whether these practices injured Memorial and similarly situated hospitals; and whether Defendants were unjustly enriched by their policies and practices. *See* Am. Compl. ¶ 156. These questions are capable of resolution in "one

stroke," *Dukes*, 564 U.S. at 350; the jury will answer them with a simple "yes" or "no" as for all class members. Memorial has satisfied Rule 23(a)(2)'s commonality requirement.

### C. Memorial's Claims Are Typical of Those of the Class.

The central inquiry for typicality is whether the class representative has "the same interest and the same injury as the class members." *Holzman v. Malcolm S. Gerald & Assocs., Inc.*, 334 F.R.D. 326, 331 (S.D. Fla. 2020). Typicality is satisfied where, as here, the plaintiff's claims "stem from the same event, practice, or course of conduct that forms the basis of the class claims and are based upon the same legal or remedial theory." *Walco*, 168 F.R.D. at 326; *see, e.g., Belin*, 337 F.R.D. at 557 (typicality satisfied where plaintiffs established that their claims "ar[o]se 'squarely' from the same pattern or practice and rest[ed] upon the same legal theory.").

Memorial and the class seek redress through common claims for violations of FDUTPA and unjust enrichment. *See* Am. Compl. ¶¶ 165-92. These claims arise from Defendants' common scheme to underpay hospitals accessed by ELAP's members. Thus, Memorial's claims and those belonging to the putative class arise from the same course of conduct and are based on the same legal theories, thereby satisfying Rule 23(a)(3). *See, e.g., James D. Hinson Elec. Contracting Co. v. BellSouth Telecomms., Inc.*, 275 F.R.D. 638, 643 (M.D. Fla. 2011) (plaintiffs satisfied typicality with claims arising from same practices and legal theories and were merely required to show that they "share the issues common to other class members").

### D. Memorial and Its Counsel Will Fairly and Adequately Represent the Class Interests.

To satisfy Rule 23(a)(4), the representative parties must "fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(a)(4). This requirement is satisfied when the class representatives have (1) no interests antagonistic to the rest of the class and (2) counsel who are "qualified, experienced, and generally able to conduct the proposed litigation." *Cheney,* 213 F.R.D.

at 495. "Adequate representation is presumed in the absence of contrary evidence." *In re 1 Glob. Cap. LLC*, 2020 WL 1486791, at *4 (Bankr. S.D. Fla. Mar. 23, 2020).

### 1. Memorial Does Not Have Interests Antagonistic to the Rest of the Class.

"Where the named plaintiffs in a class action are seeking the same type of relief for themselves as they seek for class members, the adequacy of representation requirement of Rule 23(a)(4) of the Federal Rules of Civil Procedure is satisfied." *Tefel v. Reno,* 972 F. Supp. 608, 617 (S.D. Fla. 1997). Memorial has no interests antagonistic to the rest of the class.  Memorial and all class members were underpaid because of Defendants' RBP scheme and subjected to the same unfair practices. *See* pp. 4-9, *supra*. Thus, the critical issues presented—Defendants' unfair application of RBP and ELAP's deception and failure to disclose critical, material facts as to how ELAP members' Claims would be paid—are common across the class. "If the Plaintiff[] succeed[s], the benefits will inure to all class members."  *Tefel*, 972 F. Supp. at 617.  Win or lose, Memorial's claims will turn on the same common proof as those of every other class member.

Memorial has actively participated in this litigation from the beginning. It has responded to all document requests and interrogatories, sat for multiple depositions—including four separate corporate representative depositions spanning thirty-six topics, as well as five individual Memorial employee depositions—and assisted its counsel's investigation of the facts underlying its claims. Memorial has suffered losses due to Defendants' RBP scheme and is prepared to fulfill its duties on behalf of the putative class. Memorial has satisfied the requirements of Rule 23(a)(4).

### 2. Memorial's Counsel Are Exceedingly Qualified and Capable.

The second prong of the adequate representation test is also satisfied. Memorial's counsel, the firms of Kozyak Tropin & Throckmorton LLP and Wolfe Pincavage LLP, together have extensive knowledge of and experience in complex class action litigation and cases involving

healthcare systems and consumer deception. *See* Exs. AAA, BBB (Firm Resumes).

