**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 0:20-cv-61007-SINGHAL/VALLE**

SOUTH BROWARD HOSPITAL DISTRICT d/b/a
MEMORIAL HEALTHCARE SYSTEM, on behalf of
itself and all others similarly situated,

      Plaintiff,

v.

ELAP SERVICES, LLC, a Pennsylvania limited
liability company, and GROUP & PENSION
ADMINISTRATORS, INC., a Texas corporation,

      Defendants.

_____/

**PLAINTIFF'S *DAUBERT* MOTION TO EXCLUDE THE OPINIONS**
**OF DEFENDANTS' REBUTTAL EXPERT, BRUCE A. STROMBOM**

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................................ iii

INTRODUCTION ............................................................................................................... 1

LEGAL STANDARD.......................................................................................................... 3

ARGUMENT ....................................................................................................................... 4

   I.   THE COURT SHOULD EXCLUDE STROMBOM'S OPINIONS RELATING TO HOSPITALS' KNOWLEDGE AND STATE OF MIND. ........................................................ 4

     A.   Strombom Is Not Qualified to Opine on Hospitals' Knowledge or State of Mind. ......... 5

     B.   Strombom's Opinions Are Not Based on a Reliable Methodology. ............................... 7

     C.   Strombom's Factual Narratives Relating to Knowledge and State of Mind Are Irrelevant and Offer Nothing More Than What Defendants' Lawyers Can Argue. ............ 12

   II.   THE COURT SHOULD EXCLUDE STROMBOM'S OPINION THAT ABERNATHY'S DAMAGES METHODOLOGY IS UNRELIABLE. ............................................................... 16

   III.  THE COURT SHOULD STRIKE STROMBOM'S OPINION THAT MEMORIAL HAS NOT PROPOSED AN UNJUST ENRICHMENT DAMAGES METHODOLOGY BECAUSE IT IS UNRELIABLE AND IRRELEVANT. ........................................................................ 18

CONCLUSION.................................................................................................................... 20

## **TABLE OF AUTHORITIES**

### **Cases**

*Bailey v. St. Louis*,
    268 So. 3d 197 (Fla. 2d DCA 2018) ........................................................ 20

*Boca Raton Cmty. Hosp., Inc. v. Tenet Health Care Corp.*,
    582 F.3d 1227 (11th Cir. 2009) ............................................................ 12

*Carriuolo v. Gen. Motors Co.*,
    823 F.3d 977 (11th Cir. 2016) .............................................................. 13

*Companhia Energetica Potiguar v. Caterpillar Inc.*,
    2016 WL 7507848 (S.D. Fla. Aug. 1, 2016) .......................................... 7, 8, 12, 13

*Daubert v. Merrell Dow Pharm., Inc.*,
    509 U.S.  (1993) ................................................................................... 3

*F.T.C. v. Washington Data Res., Inc.*,
    704 F.3d 1323 (11th Cir. 2013) ............................................................ 20

*Guantanamera Cigars Co. v. SMCI Holding, Inc.*,
    2022 WL 1160409 (S.D. Fla. Apr. 20, 2022) ........................................ 7

*Guillory v. Domtar Indus. Inc.*,
    95 F.3d 1320 (5th Cir. 1996) ............................................................... 8

*Hibiscus Assocs. Ltd. v. Bd. of Trs. of Policemen & Firemen Ret. Sys.*,
    50 F.3d 908 (11th Cir. 1995) ............................................................... 12

In *In re FCA US LLC Monostable ElectronicGearshift Litigation*,
    382 F. Supp. 3d 687 (E.D. Mich. 2019) ............................................... 6, 7

*In re Mushroom Direct Purchaser Antitrust Litig.*,
    2015 WL 5767415 (E.D. Penn. July 29, 2015) ..................................... 6

*Jordan v. Celebrity Cruises, Inc.*,
    2018 WL 3584702 (S.D. Fla. July 25, 2018) ........................................ 8

*Kane v. Stewart Tilghman Fox & Bianchi, P.A.*,
    85 So. 3d 1112 (Fla. 4th DCA 2012) ................................................... 20

*Kumho Tire Co., Ltd. v. Carmichael*,
    526 U.S. 137 (1999) ............................................................................. 3

*La Gorce Palace Condo. Ass'n, Inc. v. Blackboard Specialty Ins. Co.*,
    586 F. Supp. 3d 1300 (S.D. Fla. 2022) ................................................ 7

*Lebron v. Sec'y, Fla. Dep't of Children & Families*,
  772 F.3d 1352 (11th Cir. 2014) ................................................................. 6

*Legg v. Voice Media Grp., Inc.*,
  2014 WL 1767097 (S.D. Fla. May 2, 2014) .......................................... 9, 15

*MDG Int'l, Inc. v. Australian Gold, Inc.*,
  2009 WL 1916728 (S.D. Ind. June 29, 2009) ......................................... 19

*Point Blank Enters., Inc.*,
  2020 WL 1666763 (S.D. Fla. Apr. 3, 2020) .............................. 1, 13, 14