The above-named firms are also well respected in the communities that they serve. "[T]he single most important factor considered by the courts in determining the quality of the representative's ability and willingness to advocate the cause of the class has been the caliber of the plaintiff's attorney." 1 Alba Conte & Herbert B. Newberg, NEWBERG ON CLASS ACTIONS § 3.24 at 3-133 n.353 (3d ed. 1992). Memorial's counsel has overseen litigation strategy, the briefing and argument of motions, and the vigorous pursuit of discovery.[10] The efforts of Memorial's counsel to date confirm that they are committed to the vigorous prosecution of this action and possess the skills necessary to represent the proposed classes.

## II.    MEMORIAL SATISFIES THE REQUIREMENTS OF RULE 23(b).

In addition to meeting the four requirements of Rule 23(a), a plaintiff seeking class certification must satisfy one of the subsections of Rule 23(b). *Cheney,* 213 F.R.D. at 489. Memorial seeks certification under Rules 23(b)(2) and 23(b)(3). Under Rule 23(b)(3), addressed in sections II.A and II.B below, certification is appropriate if (1) common questions of law or fact predominate over questions affecting only individual class members and (2) class treatment is superior to other methods of adjudication. To satisfy Rule 23(b)(2), addressed in Section II.C, Memorial must establish that the Defendants "ha[ve] acted or refused to act on grounds that apply generally to the class so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Memorial satisfies both subsections.

---

[10] This vigorous pursuit of discovery included motion practice across the country relating to subpoenas that Memorial served on several of ELAP's TPA partners. Specifically, Memorial was forced to litigate a motion to quash from each of these TPAs (represented by the same counsel, including ELAP's affiliate TPA) in five different district courts and subsequent appeals in three circuit courts of appeals. This Court rejected one of the TPA's attempts to stay proceedings transferred from the Eastern District of New York. *In re Subpoena of S. Broward Hosp. Dist.*, No. 21-mc-62550, 2022 WL 17583433 (S.D. Fla. Feb. 18, 2022). It took nearly a year of litigation to secure the TPAs' compliance with Memorial's subpoenas.

**A. Common Questions of Law and Fact Predominate Because Legal and Factual Questions Will Be Resolved with Proof Common to Memorial and the Classes.**

For common questions of law or fact to predominate over individualized questions, "the issues in the class action that are subject to generalized proof, and [are] thus applicable to the class as a whole, must predominate over those issues that are subject only to individualized proof." *In re Terazosin Hydrochloride Litig.,* 220 F.R.D. 672, 694 (S.D. Fla. 2004). "Common questions need only predominate; they need not be dispositive of the litigation." *Id.* "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Checking Overdraft Litig.,* 275 F.R.D. at 676. Indeed, "when one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to individual class members." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (cleaned up). This standard is "readily met" in consumer fraud cases. *Amchem*, 521 U.S. at 594.

Courts focus on liability in determining predominance. *Aranaz v. Catalyst Pharm. Partners Inc.*, 302 F.R.D. 657, 667 (S.D. Fla. 2014); *see Herrera v. JFK Med. Ctr. Ltd. P'ship*, 648 F. App'x 930, 936 (11th Cir. 2016) ("Typically, even if courts must confront some individualized damages issues, common issues predominate if liability can be determined on a class-wide basis."). "In order to determine whether common questions predominate, the court is called upon to examine the causes of action asserted in the complaint on behalf of the putative class." *Rutstein v. Avis Rent-A-Car Sys., Inc.*, 211 F.3d 1228, 1234 (11th Cir. 2000) (cleaned up).