*Rink v. Cheminova, Inc.*,
  400 F.3d 1286 (11th Cir. 2005) ............................................................. 3, 4

*Scott v. Chipotle Mexican Grill, Inc.*,
  315 F.R.D. 33 (S.D.N.Y. 2016) ................................................................. 5

*Sher v. Raytheon Co.*,
  419 F. App'x 887 (11th Cir. 2011) ........................................................... 4

*U.S. v. Stinson*,
  729 F. App'x 891 (11th Cir. 2018) ........................................................ 19

*U.S. v. Thaller*,
  2016 WL 6441548 (S.D. Fla. Nov. 1, 2016)............................................. 9

*United States v. Frazier*,
  387 F.3d 1244 (11th Cir. 2004) ........................................... 3, 4, 7, 12

*United States v. Rouco*,
  765 F.2d 983 (11th Cir. 1985) .............................................................. 12

*Webb v. Carnival Corp.*,
  321 F.R.D. 420 (S.D. Fla. 2017) .............................................................. 6

*Williams v. Wells Fargo Bank, N.A.*,
  280 F.R.D. 665 (S.D. Fla. 2012)............................................................. 13

*Wreal, LLC v. Amazon.com, Inc.*,
  2016 WL 8793317 (S.D. Fla. Jan. 7, 2016) ........................................ 6, 18

*Wright v. Farouk Sys., Inc.*,
  701 F.3d 907 (11th Cir. 2012) .............................................................. 15

## **Regulations**

29 C.F.R. § 2590.715-2719A................................................................... 16

iv

## **Other Authorities**

RESTATEMENT (THIRD) OF RESTITUTION & UNJUST ENRICHMENT § 51 (2011) ...................... 19, 20

## INTRODUCTION

Bruce A. Strombom is a career defense expert. Although Strombom is an economist by education and training, his work focuses on attacking plaintiffs' efforts to obtain class certification, and he has never offered an opinion in support of class certification. Even worse, Strombom routinely serves as a mere mouthpiece to bolster defendants' theory of the case. In fact, Judge Ruiz recently chastised Strombom for doing just that—he excluded Strombom's opinions in a product defect case for including "argumentative statements" that "improperly and unnecessarily attempt[ed] to bolster the testimony of [the defendant's] employee and Defendant's version of the case." *Ohio State Troopers Ass'n, Inc. v. Point Blank Enters., Inc.*, 2020 WL 1666763, at *15 (S.D. Fla. Apr. 3, 2020). This case is no different.

Defendants retained Strombom to rebut the opinions of Memorial's expert, J. Mark Abernathy. Abernathy, a forensic accountant with more than forty years of professional experience in the healthcare industry, has not only devised a uniform methodology to assess damages across the class, but also calculated the damages owed to each individual class member. Like ELAP's arbitrary formulae, Abernathy's fair-market formulae apply uniformly across the class; but unlike ELAP, Abernathy ███████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ███████████████████████████████████████

Defendants rely on Strombom to offer four opinions against class certification. He asserts that: (1) ███████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ █████████████████████████████████████ (2) ████████████████████████████████ ████████████████████████████████████████ (3) ████████████████████ ████████████████████████████████████████████████ and (4) ████████████████

1

███████████████████████████████████████████. None of Strombom's opinions are admissible under *Daubert* and its progeny.

Strombom's first and fourth opinions fail all three pillars of *Daubert*: qualification, reliability, and helpfulness. First, Strombom is not qualified to opine on hospitals' knowledge or state of mind. Strombom has no practical industry experience that would provide him with the necessary qualifications to predict the behavior and perception of hospitals. Next, Strombom's opinions are unreliable because they are speculative and lack any foundation in the evidentiary record. Strombom had no choice but to speculate—as Strombom admitted in his deposition, ██

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████ Finally, Strombom's opinions are not helpful. As Memorial established in its class certification and summary judgment filings,[1] hospitals' knowledge and state of mind are irrelevant to the class claims. In any event, Strombom merely parrots arguments that were fed to him by Defendants' lawyers without applying anything approaching true expert analysis.

Strombom's opinions attacking the reliability of Abernathy's damages methodology are also inadmissible. Defendants gave Strombom the impossible task of proffering an opinion that individualized inquiry is necessary to determine the rate at which hospitals should be reimbursed for their services even though Defendants' business model relies on a standardized reimbursement methodology that is applied uniformly to all claims regardless of the hospital or service rendered.

---

[1] *See* D.E. 141 (Memorial's Motion for Class Certification); D.E. 155 (Memorial's Response in Opposition to Defendants' Motion for Summary Judgment); D.E. 156 (Memorial's Response to Defendants' Statement of Material Facts); D.E. 168 (Memorial's Reply in Support of Motion for Class Certification).