Here, irrespective of any individual issues that may arise, the litigation will focus on Defendants' common course of conduct in underpaying hospitals based on RBP; systematically

17

denying all substantive hospital appeals; failing to disclose (and concealing) ELAP's involvement in its members' plans and the use of RBP to underpay Claims; discouraging ELAP plan members from paying their outstanding balances to hospitals; and threatening litigation against hospitals that sought to pursue payment of those balances. *See Checking Overdraft Litig.,* 275 F.R.D at 675-76. That is to say, the key issues at trial will be Defendants' uniform actions and playbook; whether Defendants' application of RBP was deceptive, arbitrary, and unjust; whether the class-member hospitals were, in fact, underpaid; whether Defendants' actions and omissions were objectively deceptive or unfair; and whether Defendants' practices injured Memorial and the class.

## **FDUTPA**

As to Memorial's and the Florida classes' FDUTPA claims, individual questions of reliance and causation will not arise because Florida courts apply an objective standard to deceptive acts under FDUTPA, asking whether a defendant's misrepresentations or omissions would deceive a reasonable consumer. *See, e.g., Marrache v. Bacardi U.S.A., Inc.*, 17 F.4th 1084, 1098 (11th Cir. 2021) ("An objective test is used to determine whether an act is deceptive under FDUTPA, and 'the plaintiff must show that 'the alleged practice was likely to deceive a consumer acting reasonably in the same circumstances.''") (quoting *Carriuolo*, 823 F.3d at 983-84). Florida courts also apply an objective standard to unfair practices, *Carriuolo*, 823 F.3d at 986-87, asking whether a defendant's practice "offends established public policy" and is "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Webber v. Bactes Imaging Sols., Inc.*, 295 So. 3d 841, 844 (Fla. 2d DCA 2020).[11] FDUTPA does not require individualized showings of

---

[11] Florida has a public policy of protecting and enforcing contractual rights. *See Fam. Heritage Life Ins. Co. of Am. v. Combined Ins. Co. of Am.*, 319 So. 3d 680, 685 (Fla. 3d DCA 2021). And under Florida law, hospitals have a contractual right to be compensated the reasonable value of their healthcare services. *See Baycare Health Sys., Inc. v. Med. Sav. Ins. Co.*, 2008 WL 792061, at *7–8 (M.D. Fla. Mar. 25, 2008).

reliance. *See, e.g.*, *State, Off. of Att'y Gen., Dep't of Legal Affs. v. Wyndham Int'l, Inc.*, 869 So. 2d 592, 598 (Fla. 1st DCA 2004) ("[U]nlike fraud, a party asserting a deceptive trade practice claim need not show actual reliance on the representation or omission at issue.").

For these reasons, it is immaterial whether Memorial or the putative class members had knowledge of Defendants' application of RBP. *See State Farm Mut. Auto. Ins. Co. v. Performance Orthapaedics & Neurosurgery, LLC*, 315 F. Supp. 3d 1291, 1309–10 (S.D. Fla. 2018) (rejecting defendants' argument that plaintiff's knowledge of their allegedly deceptive acts and unfair practices foreclosed its FDUTPA claim). Because Memorial's claims focus on a standardized course of conduct—and particularly because ELAP does not audit Claims on a case-by-case basis—the circumstances of individual plan members' Claims will not come into play. *See, e.g.*, *Williams v. Wells Fargo Bank, N.A.*, 280 F.R.D. 665, 672, 674 (S.D. Fla. 2012) (individual issues did not predominate where plaintiffs alleged common scheme and individual borrowers' circumstances did not affect legal analysis); *Veal v. Crown Auto Dealerships, Inc.*, 236 F.R.D. 572, 580-82 (M.D. Fla. 2006) (certifying unjust enrichment and FDUTPA class where plaintiffs alleged common scheme and course of conduct).

### **Unjust Enrichment**

Individual questions will not arise from certification of a Florida unjust enrichment claim because Memorial's allegations focus on Defendants' common scheme rather than individual transactions. *See, e.g., Bowe v. Pub. Storage*, 318 F.R.D. 160, 184 (S.D. Fla. 2015) (certifying class and observing that "[o]ther courts in this district commonly certify claims of unjust enrichment for class treatment in cases like this one where defendant acted in the same manner toward every class member") (citations omitted); *In re Checking Acct. Overdraft Litig.*, 286 F.R.D. 645, 656 (S.D. Fla. 2012) (predominance satisfied on unjust enrichment claim where plaintiffs showed that defendant's "course of conduct commonly, and adversely, affected the entire class");

*James D. Hinson Elec. Contr.*, 275 F.R.D. at 647 (individual questions did not predominate where defendant's "conduct was the same with regard to each class member in all relevant respects").