Strombom's opinions also fall flat because he criticizes Abernathy for employing the same techniques that Strombom has relied on in prior assignments. Beyond that, Strombom's criticisms about what Abernathy did not consider are simply wrong. As just one example, ███████████ ████████████████████████████████████████████████████████████ ████████████████████████████

Finally, Strombom's unjust enrichment opinion is factually and legally irrelevant. Abernathy was not tasked with developing a classwide methodology for determining ELAP's *profits* at the hospital or claim level—Abernathy instead identified the *fees* that ELAP collected for each at-issue claim. Strombom is thus not rebutting any opinion offered by Abernathy. Moreover, the unjust enrichment opinion is unreliable because Strombom did not verify any of the underlying facts upon which it is based. Regardless, the law requires Memorial to show only a reasonable approximation of the amount by which Defendants were unjustly enriched and any uncertainty in calculating net profits is resolved against Defendants.

For these reasons, as further detailed below, the Court should grant Memorial's motion to exclude Strombom's opinions.

## LEGAL STANDARD

"[T]he Federal Rules of Evidence 'assign to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999) (quoting *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 759, 597 (1993)). "The importance of *Daubert*'s gatekeeping requirement cannot be overstated." *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004). "District courts are charged with this gatekeeping function 'to ensure that speculative, unreliable expert testimony does not reach the jury' under the mantle of reliability that accompanies the appellation 'expert testimony.'" *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291 (11th Cir. 2005).

Courts in the Eleventh Circuit follow a three-part test in determining the admissibility of expert testimony under *Daubert*, asking whether: (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the expert's testimony would assist the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue. *Frazier*, 387 F.3d at 1260.

"The party offering the expert has the burden of satisfying each of [*Daubert*'s] three elements by a preponderance of the evidence." *Rink*, 400 F.3d at 1292 (citation omitted). The *Daubert* analysis must be resolved prior to ruling on a motion for class certification where, like here, the information provided by an expert is relevant to establishing any of the Rule 23 requirements. *See Sher v. Raytheon Co.*, 419 F. App'x 887, 890-91 (11th Cir. 2011).

## ARGUMENT

### I.     THE COURT SHOULD EXCLUDE STROMBOM'S OPINIONS RELATING TO HOSPITALS' KNOWLEDGE AND STATE OF MIND.



Strombom opines that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See* Rebuttal Expert Report of Bruce A. Strombom, Ph.D. ("Strombom Report") (Ex. B), §§ III & VI.[2] Specifically, Strombom opines on (1) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (2) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮ and (3) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *See id.*

On hospitals' knowledge, Strombom describes the sources from which hospitals could have learned about ELAP's reference-based pricing methodology and summarizes data on the

---

[2] An exhibit index is attached as **Exhibit A**.

number of certain hospitals' claims that were repriced by ELAP. *See id*. at §§ III.A & B. From there, Strombom draws inferences about what hospitals likely knew, *see id*., and later concludes that ████████████████████████████████████████████████████████████ ████████████████████████████████████████, *see id*. at § VI.A.

Strombom's other opinions on hospitals' state of mind follow a similar process. With respect to acceptance, Strombom identifies the methods by which a hospital could have disputed or objected to the amounts by which ELAP repriced their claims and summarizes data from Defendants on claims with disputes. *See id*. Strombom then concludes without basis that ████ ████████████████████████████████████████████████████████████ ████████████████. *See id*. As for how hospitals value their services, Strombom relies on ████ ████████████████████████████████████████████████████████████ ██████████████████████████████████. *See id*. at § VI.C.

The Court should exclude each of these opinions because Strombom is not qualified to opine on hospitals' knowledge or state of mind, his opinions are not the product of reliable principles and methods, and he offers nothing more than what Defendants' lawyers can argue.

### A. Strombom Is Not Qualified to Opine on Hospitals' Knowledge or State of Mind.

Absent a sufficient basis "in any relevant body of knowledge or expertise," an expert "may not testify on the intent, motives or states of mind of corporations, regulatory agencies and others[.]" *Scott v. Chipotle Mexican Grill, Inc.*, 315 F.R.D. 33, 45–46 (S.D.N.Y. 2016) (As a general rule, 'inferences about the intent or motive of parties or others lie outside of the bounds of expert testimony.'"). Strombom lacks any relevant knowledge or expertise to render opinions on hospitals' knowledge or state of mind.

"Determining whether a witness is qualified to testify as an expert requires the trial court

to examine the credentials of the proposed expert in light of the subject matter of the proposed testimony." *Webb v. Carnival Corp.*, 321 F.R.D. 420, 427 (S.D. Fla. 2017). "In other words, a district court must consider whether an expert is qualified to testify competently regarding the matters he intends to address." *Id*. Critically, "expertise in one field does not qualify a witness to testify about others." *Wreal, LLC v. Amazon.com, Inc.*, 2016 WL 8793317 at *9 (S.D. Fla. Jan. 7, 2016) (quoting *Lebron v. Sec'y, Fla. Dep't of Children & Families*, 772 F.3d 1352, 1369 (11th Cir. 2014)); *see also In re Mushroom Direct Purchaser Antitrust Litig.*, 2015 WL 5767415 at *4 (E.D. Penn. July 29, 2015) ("[A] respected economist with no background in antitrust markets could be unqualified to testify regarding the relevant market in an antitrust case.").