Class members' states of mind will not come into play because, as to the emergent class, hospitals had no opportunity to even *attempt* to discern whether members were insured, let alone whether ELAP would reprice their Claims. *See* pp. 5-6, *supra*. Thus, no class member could have known that emergent Claims would be subject to ELAP's RBP scheme. *See id.* ██████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████ *See* pp.

7-9, *supra*. In every case, Defendants' retention of the benefits conferred on them was unjust.

████████████████████████████████████████████

████████████████████████████████████████████

██████████ *See* Abernathy Report at Opinion #2 & App'x F. ████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████ *Id.* at Exhibit 4.

Regardless, "individual damage calculations generally do not defeat a finding that common issues predominate." *Brown v. Electrolux Home Prods., Inc.*, 817 F.3d 1225, 1239 (11th Cir. 2016). "[I]ndividualized damages calculations are insufficient to foreclose the possibility of class certification, especially when, as here, the central liability question is so clearly common to each class member." *Carriuolo*, 823 F.3d at 988.

Memorial has satisfied Rule 23(b)(3).

**B.  A Class Action Would Be Superior to the Adjudication of Individual Claims.**

Courts consider four factors to identify the superior method of adjudication: (1) the interest of individual class members in controlling the prosecution and defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against any members of the class; (3) the desirability of concentrating litigation of the claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action. "No single element is determinative, … and this is not meant to be an exhaustive list of the factors that the Court should consider." *Walco*, 168 F.R.D. at 337 (cleaned up).

### 1.  Individual class members' interest in separate actions and the extent and nature of litigation already commenced

With thousands of members comprising the nationwide issue class and more than two hundred class members in Florida, the adjudication of individual lawsuits in different fora would be less efficient than resolving all claims through a class action. *See, e.g.*, *Williams*, 280 F.R.D. at 675 ("[E]ven a large and complex class action lawsuit would be more manageable . . . than being inundated with thousands of individual lawsuits with overlapping factual allegations and all involving the same proof to establish an identical illicit scheme against the same Defendants.").

On the nature and status of litigation already commenced, this is the only class action lawsuit involving Defendants' RBP scheme. Individual actions against these Defendants have arisen, but none based on the same legal theories pursued here. *See, e.g.*, *IHC Health Servs. Inc. v. ELAP Servs., LLC*, 2018 WL 4688358 (D. Utah Sept. 28, 2018). Regardless, the presence of a "few other suits" will not defeat superiority. 2 NEWBERG § 4:70; *see CGC Holding Co., LLC v. Broad & Cassel*, 773 F.3d 1076, 1096 (10th Cir. 2014) ("[T]he mere existence of individual actions brought by putative class members does not necessarily defeat a claim for superiority.").

Litigating these claims individually would also maximize the risk of inconsistent outcomes.

*See, e.g., Soutter v. Equifax Info. Servs., LLC*, 307 F.R.D. 183, 218 (E.D. Va. 2015) (citing "risk generating inconsistent outcomes on the same essential facts"). A class action, by contrast, will resolve hospitals claims against ELAP and GPA efficiently and with one stroke.

### 2.   Difficulties likely to be encountered in the management of a class action

"[Manageability] concern[s] will rarely, if ever, be in [themselves] sufficient to prevent certification of a class." *Klay*, 382 F.3d at 1272; *see also* 2 NEWBERG § 4:72. "Courts are generally reluctant to deny class certification based on speculative problems with case management." *Managed Care Litig., 209 F.R.D. at 692. "[W]here a court has already made a finding that common issues predominate over individualized issues, we would be hard pressed to conclude that a class action is less manageable than individual actions." *Klay*, 382 F.3d at 1273; *see Sacred Heart Health Sys., Inc. v. Humana Mil. Healthcare Servs., Inc.*, 601 F.3d 1159, 1184 (11th Cir. 2010) ("[T]he predominance analysis has a 'tremendous impact on the superiority analysis . . . for the simple reason that, the more common issues predominate over individual issues, the more desirable a class action lawsuit will be as a vehicle for adjudicating the plaintiffs' claims.'").