While Strombom may be a well-credentialed economist by education and training, he is not qualified to opine on issues relating to hospitals' knowledge of Defendants' reference-based pricing scheme, hospitals' acceptance of the amounts by which ELAP repriced their claims, or what constitutes a "reasonable value" for hospitals services. Strombom has no relevant education or training in healthcare admission or reimbursement practices. *See* Strombom Rep., App'x A. Nor does Strombom have practical experience in the healthcare industry. His only remotely related professional experience was a job working in the kitchen of a hospital during college. *See* Strombom Dep. (Ex. C) 44:7-46:16. And Strombom has authored no publications that are relevant to hospital admission or reimbursement practices.[3] *See* Strombom Rep., App'x A.

---

[3] Notably, another court excluded Strombom's opinions because they were based on matters outside the scope of his qualifications and expertise. In *In re FCA US LLC Monostable Electronic Gearshift Litigation*, a class action concerning a motor vehicle defect, the defendant retained Strombom, in part, to critique the plaintiffs' expert's class-wide damages methodology, which relied on a conjoint analysis. 382 F. Supp. 3d 687, 693 (E.D. Mich. 2019). Strombom opined that the plaintiffs' proposed class-wide damages model relied on "incorrect assumptions" because, based on his review of deposition testimony of the named plaintiffs, some class members had knowledge of the alleged defect and valued other aspects of vehicles more or less than safety features when making a purchasing decision. *Id*. Because Strombom is not an expert in conjoint

Accordingly, the Court should exclude Strombom's opinions relating to hospitals' states of mind or industry norms or practices. Specifically, the Court should strike paragraphs 9(i), 9(iv), 41-65, 129-135, and 138-139 of the Strombom Report and preclude Strombom from offering any testimony on these issues.

**B.  Strombom's Opinions Are Not Based on a Reliable Methodology.**

Even if Strombom were minimally qualified, "the unremarkable observation that an expert may be qualified by experience does not mean that experience, standing alone, is a sufficient foundation rendering reliable any conceivable opinion the expert may express." *Frazier*, 387 F.3d at 1261. "[A] witness relying solely or primarily on experience must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts. The trial court's gatekeeping function requires more than simply taking the expert's word for it." *La Gorce Palace Condo. Ass'n, Inc. v. Blackboard Specialty Ins. Co.*, 586 F. Supp. 3d 1300, 1309 (S.D. Fla. 2022) (cleaned up).

"In order to be admissible, an expert's testimony must be based on more than subjective belief or unsupported speculation." *Guantanamera Cigars Co. v. SMCI Holding, Inc.*, 2022 WL 1160409, at *3 (S.D. Fla. Apr. 20, 2022). "Rule 703 further ensures reliability by requiring that proffered experts base opinions on the types of information reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject." *Companhia Energetica Potiguar v. Caterpillar Inc.*, 2016 WL 7507848, at *3 (S.D. Fla. Aug. 1, 2016). Courts "may exclude expert testimony where there is simply too great an analytical gap between the data and the opinion proffered, or where the testimony's factual basis is not adequately explained in the first instance." *La Gorce Palace Condo. Ass'n*, 586 F. Supp. 3d at 1310. Moreover, "'expert

---

analysis and had never conducted one, the court excluded his opinions. *Id*. at 694.

evidence based on a fictitious set of facts is just as unreliable as evidence based on no research at all.'" *Jordan v. Celebrity Cruises, Inc.*, 2018 WL 3584702, at *8 (S.D. Fla. July 25, 2018) (quoting *Guillory v. Domtar Indus. Inc.*, 95 F.3d 1320, 1331 (5th Cir. 1996)). Similarly, an expert's failure "to consider contradictory evidence warrants exclusion." *Companhia Energetica Potiguar*, 2016 WL 7507848, at *12.

Strombom's opinions relating to hospitals' knowledge of Defendants' reference-based pricing scheme, hospitals' acceptance of the amounts by which ELAP repriced their claims, or the reasonable value hospitals assign to the payment for their services are unreliable for several reasons. First, Strombom's opinions on hospitals' knowledge and state of mind are red herrings. Hospitals' knowledge and state of mind are irrelevant because the class claims are subject to objective legal standards, *see* p. 13, *infra*, and (2) in any event, the evidence shows that hospitals



*see* pp. 10-11, *infra*. But even were that not the case, Strombom's opinions are unsupported speculation. Each of his conclusions is

*See* Strombom Rep., ¶¶ 42, 45-46, 48-55, 57-59, 65, 106, 108-109, 129-32, 135, 138. For example, Strombom

*Id*. at ¶ 48.

*Id*. at ¶ 49. But Strombom does not cite any authority indicating that *Kaiser Health News* is a reliable source of information relied on by hospitals. Nor did Strombom

conduct any surveys of hospitals to determine whether *Kaiser Health News* is an authoritative source of information. In fact, Strombom conducted no ████████████████████ ████████████████████ *See* Strombom Dep. 42:10-44:6. And, as noted above, Strombom has no relevant practical industry experience. *See U.S. v. Thaller*, 2016 WL 6441548, at *13 (S.D. Fla. Nov. 1, 2016) (excluding expert's opinion that defendant did not adequately educate, train, or supervise medical residents because expert never worked in defendant's department and was not aware of relevant industry standards).