Memorial does not anticipate any significant difficulty for the Court in managing this case as a class action. Memorial seeks to certify two Florida classes on its FDUTPA and unjust enrichment claims (emergent and non-emergent), obviating the need to undergo analysis of variances in state laws, and the alternative to class certification would likely result in a "multiplicity and scattering of suits with the inefficient administration of litigation which follows in its wake." *Green v. Wolf Corp.*, 406 F.2d 291, 301 (2d Cir. 1968).

Memorial also seeks certification of a nationwide issue class on whether Defendants have been unjustly enriched by their practices. As explained below, certification of an issue class would create efficiencies for the courts and the parties by narrowing further litigation of the class's unjust

enrichment claims to a single issue. *See* Section III, *infra*. Certification of an issue class would be superior to the individual litigation of all elements of thousands of individual plaintiffs' claims. *See, e.g.*, *Martin v. Behr Dayton Thermal Prod. LLC*, 896 F.3d 405, 416 (6th Cir. 2018) (certifying seven issues because "[e]ven if the class members brought suit individually, the seven certified issues would need to be addressed in each of their cases[,]" and "[r]esolving the issues in one fell swoop would conserve the resources of both the court and the parties [and] . . . will materially advance the litigation."). A class action is the far superior method of adjudication.

**C.  The Court Should Certify a Rule 23(b)(2) Class for Injunctive Relief.**

To certify a class for injunctive relief, a plaintiff must establish that the defendant "has acted or refused to act on grounds that apply generally to the class so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). The Court should certify a Florida class to enjoin Defendants from continuing to apply RBP to underpay hospitals accessed by ELAP plan members. FDUTPA authorizes any aggrieved party to pursue injunctive relief. *See* Fla. Stat. § 501.211(1).

Memorial asserts that Defendants continue to apply RBP uniformly and arbitrarily to underpay all hospitals serving ELAP plan members. Defendants execute their scheme by using deceptive identification cards and otherwise failing to disclose to hospitals that RBP would be applied to compensate them for their services. No putative class member is excepted from the scheme's reach. Accordingly, Memorial seeks certification of an injunctive class under Rule 23(b)(2) requiring Defendants to terminate its RBP scheme and begin compensating hospitals based on the reasonable value of the services provided.

23

III.    **THE COURT SHOULD CERTIFY A NATIONWIDE ISSUE CLASS ON MEMORIAL'S UNJUST ENRICHMENT CLAIM.**

Memorial further seeks certification of a nationwide issue class on the question of whether Defendants have unjustly retained benefits realized from its RBP scheme. Rule 23(c)(4) provides that "[w]hen appropriate, an action may be brought or maintained as a class action with respect to particular issues." "This provision allows a court to create subclasses and certify classes as to specific common issues and leave the remaining individual issues to be resolved in individual suits in other forums." *Begley v. Acad. Life Ins. Co.*, 200 F.R.D. 489, 497 (N.D. Ga. 2001). "[A] court may employ Rule 23(c)(4)(A) to certify a class on a particular issue even if the action as a whole does not satisfy Rule 23(b)(3)'s predominance requirement." *In re Nassau Cnty. Strip Search Cases*, 461 F.3d 219, 225 (2d Cir. 2006); *see also, e.g.*, *Weidman v. Ford Motor Co.*, 2022 WL 1071289, at *15 (E.D. Mich. Apr. 8, 2022) ("[A] majority of the courts of appeals have concluded that . . . Rule 23(c)(4) can be used even though full Rule 23(b)(3) certification is not possible due to the predominance infirmities.").