Similarly, Strombom's opinion that ████████████████████ ████████████████████ *see* Strombom Report § III.C, is pure speculation. Strombom does not direct the Court to any industry standards on reimbursement disputes or describe any economic factors that would lend credence to his ultimate conclusion. Strombom does not even consider other reasons why hospitals may have not disputed a claim, including ████████████████████ ████████████████████ *See* Waters Dep. (Ex. D) 180:17-183:11. Strombom thus speculates about hospitals' reimbursement decisions without considering economic realities. In *Legg v. Voice Media Grp., Inc.*, the court excluded an expert's opinion that cell phone subscribers must have sent more than one "STOP ALL" message to the defendant because they had continued to receive unwanted text messages because this conclusion was "based not on any data, but on [the expert's] speculation." 2014 WL 1767097, at *3 (S.D. Fla. May 2, 2014). The same reasoning applies here.

Second, Strombom's conclusions are not based on independent analysis or objective proof. For example, he opines that ████████████████████ ████████████████████



███████████████████████  *See* Strombom Rep., ¶¶ 45-46. But the Strombom Report notes that ██████

██████████████████████████████████████████████████████████████

███████████████████████  *Id.* at ¶ 46. ████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████  *See* Strombom Dep. 42:10-18.

The same is true with respect to Strombom's other opinions. He did not ask Defendants for ████████████████████████████████████████  Strombom Dep. 40:20-23. Strombom attempts to opine on the knowledge and state of mind of hospitals, even though he ██████████████ ████████████████████████████████████████  *Id.* at 166:12-168:24. Strombom did not independently gather any research—neither his report nor his deposition testimony references a single study, article, or authority—on industry standards relating to interactions between hospitals and payors or entities that reprice out-of-network claims. Nor did Strombom ███████████████████████████████████████████████████████ *Id.* at 42:10-44:6. Strombom just accepted the "facts" as presented to him by Defendants' lawyers.

Finally, the Strombom Report fails to consider contradictory evidence. On hospitals' knowledge of ELAP's reference-based pricing formula, Strombom failed to consider, *inter alia*: (1) ██████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████  Ex. E at ELAP0136928;[4] (2) testimony from ELAP's corporate

---

[4] The third-party consultant's report also ████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████  x. E at ELAP0136994 (emphases in original).

representative and other internal communications reflecting that ██████████████████████ ███████████████████████████████████████████████████████ ██████████████████████ *see* O'Leary Dep. (Ex. F) 131:9-19; Exs. G-K; and (3) evidence demonstrating that, ███████████████████████████ ███████████████████████████████████████████ *See* Ex. L at ELAP0113802 ████████ █████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ██████████████████████████; Ex. M at ELAP0119214 (same). *See* Strombom Dep. 176:9-21; 195:2-197:21; *see also* Strombom Rep., App'x B.

Strombom also failed to consider critical testimony from Memorial's representatives, including testimony that: (1) ████████████████████████████████ ████████ *see* Bross Dep. (Ex. N) 43:13-44:3-6 ██████████████████████ █████████████████████████████; 167:16-22 ████████████████████ ██████████████████████████████████████████████████████████ ████████; (2) ████████████████████████████████████ ██████████████████████████████████████████████████████████ ███████████████████████████████████ Doyle Dep. (Ex. O) 50:5-13; and (3) █████████████████████████████████ *see* Holmes Dep. (Ex. P) 42:7-16; Santilus Dep. (Ex. Q) 85:23-25; Fajardo Dep. (Ex. R) 19:10-17; DeStefano Dep. (Ex. S) 35:21-22; Scozzaro Dep. (Ex. T) 25:1-17. Despite basing all his opinions relating to hospitals' knowledge and state of mind on the interactions between Memorial and Defendants, Strombom ████████ ██████████████████████████████████████████████████████████ ████████████████████████████ Strombom Dep. 208:9-212:23.

Strombom's opinions on hospitals' knowledge and state of mind accordingly should be excluded for failure to consider contradictory evidence. *See Companhia Energetica Potiguar*, 2016 WL 7507848, at *12 (finding defense expert's opinion that the plaintiff had inadequate operation and maintenance practices was unreliable where the expert ignored contradictory deposition testimony and internal communications in the record).

Based on the foregoing, the Court should exclude as unreliable Strombom's opinions relating to hospitals' knowledge of Defendants' reference-based pricing scheme, hospitals' acceptance of the amounts by which ELAP repriced their claims, and the reasonable value hospitals assign to the payment for their services. Specifically, the Court should strike sections III and VI of the Strombom Report and bar Strombom from offering any testimony on these issues.

### C. Strombom's Factual Narratives Relating to Knowledge and State of Mind Are Irrelevant and Offer Nothing More Than What Defendants' Lawyers Can Argue.