Certification of an issue class here would resolve the central question of Memorial's and the class's unjust enrichment claims—whether Defendants' profits arising from the subject business practices were, in fact, unjustly secured—while creating efficiencies for the judiciary and the parties alike. Certification of this issue would not entirely resolve Defendants' liability, but answering this question will materially advance litigation of Memorial's unjust enrichment claim. If the jury concludes that Defendants were not unjustly enriched, then Memorial's and the class's claims fail. If the jury finds that Defendants were unjustly enriched, then the scope of subsequent trials will be narrowed to a single issue—whether Memorial and the class-member hospitals

conferred a benefit, directly or indirectly, on Defendants.[12] *Cf. Weidman*, 2022 WL 1071289, at *15; *see also, e.g., Martin*, 896 F.3d at 416 (certifying issue classes because certification would conserve resources and expedite litigation); *In re Deepwater Horizon*, 739 F.3d 790, 817 (5th Cir. 2014) ("The phased trial of common issues in this case would undoubtedly prevent the repetitious re-litigation of these common issues by each individual claimant in thousands of separate lawsuits."); *Nassau Cnty. Strip Search Cases*, 461 F.3d at 225 (district court erred in failing to certify liability class because, *inter alia*, certification was the "most fair and efficient method of resolving th[e] case") (cleaned up). Class members could then, if they chose, pursue litigation on this issue individually or on behalf of statewide classes, minimizing the risk of contradictory rulings in the issue of unjust enrichment and conserving judicial and the parties' resources. *See, e.g.*, *Navelski v. Int'l Paper Co.*, 244 F. Supp. 3d 1275, 1310 (N.D. Fla. 2017) (certifying issue class because "if liability claims proceed[ed] separately, there [would be] a very real risk of inconsistent adjudications holding Defendant to varying standards of conduct with respect to the same common nucleus of operative facts . . . .. [R]epeated litigation of the same core liability issues would be grossly inefficient and wasteful of the resources of the parties and the judiciary.").

## <u>CONCLUSION</u>

The Court should enter an order certifying the classes defined by Memorial pursuant to Rule 23(a), (b)(2), (b)(3), and (c)(4), and designating Memorial as class representative and Benjamin Widlanski of Kozyak Tropin & Throckmorton LLP and Danya Pincavage of Wolfe Pincavage LLP as class counsel.

Respectfully submitted:  January 13, 2023

---

[12] As explained above, Memorial's damages expert has already calculated each class member's damages. *See* p. 2, *supra.*

| | |
|---|---|
| /s/*Benjamin J. Widlanski*<br>**Benjamin J. Widlanski., Esq.**<br>bwidlanski@kttlaw.com<br>Fla. Bar No. 1010644<br>**Gail McQuilkin, Esq.**<br>gam@kttlaw.com<br>Fla. Bar No. 969338<br>**Tal J. Lifshitz, Esq.**<br>tjl@kttlaw.com<br>Fla. Bar No. 99519<br>**Michael Lorigas, Esq.**<br>mlorigas@kttlaw.com<br>Fla. Bar No. 123597<br><br>**KOZYAK TROPIN &**<br>**THROCKMORTON LLP**<br>2525 Ponce de Leon Blvd., 9th Floor<br>Coral Gables, Florida 33134<br>Telephone: (305) 372-1800<br><br>*Counsel for Plaintiff* | /s/ *Douglas A. Wolfe*<br>**Douglas A. Wolfe, Esq.**<br>doug@wolfepincavage.com<br>Fla. Bar No. 28671<br>**Danya J. Pincavage, Esq.**<br>danya@wolfepincavage.com<br>Fla. Bar No. 14616<br>**Hana A. Aryan, Esq.**<br>Hana.aryan@wolfepincavage.com<br>Fla. Bar No. 1003617<br><br>**WOLFE | PINCAVAGE**<br>7800 SW 57th Avenue, Suite 217<br>Miami, Florida 33143<br>Telephone: (786) 409-0800<br><br>*Counsel for Plaintiff* |