With regard to the third *Daubert* factor, "expert testimony is admissible if it concerns matters that are beyond the understanding of the average lay person." *Frazier,* 387 F.3d at 1244 (citing *United States v. Rouco,* 765 F.2d 983, 995 (11th Cir. 1985)). "The party offering the expert testimony has the burden of demonstrating that the testimony is relevant to the task at hand and logically advances a material aspect of its case." *Boca Raton Cmty. Hosp., Inc. v. Tenet Health Care Corp.*, 582 F.3d 1227, 1232 (11th Cir. 2009). Expert testimony "is properly excluded when it is not needed to clarify facts and issues of common understanding which jurors are able to comprehend for themselves." *Hibiscus Assocs. Ltd. v. Bd. of Trs. of Policemen & Firemen Ret. Sys.,* 50 F.3d 908, 917 (11th Cir. 1995) (citations omitted).

"Proffered expert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments." *Frazier,* 387 F.3d at 1262–63. "Simply rehashing evidence about which an expert has no personal knowledge is

impermissible under Rule 702." *Ohio State Troopers Ass'n*, 2020 WL 1666763, at *15 ("Experts that do nothing more than act as narrators of facts fail to convey opinions based on their knowledge and expertise.") (cleaned up). Thus, "[i]t is appropriate to strike testimony that merely relays observations rather than performing true expert analysis." *Companhia Energetica Potiguar*, 2016 WL 7507848, at *8.

Strombom's opinions on hospitals' knowledge and state of mind are not helpful because they are irrelevant legal argument disguised as expert testimony. On relevance, as Memorial established in its class certification and summary judgment filings, the FDUTPA and unjust enrichment claims here are evaluated under objective standards. "[A] plaintiff asserting a FDUTPA claim need not show actual reliance on the representation or omission at issue" and, as a result, "the mental state of each class member is irrelevant." *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 985 (11th Cir. 2016). Nor does class members' awareness of a scheme necessitate individualized inquiry on an unjust enrichment claim. *See, e.g.*, *Williams v. Wells Fargo Bank, N.A.*, 280 F.R.D. 665, 674 (S.D. Fla. 2012) ("[I]t is not relevant whether a particular class member was aware that force-placed insurance is generally more expensive because the claim in this case is not just that [it] was more expensive, but that [it] was artificially and unjustly more expensive due to [Defendants'] illicit actions."). Strombom's opinions are therefore irrelevant.

Strombom's opinions also simply narrate Defendants' version of the case. Judge Ruiz recently admonished Strombom for submitting an expert report opposing class certification that included "improper factual narrative" and "cherry pick[ed] testimony . . . that [wa]s consistent with Defendant's theory of the case." *Ohio State Troopers*, 2020 WL 1666763 at *15-16. Judge Ruiz chastised Strombom for stating that "certain evidence was consistent with the testimony of one of Defendant's employees," relating to the return rates of defective products. *Id*. at *16. "The

13

inclusion of such argumentative statements in Strombom's report improperly and unnecessarily attempt[ed] to bolster the testimony of the employee and Defendant's version of the case." *Id.* Judge Ruiz thus prohibited Strombom from offering "testimony containing similar factual narrative" at any class certification hearing. *Id.*

Strombom's opinions relating to hospitals' knowledge of Defendants' scheme, hospitals' acceptance of discounted amounts, and the reasonable value hospitals assign to the charges for their services are such improper factual narratives. They offer nothing more than what Defendants' lawyers can argue at any class certification hearing or to the jury. For each of these opinions, Strombom merely draws apparent inferences from record evidence without the benefit of specialized knowledge or expertise.

With respect to his opinion that ███████████████████████████ ████████████████████████████████████████████ ████████████████████████████ Strombom Rep., ¶¶ 41-65. Strombom conceded that ████████████████████████████████████ ████████████████████████████████████████████ ████████████████ Strombom Dep. 161:8-163:1. Neither the Strombom Report nor his testimony involve any economic analysis supporting this opinion. Strombom even admitted that ████████████████████████████████████████ *Id*. at 174:5-20.

In support of his opinion that ████████████████████████ ████████████████████████ Strombom similarly narrates facts that bolster Defendants' theory of the case without applying any economic analysis. Strombom recites ██ ████████████████████████████████████████████ ████████████████████████████████████████████



█████████████████████████████████████████████ Strombom Rep., § III.C. Simply summarizing data in a spreadsheet does not transform Strombom's factual narrative into true expert analysis. "Counting the number of [claims disputed by a hospital] is a task that, though perhaps time-consuming, is within the understanding of the average lay person." *Legg*, 2014 WL 1767097, at *3. Because Strombom's opinion "offers nothing more than what a factfinder could comprehend through the presentation of non-expert witnesses and evidence such as [Defendants' disputed claims] spreadsheet, the testimony is not properly admitted under Rule 702." *Id.*

Finally, Strombom's opinion that ████████████████████████████████████ ██████████████ fails to offer any expert analysis beyond the understanding of the average lay person. The proffered bases for this opinion are that ████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ██████████████ Strombom Rep., § VI. Each of these bases are subject to the same flaws described above. But the last basis is even more problematic: Strombom describes ████████████████ ███████████████████████████████████████████████████case, Strombom Dep. 39:19-24) ████████████████████████████████████████████████ ██████████████████████████ *See* Strombom Rep., ¶¶ 100-09. Not only is this opinion entirely speculative, but Defendants are also using Strombom as a mouthpiece to introduce otherwise inadmissible hearsay. *See Wright v. Farouk Sys., Inc.*, 701 F.3d 907, 911 n.8 (11th Cir. 2012) ("[P]leadings are only allegations, and allegations are not evidence of the truth of what is alleged."). Moreover, the fact that hospitals have sued for billed charges in other cases does not implicate matters that are beyond the understanding of the Court or jurors. Strombom's opinion therefore offers no more than what Defendants' attorneys could argue and does not assist the

factfinder in understanding the evidence through the application of technical expertise.

## II. THE COURT SHOULD EXCLUDE STROMBOM'S OPINION THAT ABERNATHY'S DAMAGES METHODOLOGY IS UNRELIABLE.

Strombom also opines that 

*See* Strombom Rep., § IV. These opinions not only defy the foundation of ELAP's business model and the American healthcare system, but also mischaracterize Abernathy's methodology and are contradicted by Strombom's own prior experience.

The practice of applying a standardized reimbursement formula to hospital claims is common in the American healthcare system. For example, Medicare and Medicaid programs establish standardized reimbursement rates that are applied to each claim a hospital submits for reimbursement.[5] Likewise, the federal government codified a methodology for health insurance plans to reimburse out-of-network hospitals for emergency care using the median reimbursement rate the plan negotiated with in-network hospitals. *See* 29 C.F.R. § 2590.715-2719A. ███████████████

████████████████████████████Ex. U at ELAP0240113. ELAP's own business model uses a reference-based pricing methodology without applying any individual analysis to determine a claim specific rate.

Here, Memorial challenges ELAP's reference-based pricing formulae as inadequate, alleging that ELAP designed them with an eye toward underpaying providers and without sufficient market research. *See* FAC ¶¶ 36, 37. As Mr. Abernathy explains, ███████████

---

[5]  *See*  https://www.cms.gov/medicare/medicare-fee-for-service-payment/acuteinpatientpps  (last accessed June 12, 2023).



*See* Abernathy Report (Ex. V) at Opinion 1 & 1(A). Record evidence supports this conclusion—ELAP's founder testified that ███████████████████████████████[6] and ████████████ ████████████████████████████████████████████████████████ ██████████████[7] Abernathy thus offers alternate standardized formulae that would pay hospitals fair market value—the formulae ELAP *should have* used in building a legitimate and fair reimbursement model. Like ELAP's arbitrary formulae, Abernathy's fair-market formulae apply uniformly across the class; but unlike ELAP, Abernathy ███████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████ *See* Abernathy Report at Op. 2; *see also id.* at Ex. 4-5. The application of Abernathy's formulae will not require individual claim analysis because setting fixed rates for medical services is precisely the point of reference-based pricing or any standardized reimbursement methodology.

Strombom's primary criticism of Abernathy's methodology is that ██████████████ ████████████████████████████████████████████████████████ ████████████████ Strombom Dep. 87:22-89:22. These two dimensions ██████ ████████████████—would, according to Strombom, ████████████████████ ████████████████████████, *Id.*[8] Contrary to Strombom's misleading opinion, Abernathy's damages methodology does ████████████████████████████████.

---

[6] *See* Waters Dep. 29:16-30:10.

[7] *See id.* at 32:15-25.

[8] The Strombom Report also ████████████████████████████████ ██████████████████████████████████ Strombom Rep. ¶ 94. However, Strombom conceded at his deposition that ████████████████████ ██████████████ Strombom Dep. at 230:14-231:9.

Abernathy's damages formula calculates damages systematically and formulaically as

████████████████████████████████████████████████. Abernathy

Rep., App'x F. ████████████████████████████████████████

████████████████████████████████████████████████

█████████████████████████████████████████ *see*

Waters Dep. 118:19-119:18. Abernathy uses ████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████ Abernathy Rep., App'x F. Abernathy's methodology thus results in

█████████████████████████████████████████ *See id.*

at Ex. 4-5. Strombom's criticisms of Abernathy's methodology are thus illusory and serve only to

mislead and confuse the factfinder. The Court should thus exclude Strombom's opinions that

Abernathy's methodology is unreliable.

### III.   THE COURT SHOULD STRIKE STROMBOM'S OPINION THAT MEMORIAL HAS NOT PROPOSED AN UNJUST ENRICHMENT DAMAGES METHODOLOGY BECAUSE IT IS UNRELIABLE AND IRRELEVANT.

Finally, Strombom opines that ████████████████████████████████████

████████████████████████████████████████████████

█████████████████████████████ *See* Strombom Rep. ¶¶ 118-28. But

"rebuttal testimony is permitted only when it *directly addresses an assertion* raised by an

opponent's experts." *Wreal*, 2016 WL 8793317, at *3 (emphasis in original). Here, Abernathy was

not tasked with ████████████████████████████████████████████

Instead, Abernathy was asked ██████████████████████████████████

████████████████████████████████████████████████

18

▮▮▮▮▮▮ *See* Abernathy Rep., Opinion #3 & ¶¶ A-C. Strombom's unjust enrichment opinion is therefore not proper rebuttal expert testimony.

Even if Strombom's unjust enrichment opinion were within the scope of rebuttal expert testimony, it is inadmissible because it does not meet the reliability or helpfulness requirements of *Daubert* and its progeny. On reliability, Strombom's opinion is based on testimony from an ELAP employee, reflecting that ▮▮▮▮▮▮▮▮▮▮ Strombom Rep., ¶ 122. That same ELAP employee also testified that ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮ *Id*. at n. 209. Strombom, however, did not conduct any independent analysis to verify the testimony. "An expert must independently verify facts given to him, rather than accepting them at the word of counsel." *MDG Int'l, Inc. v. Australian Gold, Inc.*, 2009 WL 1916728, at *4 (S.D. Ind. June 29, 2009) (cleaned up). Because Strombom did not independently verify the purported facts supporting his unjust enrichment opinion, it is not the product of reliable principles and methods and is thus inadmissible under *Daubert*.

The unjust enrichment opinion is also inadmissible because it is unhelpful. Strombom is again offering an opinion that does not require any specialized knowledge or expertise, but merely bolsters the testimony of Defendants' lay witnesses. The average person can understand, without the assistance of expert testimony, that profits are derived from subtracting costs from income.

Moreover, the issue of costs is legally irrelevant under the circumstances. The weight of authority holds that a plaintiff's only burden is providing a reasonable approximation of a defendant's disgorgement liability; any uncertainty in determining the actual amount of profits is resolved against the defendant where the defendant has created the uncertainty. *See* RESTATEMENT (THIRD) OF RESTITUTION & UNJUST ENRICHMENT § 51 (2011);[9] *U.S. v. Stinson*, 729 F. App'x 891,

---

[9] Florida courts follow the Restatement (Third) of Restitution and Unjust Enrichment. *See, e.g.*,

899 (11th Cir. 2018) ("Disgorgement of gross revenues is appropriate because wrongdoers are not entitled to deduct costs associated with committing their illegal acts. Additionally, once the plaintiff presents a reasonable approximation, the burden shifts to the defendant . . . to disprove this amount."); *see also F.T.C. v. Washington Data Res., Inc.*, 704 F.3d 1323, 1326–27 (11th Cir. 2013) (holding "the amount of net revenue" instead of "the amount of profit (net revenue minus expenses)" was the correct measure of disgorgement damages for deceptive trade practices). Accordingly, Defendants, not Memorial, carry the burden of demonstrating their profits at the claim or class member level. Strombom's opinions suggesting the contrary are therefore inadmissible and should not be considered at class certification.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should exclude Strombom's opinions on the issues addressed above and disregard them when ruling on class certification.

Respectfully submitted:  June 12, 2023.

| /s/*Benjamin J. Widlanski* | /s/ *Douglas A. Wolfe* |
|---|---|
| **Benjamin J. Widlanski., Esq.** | **Douglas A. Wolfe, Esq.** |

---

*Bailey v. St. Louis*, 268 So. 3d 197, 201-02 (Fla. 2d DCA 2018) (relying on the Restatement (Third) of Restitution and Unjust Enrichment, including Section 51); *Kane v. Stewart Tilghman Fox & Bianchi, P.A.*, 85 So. 3d 1112, 1115 (Fla. 4th DCA 2012) (holding that the "trial court's measure of damages was consistent with the law of unjust enrichment" with citation to Restatement (Third) of Restitution and Unjust Enrichment).

bwidlanski@kttlaw.com
Fla. Bar No. 1010644
**Gail McQuilkin, Esq.**
gam@kttlaw.com
Fla. Bar No. 969338
**Tal J. Lifshitz, Esq.**
tjl@kttlaw.com
Fla. Bar No. 99519
**Rachel Sullivan, Esq.**
rs@kttlaw.com
Fla. Bar No. 815640
**Michael Lorigas, Esq.**
mlorigas@kttlaw.com
Fla. Bar No. 123597

**KOZYAK TROPIN &
THROCKMORTON LLP**
2525 Ponce de Leon Blvd., 9th Floor
Coral Gables, Florida 33134
Telephone: (305) 372-1800

*Counsel for Plaintiff*

doug@wolfepincavage.com
Fla. Bar No. 28671
**Danya J. Pincavage, Esq.**
danya@wolfepincavage.com
Fla. Bar No. 14616
**Hana A. Aryan, Esq.**
Hana.aryan@wolfepincavage.com
Fla. Bar No. 1003617

**WOLFE | PINCAVAGE**
7800 SW 57th Avenue, Suite 217
Miami, Florida 33143
Telephone: (786) 409-0800

*Counsel for Plaintiff*